PAE AO 241
(Rev. 05/2018)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### Petition for Relief from a Conviction or Sentence
### By a Person in State Custody
### (Petition Under <u>28 U.S.C. § 2254 </u>for a Writ of Habeas Corpus)

## <u>INSTRUCTIONS</u>

1.  To use this form, you must be a person who is currently serving a sentence under a judgment against you in a state court. You are asking for relief from conviction of the sentence.  This form is your petition for relief.

2.  You may also use this form to challenge a state judgment that imposed a sentence to be served in the future, but you must fill in the name of the state where the judgment was entered. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file a motion under 28 U.S.C. § 2255 in the federal court that entered the judgment.

3.  Your habeas corpus petition must be filed within the 1-year statute of limitations time limit set forth in 28 U.S.C. § 2244(d)(1). (There are limited circumstances in which the petition may be amended, within the one-year time period, to add additional claims or facts, <u>see</u> Federal Rules of Civil Procedure 15; or amended after the one-year period expires, in order to clarify or amplify claims which were timely presented, <u>see United States v. Thomas</u>, 221 F. 3d 430 (3d Cir. 2000)).

4.  Make sure the form is typed or neatly written.

5.  You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

6.  Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to  submit additional or correct information. If you want to submit a brief or argument, you must submit them in a separate memorandum.

7.  You must pay a fee of $5. If the fee is paid, your petition will be filed. If you cannot pay the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you  must fill out an Application to Proceed in District Court without Prepaying Fees or Costs. **Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of money that the institution is holding for you.**

PAE AO 241
(Rev. 05/2018)

8.      In this petition, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different court (either in the same state or in different states), you must file a separate petition.

9.      As required by 28 U.S.C. § 2254(b)(1), you must have exhausted all claims that you are making in your petition. This means that every claim must have been presented to each level of the state courts. If you file a petition that contains claims that are not exhausted, the federal court will dismiss your petition. 28 U.S.C. § 2254(b)(2) provides that the federal court may deny your petition on the merits even if you have not exhausted your remedies.

10.     As required by 28 U.S.C. § 2244(b)(1), a federal court must dismiss any claim in a second or successive habeas corpus petition that was presented in a prior habeas corpus petition.

11.     As required by 28 U.S.C. § 2244(b)(2), a federal court must dismiss any claim in a second or successive habeas corpus petition that was not presented in a prior habeas corpus petition unless you show:

   (A)      the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the U.S. Supreme Court, that was previously unavailable; or

   (B)      (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence, and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found you guilty of the offense in question.

   Before such a second or successive petition may be filed in the district court, however, the petitioner must move in the court of appeals for an Order authorizing the district court to consider the petition. Petitioner's motion for such an Order must be determined by a three judge panel of the court of appeals, which must grant or deny the motion within 30 days. The court of appeals may grant the motion only if it determines that the petition makes a prima facie showing that it satisfies either (A) or (B) above.

12.     When you have completed this form, send the original and **these instructions** to the Clerk of the United States District Court at this address:

**Clerk**
**United States District Court**
**for the Eastern District of Pennsylvania**
**601 Market Street, Room 2609**
**Philadelphia, PA 19106**

PAE AO 241
(Rev. 05/2018

13.     **<u>CAUTION</u>: You must include in this petition all the grounds for relief from the conviction or sentence that you challenge and you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

14.     **<u>CAPITAL CASES</u>: If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.**

PAE AO 241
(Rev. 05/2018)

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS
## BY A PERSON IN STATE CUSTODY

| United States District Court | District:  Eastern District of Pennsylvania |
|---|---|
| **Name (under which you were convicted):**<br>**John In** | **Docket or Case No.:** |
| **Place of Confinement:**<br>SCI Fayette | **Prisoner No.:**<br>HW 6898 |

**Petitioner** (Include the name under which you were convicted):

**John In**

**Respondent** (Name of Warden, Superintendent, Jailor, or authorized person having custody of petitioner):

**Mark Capozza, Sup't SCI Fayette**

**V.**

and

**The District Attorney of the County of:** Philadelphia

and

**The Attorney General of the State of:** Pennsylvania

### PETITION

1.   (a)  Name and location of court that entered the judgment of conviction you are challenging:
   Court of Common Pleas, Philadelphia County

   (b)  Criminal docket or case number (if you know):  CP 51 CR 0004829 2007

2.   (a)  Date of judgment of conviction (if you know): September 16, 2008

   (b)  Date of sentencing: December 19, 2008

3.   Length of sentence: 25 to 50 years followed by 10 years probation

4.   In this case, were you convicted on more than one count or of more than one crime?      X Yes      No

5.   Identify all crimes of which you were convicted and sentenced in this case:  Robbery (2 cts), Burglary,
   PIC, VUFA, Conspiracy

PAE AO 241
(Rev. 05/2018

6.    (a)  What was your plea?  (Check one)

    X (1)   Not Guilty      (3)   Nolo contendere (no contest)

     (2)   Guilty        (4)   Insanity plea


   (b)  If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? _____

    _____

    _____

    _____

    _____


   (c)  If you went to trial, what kind of trial did you have? (Check one)

    X Jury       Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

    Yes      X No

8.    Did you appeal from the judgment of conviction?

    X Yes       No

9.    If you did appeal, answer the following:

   (a)  Name of court:  Pennsylvania Superior Court

   (b)  Docket or case number (if you know):  1389 EDA 2009

   (c)  Result:  Affirmed

   (d)  Date of result (if you know):   July 23, 2009

   (e)  Citation to the case (if you know):  2010 Pa. Super. Lexis 3579 (Pa. Super. July 23, 2009).

   (f)  Grounds raised:  The evidence was insufficient to find Petitioner guilty.
    The trial court erred and abused its discretion when it did not provide the required contemporaneous

    statement on the record regarding a guidelines departure.

    _____

    _____

    _____

    _____


   (g)  Did you seek further review by a higher state court?

    X Yes      No

PAE AO 241
(Rev. 05/2018

If yes, answer the following:

(1)  Name of court:  Pennsylvania Supreme Court

(2)  Docket or case number (if you know):  460 EAL 2010

(3)  Result:  Allocatur denied.

(4)  Date of result (if you know):  January 5, 2011

(5)  Citation to the case (if you know):  2011 Pa. LEXIS 37 (Pa. Jan. 5, 2011)

(6)  Grounds raised:  See 9 (f).

(h)  Did you file a petition for certiorari in the United States Supreme Court?

Yes _____  X No

If yes, answer the following:

(1)  Docket or case number (if you know): _____

(2)  Result: _____

(3)  Date of result (if you know): _____

(4)  Citation to the case (if you know): _____

(i)  Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?

X Yes _____  No

10.  If your answer to Question 10 was "Yes," give the following information:

(a)  (1)  Name of court:  Philadelphia Court of Common Pleas

(2)  Docket or case number (if you know):  CP 51 CR 0004829 2007

(3)  Date of filing (if you know):  July 15, 2011

(4)  Nature of the proceeding:  PCRA

(5)  Grounds raised:  Trial counsel was ineffective for:  allowing co-defendant Marable to be called as a witness, knowing that he would refuse to testify; failing to request a cautionary instruction that Marable's silence could not be held against Petitioner; agreeing to a stipulation that Marable pled guilty to conspiracy and related offenses; failing to object to police testimony that Marable gave a voluntary Mirandized statement; and failing to object to the portion of the prosecutor's closing argument in which she commented on Marable's refusal to testify and his Mirandized statement.

Note; The PCRA was initially dismissed without a hearing on October 11, 2013. However, the Pennsylvania Superior Court remanded the matter back to the trial court to conduct an evidentiary hearing. (3021 EDA 2013). The hearing – referenced below – that Petitioner received, occurred following the remand.

The Superior Court decision referenced below is its merits ruling following its remand.

(Rev. 05/2018)

Page 7

(6)  Did you receive a hearing where evidence was given on your petition, application, or motion?

      X Yes        No

(7)  Result:  Petition dismissed.

(8)  Date of result (if you know):  August 18, 2017.

(b)  If you filed any second petition, application, or motion, give the same information:

    (1)  Name of court: _____

    (2)  Docket or case number (if you know): _____

    (3)  Date of filing (if you know): _____

    (4)  Nature of the proceeding: _____

    (5)  Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

    (6)  Did you receive a hearing where evidence was given on your petition, application, or motion?

          Yes        No

    (7)  Result: _____

    (8)  Date of result (if you know): _____

(c)  If you filed any third petition, application, or motion, give the same information:

    (1)  Name of court: _____

    (2)  Docket or case number (if you know): _____

    (3)  Date of filing (if you know): _____

    (4)  Nature of the proceeding: _____

    (5)  Grounds raised: _____

_____

_____

_____

_____

(6)  Did you receive a hearing where evidence was given on your petition, application, or motion?

      Yes        No

(7)  Result: _____

(8)  Date of result (if you know): _____

(d)  Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion:

   (1)   First petition:       X  Yes              No

   (2)   Second petition:        Yes              No

   (3)   Third petition:         Yes              No

(e)  If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

11.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION:** To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:**

_____

TRIAL COUNSEL WAS INEFFECTIVE UNDER THE SIXTH AMENDMENT FOR FAILING TO REQUEST DNA

_____

TESTING THAT WOULD HAVE EXONERATED PETITIONER. PETITIONER IS ACTUALLY INNOCENT OF THE CHARGES FOR WHICH HE WAS CONVICTED

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
PLEASE SEE ATTACHED COUNSELED HABEAS PETITION.

_____

_____

_____

_____

_____

_____

(b)  If you did not exhaust your state remedies on Ground One, explain why:  It was not exhausted because initial state post-conviction counsel was ineffective for failing to raise this substantial claim of trial counsel's ineffectiveness.

_____

_____

_____

(c)  **Direct Appeal of Ground One:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes          X No

(2)  If you did not raise this issue in your direct appeal, explain why?  It was not raised or preserved at trial, and thus was not cognizable on direct appeal.

_____

_____

(d)  **Post-Conviction Proceedings:**

(1)  Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes          X No

(2)  If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3)  Did you receive a hearing on your motion or petition?          X  Yes          No

(4)  Did you appeal from the denial of your motion or petition?          X  Yes          No

(5)  If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

Yes          X  No

(6)  If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:  Superior Court of Pennsylvania

_____

Docket or case number (if you know):  2858 EDA 2017 (appeal after remand, and evid. Hearing)

Date of the court's decision:  April 23, 2019

Result (attach a copy of the court's opinion or order, if available):   Affirmed

(7)   If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this

issue:  As noted above, state post-conviction counsel was ineffective for failing to raise this

substantial claim of trial counsel's ineffectiveness before the PCRA court. Thus, he had no cause to

raise it on appeal.

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies,
etc.) that you have used to exhaust your state remedies on Ground One:

GROUND TWO: Trial Counsel Was Ineffective Under the Sixth Amendment, When He
Failed to Object to the Prosecutor's Prejudicial Reference to God. It Violated
Pennsylvania Law, Petitioner's Right to Due Process, and the Establishment and Free
Exercise Clauses of the First Amendment

(a)   Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
PLEASE SEE ATTACHED, COUNSELED HABEAS PETITION.

(b)   If you did not exhaust your state remedies on Ground Two, explain why:  State post-conviction counsel
was ineffective for failing to raise this substantial claim of trial counsel ineffectiveness.

(c)   **Direct Appeal of Ground Two:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes          X No

(2)   If you did not raise this issue in your direct appeal, explain why?  It was not a preserved record-based claim, and thus not cognizable on direct appeal.

_____

_____

**(d)   Post-Conviction Proceedings:**

(1)   Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

          Yes          X No

(2)   If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

| | | | | |
|---|---|---|---|---|
| (3)   Did you receive a hearing on your motion or petition? | | | X   Yes | No |
| (4)   Did you appeal from the denial of your motion or petition? | | | X   Yes | No |

(5)   If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
          Yes          X No

(6)   If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:  Pennsylvania Superior Court

_____

Docket or case number (if you know):  2858 EDAA 2017

Date of the court's decision:  April 23, 2019

Result (attach a copy of the court's opinion or order, if available):  Affirmed.

_____

_____

(7)   If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:  Post-conviction counsel was ineffective for failing to raise this substantial claim of trial counsel ineffectiveness before the PCRA court. He thus had no basis to raise it on appeal.

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _____

_____

_____

_____

GROUND THREE: _Trial Counsel was Ineffective Under the Sixth Amendment, for Allowing the Commonwealth to Utilize Dyshon Marable's Guilty Plea and Statement in Any Manner, During the Trial

a. **Knowing Marable Would Refuse to Testify, Trial Counsel was Ineffective Under the Sixth Amendment for Allowing the Commonwealth to Call Him as a Witness.**

**b. Trial Counsel Was Ineffective Under the Sixth Amendment for Agreeing to Stipulate that Marable Pled Guilty and For Failing to Request a Cautionary Instruction Regarding the Plea**

**c. Trial Counsel was Ineffective Under the Sixth Amendment for Failing to Object to Detectives Hopkins' and Conn's Testimony Regarding Marable's Statement**

d. **Trial Counsel was Ineffective Under the Sixth Amendment for Failing to Object to the Prosecutor's Reference to Marable's Silence**

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
PLEASE SEE ATTACHED COUNSELED HABEAS PETITION
_____

(b) If you did not exhaust your state remedies on Ground Three, explain why:  Claim was exhausted.
_____

**(c)  Direct Appeal of Ground Three:**

_____

_____

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes              X No

(2)  If you did not raise this issue in your direct appeal, explain why?  It was not a preserved record-based claim, and thus not cognizable on direct appeal. IAC claims are raised in post-conviction.
_____

_____

**(d)  Post-Conviction Proceedings:**

(1)  Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

X Yes          No

(2)  If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:  PCRA

Name and location of the court where the motion or petition was filed:  Philadelphia Court of Common Pleas

Docket or case number (if you know):  CP 51 CR 0004829 2007

Date of the court's decision:  August 18, 2007

Result (attach a copy of the court's opinion or order, if available):  PCRA Petition dismissed.

(3) Did you receive a hearing on your motion or petition?          X   Yes          G   No
(4) Did you appeal from the denial of your motion or petition?     X   Yes          G   No

(5)  If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

     X Yes          No

.

(6)  If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Superior Court of Pennsylvania

Docket or case number (if you know):  2858 EDA 2017

Date of the court's decision:  April 23, 2017

Result (attach a copy of the court's opinion or order, if available):  Affirmed.

(7)  If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:

## GROUND FOUR:  PETITIONER IS ENTITLED TO RELIEF BECAUSE OF THE CUMULATIVE PREJUDICIAL EFFECT OF THE ERRORS IN THIS CASE

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
PLEASE SEE COUNSELED HABEAS PETITION ATTACHED

PAE AO 241
(Rev. 07/10)

_____

_____

_____

(b)  If you did not exhaust your state remedies on Ground Four, explain why:  Claim was not exhausted. Post-conviction counsel was ineffective for failing to raise this substantial claim based on trial counsel's ineffectiveness.

_____

_____

_____

_____

(c)  **Direct Appeal of Ground Four:**

   (1)  If you appealed from the judgment of conviction, did you raise this issue?

   Yes        X No

   (2)  If you did not raise this issue in your direct appeal, explain why?  This cumulative error claim is based on IAC. It is not a preserved, record based claim, and thus not cognizable on direct appeal.

   _____

   _____

(d)  **Post-Conviction Proceedings:**

   (1)  Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

   Yes        X No

   (2)  If your answer to Question (d)(1) is "Yes," state:

   Type of motion or petition: _____

   Name and location of the court where the motion or petition was filed: _____

   _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

   Result (attach a copy of the court's opinion or order, if available): _____

   _____

   (3)  Did you receive a hearing on your motion or petition?        X  Yes        No

   (4)  Did you appeal from the denial of your motion or petition?        X  Yes        No

PAE AO 241
(Rev. 07/10)

    (5)   If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

          Yes        X  No

    (6)   If your answer to Question (d)(4) is "Yes," state:

        Name and location of the court where the appeal was filed:  Pennsylvania Superior Court

        Docket or case number (if you know):  2858 EDA 2017

        Date of the court's decision:  April 23, 2019

        Result (attach a copy of the court's opinion or order, if available):  Affirmed

    (7)   If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this

        issue:  Post-conviction counsel was ineffective for failing to raise this substantial claim of trial

        counsel's ineffectiveness before the PCRA court. He thus had no basis upon which to raise it on

        appeal.

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:

12.      Please answer these additional questions about the petition you are filing:

(a)   Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?

      Yes         X  No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:  As discussed above, Claims I, II and IV were not presented, due to the ineffective assistance of state post-conviction counsel.

(b)   Is there any ground in this petition that has not been presented in some state or federal court? If so,

which ground or grounds have not been presented, and state your reasons for not presenting them:

Please see 12(a) above.
_____

_____

_____

13.    Have you previously filed any type of petition, application, or motion in a federal court regarding the
conviction that you challenge in this petition?

Yes _____         X  No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the
issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.
Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

14.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or
federal, for the judgment you are challenging?

Yes _____         X  No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and
the issues raised: _____

_____

_____

_____

15.    Give the name and address, if you know, of each attorney who represented you in the following stages of the
judgment you are challenging:

(a)   At preliminary hearing:  Richard Giuliania, Esq. _____

_____

(b)   At arraignment and plea:  Richard Giuliani, Esq. _____

_____

      (c)  At trial: <u>Richard Giuliani, Esq.</u>

      (d)  At sentencing: <u>Richard Giuliani, Esq.</u>

      (e)  On appeal: <u>Edward Wright, Esq.</u>

      (f)  In any post-conviction proceeding: <u>David Rudenstein, Esq.; Craig Cooley, Esq.</u>

      (g)  On appeal from any ruling against you in a post-conviction proceeding: <u>Craig Cooley, Esq.</u>

16.      Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?

              Yes             X No

      (a)  If so, give the name and location of the court that imposed the other sentence you will serve in the future: _____

      (b)  Give the date the other sentence was imposed: _____

      (c)  Give the length of the other sentence: _____

      (d)  Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?

              G Yes          G No

17.      **TIMELINESS OF PETITION:** If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition*

The Pennsylvania Supreme Court denied Petitioner's allocatur petition on direct review, on January 5, 2011. Petitioner did not seek review in the United States Supreme Court. Thus, the "expiration of the time for seeking such review" expired 90 days later, on April 5, 2011.

     A properly filed state post-conviction petition tolls the AEDPA limitations period. 28 U.S.C. § 2244(d)(2). Petitioner properly filed just such a petition on July 15, 2011 (which was subsequently amended). By July 15, 2011, Petitioner had used 101 days of the 365 days he is allotted under 28 U.S.C. § 2244(d)(1).

     The limitations period remained tolled until May 27, 2020, when the Pennsylvania Supreme Court denied leave to appeal from the denial of Petitioner's PCRA petition. As of May 27, 2020, Petitioner had 264 days remaining on his one-year limitations period. Thus, the AEDPA limitations period expires on February 15, 2021, 264 days from May 27, 2020, and this Petition, filed on February 9, 2021, is timely.

&ast; The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)     A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of -

    (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

    (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: _____
Vacate Petitioner's convictions and sentence.
_____

_____

_____

or any other relief to which petitioner may be entitled.


_____
*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system  on_____.

*(month, date, year)*

Executed (signed) on_____(date).

_____
*Signature of Petitioner*

If the person signing is not the petitioner, state the relationship to petitioner and explain why petitioner is not signing this petition. <u>This is a counseled petition. Signer is counsel for the Petitioner.</u>_____

(A) Neutral
As of: July 21, 2019 5:47 PM Z

# *Commonwealth v. In*

Superior Court of Pennsylvania

April 23, 2019, Decided; April 23, 2019, Filed

No. 2858 EDA 2017

**Reporter**
2019 Pa. Super. Unpub. LEXIS 1522 *; 2019 WL 1785335

COMMONWEALTH OF PENNSYLVANIA v. **JOHN** N.
**IN**

**Notice:** NON-PRECEDENTIAL DECISION - SEE
SUPERIOR COURT I.O.P. 65.37

**Prior History:** **[*1]** Appeal from the PCRA Order August
18, 2017. In the Court of Common Pleas of Philadelphia
County Criminal Division at No(s): CP-51-CR-0004829-
2007.

*Commonwealth v. In, 159 A.3d 56, 2016 Pa. Super.
Unpub. LEXIS 3920 (Oct. 26, 2016)*

## Core Terms

trial counsel, ineffective, guilty plea, guilt, cautionary
instruction, trial court, closing argument, fail to object,
reasonable basis, post-arrest, quotation, objected,
marks, ineffectiveness claim, robbery, infer, evidentiary
hearing, presentation, proceedings, decisions,
witnesses, basement, refuse to testify, fail to request,
co-conspirator, individually, citations, highlight, strategic,
comments

**Judges:** BEFORE: DUBOW, J., NICHOLS, J., and
FORD ELLIOTT, P.J.E. MEMORANDUM BY NICHOLS,
J.

**Opinion by:** NICHOLS

## Opinion

MEMORANDUM BY NICHOLS, J.:

Appellant **John** N. **In** appeals from the order denying his
timely first petition under the *Post Conviction Relief Act*[1]
*(PCRA)*, after a prior panel of this Court remanded the
matter for an evidentiary hearing.[2] Appellant claims trial
counsel was ineffective for: (1) failing to object to the
Commonwealth's attempt to present Dyshon Marable
(Marable) as a witness at trial; (2) failing to request a
cautionary instruction that the jury should not infer
Appellant's guilt from Marable's refusal to testify; (3)
stipulating that Marable entered into a guilty plea for the
robbery at issue; (4) failing to request a cautionary
instruction that the jury should not infer Appellant's guilt
based on Marable's guilty plea; (5) failing to object to
testimony about Marable's post-arrest statement to
police; and (6) failing to object to comments about
Marable during the Commonwealth's closing argument.
We affirm.

The prior panel of this **[*2]** Court set forth the relevant
facts and procedural history of this appeal as follows:

On March 7, 2007, three men entered Vuthary Yun's
house, and one of the men pointed a gun at his head.
The man with the gun pushed Yun into the basement
and demanded money and jewelry. Yun's daughter,
Dina Khem, who was in her bedroom in the
basement, called 911 when she heard a man's voice
yelling at her father. A few minutes later, when Dina
heard police upstairs, she exited her room and
walked to the basement steps, where she observed
her father and Appellant at the top of the steps.
When Dina attempted to speak to her father,
Appellant turned to face her, pointed the gun at her,

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] *Commonwealth v. In, 159 A.3d 56, 2016 Pa. Super. Unpub.*

*LEXIS 3920 (Pa. Super. filed 2016)* (unpublished mem.).

and told her to "shut the fuck up." Dina testified that she observed Appellant for approximately two minutes before returning to her room. While Yun was being held in the basement, co-conspirators Jerry Jean and [Marable] were on the second floor, robbing Dina's younger sister, Christina Khem, of her jewelry.

When Officer Roger Birch arrived outside of the victims' home, he observed Appellant kneeling beside a white Nissan Altima. Appellant entered the vehicle and sped eastbound. Officer Birch pursued him in his patrol car **[\*3]** for approximately one block before Appellant crashed the Altima into a house. Appellant exited the vehicle and fled on foot before being apprehended by police. Police later took Dina to the patrol car in which Appellant was being held, and Dina identified him as the gunman who held her father in the basement.

Officer Kevin Cannon observed co-conspirator Jean hiding between two parked cars near the white Nissan Altima. Police arrested Jean shortly thereafter and found pieces of a latex glove in his sweatshirt. Co-conspirator Marable was later found hiding in a closet on the second floor of the victims' home.

Police recovered a 0.9 mm semi-automatic handgun from the driver's side of the white Nissan Altima. Latex gloves and three traffic tickets listing the name Jerry Jean were also recovered from the vehicle. Another handgun and a latex glove were found in a shed in the victims' backyard.[fn2] Later, Yun discovered that sixty dollars had been taken from his wallet.

[fn2] Jean had hidden in the backyard shed after fleeing from the victims' house.

Subsequently, Appellant was charged with burglary, robbery, possession of an instrument of crime, criminal conspiracy, and violations of the *Uniform Firearms Act* **[\*4]** , *18 Pa.C.S.A. §§ 6101-6127*. The case proceeded to a jury trial, at which the Commonwealth sought to present the testimony of Appellant's co-conspirator Marable. On the second day of trial, outside of the jury's presence, Marable indicated to the Commonwealth and the trial court that he would not testify against Appellant and, if called to the stand, would remain silent.[fn3] Ultimately, the trial court held Marable in contempt and sentenced him to six months' imprisonment.

[fn3] Marable's attorney advised Marable that he did not have a *Fifth Amendment* right against self-

incrimination because Marable already had pled guilty in this case. Marable's attorney relayed to the trial court that Marable would not testify because Marable had received several threats to his life and health.

After Marable exited the courtroom, the Commonwealth informed the trial court that it still intended to call him as a witness. The Commonwealth anticipated that Marable would remain silent and, to identify Marable for the benefit of the jury, it would request Sheriff Guess to read Marable's wristband. The Commonwealth also anticipated that it would ask Detective Hopkins to testify about the fact that Marable gave a post-arrest statement. **[\*5]** [fn4]

[fn4] The parties agreed that the content of Marable's post-arrest statement need not be disclosed to the jury.

Upon the jury's return, the Commonwealth called Marable to testify. Marable remained silent. Sheriff Guess identified Marable by examining Marable's prison identification card. Marable then was escorted from the courtroom. Thereafter, the Commonwealth informed the trial court and the jury that it had entered into a stipulation with Appellant's attorney with respect to Marable's guilty plea. Specifically, the Commonwealth noted:

> There's been a stipulation by and between counsel that in the case of ***Commonwealth v. Marable***, Common Pleas Court No. 51-CR-0004827-2007 . . ., before the Honorable Judge Byrd, [Marable] pled guilty to three counts of robbery. Victims being Vuthary Yun, Dina Khem, and Christina Khem. Pled guilty to burglary of the house at 720 Mifflin Street. Pled guilty to possession of an instrument of crime, [and] conspiracy regarding the incident that happened on March 7th, 2007. In exchange [for] his guilty plea . . . [Marable] was sentenced to a period [of] no less than five [and] no more than ten years' incarceration.

Trial counsel did not request any cautionary **[\*6]** instruction informing the jury that it should not infer Appellant's guilt from Marable's admitted guilt (guilt by association) and refusal to testify.

The Commonwealth then offered the testimony of Detective Hopkins, who testified that Marable gave a post-arrest statement after being Mirandized.[fn5, fn6]

[fn5] ***See*** *Miranda v. Arizona, 384 U.S. 436, 86 S. Ct.*

Commonwealth v. In

*1602, 16 L. Ed. 2d 694 (1966).*

[fn6] It appears that Detective Conn likewise testified about Marable providing a post-arrest statement. During its closing argument, the Commonwealth stated without objection by Appellant's attorney:

> And you saw [Marable], he wouldn't even say his name, let alone be sworn in. Well, why? He took a plea, he's serving his time. He's not going to snitch on his buddy, no matter what the consequences to him. You saw, you saw the attitude he gave everybody including the Judge. Well, that's his boy, I brought him down here. He's not going to testify for the Commonwealth, right?

On September 15, 2008, the jury found Appellant guilty of conspiracy, burglary, two counts of robbery, possession of an instrument of crime, and violating *Sections 6106* and *6108* of the Uniform Firearms Act. Pursuant to Appellant's motion to sever the charge of violating *Section 6105* of the Uniform Firearms Act, the trial court conducted **[*7]** a separate bench trial and found him guilty of that charge. On December 19, 2008, the trial court sentenced Appellant to an aggregate term of twenty-five to fifty years' imprisonment followed by ten years' probation.

[O]n July 23, 2010, a panel of this Court affirmed Appellant's judgment of sentence. On January 5, 2011, our Supreme Court denied Appellant's petition for allowance of appeal.

On July 15, 2011, Appellant *pro se* filed [his first] PCRA petition. The PCRA court appointed counsel, who filed an amended PCRA petition on October 4, 2012, raising a number of ineffective assistance of counsel claims. Appellant alleged that his trial counsel was ineffective for failing to object to the Commonwealth's presentation of Marable as a witness at trial when the Commonwealth knew that Marable was not going to testify. Specifically, Appellant alleged that Marable's presentation "was only undertaken so as to unfairly prejudice [Appellant] by advancing guilt through association." Appellant alleged that his trial counsel was ineffective because he stipulated to Marable's guilty plea arising out of the home invasion robbery at issue here. Appellant also alleged trial counsel's ineffectiveness **[*8]** on the grounds that counsel did not object to the detectives' testimony that Marable gave a post-arrest statement. Finally, Appellant alleged ineffectiveness because trial counsel did not object to the Commonwealth's remarks during its closing argument.

* * *

On September 6, 2013, the PCRA court issued a *Pa.R.Crim.P. 907* notice of its intent to dismiss Appellant's petition. On September 18, 2013, Appellant filed a response to the PCRA court's *Rule 907* notice, raising an ineffectiveness claim against his PCRA counsel. On October 11, 2013, the PCRA court dismissed Appellant's petition without a hearing. Appellant timely appealed to this Court.

*In*, 3021 EDA 2013, at 2-7 (record citations omitted).

The prior panel of this Court vacated the PCRA court's order and remanded the matter for an evidentiary hearing, noting:

> [G]iven the complexity of the claims raised and the dearth of a record below, we are unable to engage in a meaningful appellate review. Specifically, the PCRA court failed to conduct an evidentiary hearing on Appellant's ineffectiveness claims and render necessary factual findings. We therefore cannot assess trial counsel's tactical reasons for withholding objections. As a result, we must vacate the PCRA **[*9]** court's order dismissing Appellant's PCRA petition and remand the matter to the PCRA court to conduct an evidentiary hearing to address fully the claims identified above.

*Id.* at 9 (footnote omitted).

Upon remand, the PCRA court conducted an evidentiary hearing on July 7, 2017, and Appellant called his trial counsel as a witness. Trial counsel testified as to his reasons for not objecting to the Commonwealth's presentation of Marable as a witness, entering into the stipulation regarding Marable's guilty plea, failing to request cautionary instructions, failing to object to the testimony from the police witnesses, and failing to object to the Commonwealth's closing argument. At the conclusion of trial counsel's testimony, the PCRA court held the matter under advisement. On August 18, 2017, the PCRA court announced its findings of fact and conclusions of law on the record and denied Appellant's PCRA petition.

Appellant timely filed a notice of appeal and a court-ordered *Pa.R.A.P. 1925(b)* concise statement of errors complained of on appeal. The PCRA court filed a responsive opinion, finding that trial counsel "had a reasonable strategic basis for each of his challenged decisions, all designed to effectuate

[Appellant's] **[\*10]** best interest." PCRA Ct. Op., 1/9/18, at 10. The court concluded that trial counsel's decisions advanced his theory of the case, which was that Appellant "was not involved in the home invasion and it was committed by others." *Id.*

Appellant now raises one issue for our review:

> Trial counsel made a series of objectively unreasonable decisions regarding the prosecutor's attempt to have Dyshon Marable testify against [Appellant]. Individually and cumulatively, these unreasonable decisions prejudiced [Appellant] because they allowed the prosecutor to present and the jury to consider irrelevant, inadmissible, and highly prejudicial evidence regarding Mr. Marable's pretrial statement and guilty plea without being subjected to cross-examination and without instructing the jury it could not consider Mr. Marable's guilty plea as substantive evidence of [Appellant's] guilt. Had trial counsel lodged timely objections there is a reasonable probability the trial court would have prohibited the prosecutor from presenting Mr. Marable as a Commonwealth witness as well as the other evidence relating to his guilty plea and pretrial statement. It would have also struck the prosecutor's impermissible closing **[\*11]** arguments relating to Mr. Marable's refusal to testify, statement, and guilty plea. Trial counsel did not have a reasonable basis not to make the individually and collectively [sic], the introduction and consideration of this evidence undermines confidence in the jury's guilty verdicts warranting a new trial and the PCRA court erred when it refused to grant a new trial because the record supported [Appellant's] right to a new trial based on trial counsel's ineffectiveness.

Appellant's Brief at 5 (citations omitted). Although Appellant's brief lists one issue, he actually presents six distinct arguments of ineffective assistance of counsel related to Marable.

Our review the denial of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller, 2014 PA Super 214, 102 A.3d 988, 992 (Pa. Super. 2014)* (quotation marks and citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson, 2014 PA Super 68, 90 A.3d 1, 4 (Pa. Super. 2014)* (citation omitted). We review the PCRA court's legal conclusions *de novo*. *See Miller, 102 A.3d at 992.*

We presume that the petitioner's counsel was effective. *Commonwealth v. Williams, 557 Pa. 207, 732 A.2d 1167, 1177 (Pa. 1999)*. To establish a claim of ineffectiveness, a petitioner "must show, by a **[\*12]** preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Turetsky, 2007 PA Super 158, 925 A.2d 876, 880 (Pa. Super. 2007)* (citation omitted). A petitioner must establish (1) that the underlying claim has arguable merit; (2) that counsel lacked a reasonable basis for his action or inaction; and (3) but for the act or omission in question, the outcome of the proceedings would have been different. *Commonwealth v. Washington, 592 Pa. 698, 927 A.2d 586, 594 (Pa. 2007)*. "A claim of ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet any of these prongs." *Id.* (citation omitted).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.] Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Smith, 2017 PA Super 242, 167 A.3d 782, 788 (Pa. Super. 2017)* (citations and quotation marks omitted).

"With regard to the second, reasonable basis prong, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions **[\*13]** had any reasonable basis." *Commonwealth v. Chmiel, 612 Pa. 333, 30 A.3d 1111, 1127 (Pa. 2011)* (citation and quotation marks omitted). "We will conclude that counsel's chosen strategy lacked a reasonable basis only if [the petitioner] proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Id.* (citation and quotation marks omitted).

Additionally, "[c]ounsel are not constitutionally required to forward any and all possible objections at trial, and the decision of when to interrupt oftentimes is a function of overall defense strategy being brought to bear upon issues which arise unexpectedly at trial and require split-second decision-making by counsel." *Commonwealth v. Koehler, 614 Pa. 159, 36 A.3d 121, 146 (Pa. 2012)* (citation omitted). "Under some circumstances, trial counsel may forego objecting to an objectionable remark or seeking a cautionary instruction on a particular point because objections sometimes highlight the issue for the

jury, and curative instructions always do." *Id.* (citation, quotation marks, and brackets omitted).

In his first two arguments, which we address together, Appellant contends the parties were aware that Marable would remain silent if called to the witness stand. Appellant's Brief at 35. Despite Marable's stated intent, **[\*14]** the Commonwealth called him as a witness. *Id.* Appellant cites multiple cases for the proposition that the Commonwealth should not call a witness if it knows in advance that the witness will remain silent. *Id.* at 36-50. Appellant asserts that this practice prejudices the defendant, because the jury could draw an adverse inference against the defendant due to the witness's silence. *Id.* at 37, 40, 47.

Appellant insists that in this case, the Commonwealth violated these principles when it called Marable to the witness stand, and trial counsel should have objected to the Commonwealth's decision. *Id.* at 50, 54. Appellant maintains that trial counsel compounded this error by failing to request a cautionary instruction that the jury should not infer Appellant's guilt from Marable's refusal to testify. *Id.* at 53.

Appellant acknowledges that trial counsel provided a strategic reason for not objecting. Nevertheless, Appellant argues that trial counsel's explanation was constitutionally unreasonable, because an alternative "course of action offered a potential for success 'substantially greater' than placing Marable on the stand . . . ." *Id.* at 58. Specifically, Appellant claims that trial counsel could have called police witnesses to testify about the heights **[\*15]** of the robbery suspects based upon their investigation reports. *Id.*

By way of background, we summarize trial counsel's testimony at the PCRA evidentiary hearing regarding these claims. Trial counsel indicated that the Commonwealth wanted to put Marable on the witness stand because he had provided a statement to police that inculpated himself and Appellant:

It was [the Commonwealth's] belief that once Mr. Marable got up, whether he testified or not, whether he testified to whatever version of events, whatever he said, that at that point [the Commonwealth] could introduce the statement he gave on the ***Brady/Lively***[3] substantive evidence. [The Commonwealth] wanted to get the statement into evidence.

N.T. PCRA Hr'g, 7/7/17, at 14-15.

In light of Marable's stated intention not to testify if called as a witness, trial counsel argued to the trial court that the Commonwealth could not put Marable's statement into evidence due to the lack of "an opportunity to cross-examine a man who hasn't said anything under oath." *Id.* at 15. The trial court ultimately agreed with trial counsel and did not permit the Commonwealth to enter the statement into evidence.

Despite these circumstances, the Commonwealth insisted **[\*16]** on calling Marable as a witness. Trial counsel did not object, explaining that he wanted the jury to look at Marable as part of a misidentification defense:

[Appellant] was identified by at least one, if not two of the daughters of the main complaining witness. [Vuthary Yun] did not . . . identify [Appellant], but he gave a description of the assailant who was in the home with the gun.

One of the parts of the description was a height, a specific height. I wanted Mr. Marable to be able to come into the courtroom so that the jury could see . . . his particular height . . . and compare it to [Appellant]. I mentioned it on the record . . . . I wanted them to see his physical stature.

* * *

It was an identification case. It was a matter of . . . the evidence seemed to be pretty clear that there were three individuals inside the home. Two were apprehended.

*Id.* at 18-19.

With respect to his decision not to request a cautionary instruction, trial counsel testified:

When I try cases, I generally take the position that I don't have a burden. If something doesn't hurt my client, why mention it? Why keep talking about it? Why keep highlighting it? Why would I highlight the fact that he didn't say anything? It didn't **[\*17]** hurt [Appellant]. I will not call attention to it.

N.T. PCRA Hr'g at 33.

As noted above, the PCRA court determined that trial counsel had a reasonable basis for implementing this strategy, which was designed to effectuate Appellant's best interest. *See* PCRA Ct. Op. at 10.

Following our review of the record and Appellant's

---

[3] ***Commonwealth v. Brady**, 510 Pa. 123, 507 A.2d 66 (Pa. 1986)*; ***Commonwealth v. Lively**, 530 Pa. 464, 610 A.2d 7 (Pa. 1992)*.

arguments, we discern no basis to disturb the PCRA court's determination. To the extent Appellant suggests that trial counsel should have followed the alternate strategy of admitting evidence of height through police witnesses, trial counsel explained that did not want to offer additional police witnesses where Marable's appearance in front of the jury served the same purpose. *See* N.T. PCRA Hr'g. at 43. On this record, we decline Appellant's invitation to second-guess trial counsel's strategy. *See Chmiel*, 30 A.3d at 1127; *see also Commonwealth v. Sneed, 616 Pa. 1, 45 A.3d 1096, 1107 (Pa. 2012)* (stating that ineffectiveness claims generally cannot succeed through comparing, in hindsight, the trial strategy actually employed with alternatives not pursued).

Similarly, as to trial counsel's failure to request an instruction cautioning the jury against drawing an adverse inference from Marable's silence, the PCRA court credited trial counsel's explanation that [*18] he did not want to highlight Marable's conduct on the stand. In light of the relevant case law and applicable standard of review, we conclude that the PCRA court properly determined that trial counsel provided a reasonable basis for his inaction. *See Koehler, 36 A.3d at 146*; *Miller, 102 A.3d at 992*. Therefore, Appellant's first two claims warrant no relief.

In his third and fourth claims, Appellant asserts that a co-defendant's guilty plea "cannot be considered as evidence against the defendant because the defendant has a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else." Appellant's Brief at 59 (citation, quotation marks, and brackets omitted). "Furthermore, if a co-defendant's guilty plea is introduced to the jury, it is incumbent upon trial counsel to request the trial judge to give adequate and clear cautionary instructions to the jury to avoid guilt by association as to the defendant being tried." *Id.* at 60 (citation and quotation marks omitted).

Regarding the parties' stipulation about Marable's guilty plea, Appellant insists the Commonwealth wanted this evidence in front of the jury to create an inference of "guilt [*19] by association." *Id.* Appellant argues that the stipulation created such an inference, which "destroyed trial counsel's misidentification defense by making it more likely than not [Appellant] was the basement gunman." *Id.* Appellant claims that trial counsel was ineffective for entering into the stipulation, trial counsel had no strategic reason for failing to request a cautionary instruction, and trial counsel's decisions resulted in prejudice to

Appellant. *Id.* at 61.

Instantly, trial counsel testified about his decision to enter into the stipulation regarding Marable's guilty plea as follows:

The evidence was clear that there was a conspiracy, there was a robbery, a burglary. The evidence was also clear that there were two other people who were involved, one of which was Jerry Jean, because he was caught on scene and that came out in evidence. To me, . . . stipulating to the fact that Marable pled to those offenses did not inculpate [Appellant] because he was not his only co-defendant. The defense was that Jean and Marable were involved. The third guy, whoever he was, was not [Appellant].

Had [Appellant] been the only alleged co-conspirator, that would have been a problem. We know there were at [*20] least two other people. To me, it didn't prejudice [Appellant] by my stipulating to that.

N.T. PCRA Hr'g. at 26-27. Trial counsel also declined to seek a cautionary instruction about guilt by association, because he did not believe that evidence of Marable's guilty plea inculpated Appellant. *Id.* at 35.

The PCRA court agreed that the stipulation "was in [Appellant's] best interest as it placed blame for this home invasion on other persons who were not tied to [Appellant] in any manner whatsoever." PCRA Ct. Op. at 10. Likewise, the court determined that trial counsel did not need to request a cautionary instruction where "nothing in the case tied Marable to [Appellant]." *Id.* The PCRA court's conclusions are sound. *See Koehler, 36 A.3d at 146*; *Chmiel*, 30 A.3d at 1127; *Miller, 102 A.3d at 992*.

In his fifth issue, Appellant complains that two police witnesses, Detectives Hopkins and Conn, provided testimony about Marable's post-arrest statement. Appellant's Brief at 62. Appellant argues that evidence of Marable's statement was irrelevant, because he refused to testify. *Id.* Appellant claims the Commonwealth's sole reason for presenting this testimony was to allow the jury to infer that Marable's statement must have incriminated Appellant. *Id.*

Appellant asserts that any [*21] competent counsel would have immediately objected to such testimony, because Appellant could not challenge it through a cross-examination of Marable. *Id.* Appellant insists that trial counsel was ineffective for failing to object, trial counsel did not have a strategic reason for his inaction, and trial

counsel's failure resulted in prejudice to Appellant. *Id.* at 62-63.

Instantly, the detectives did not describe the contents of Marable's post-arrest statement, and the Commonwealth did not enter the statement into evidence. *See* N.T. PCRA Hr'g at 36. Nevertheless, PCRA counsel attempted to get trial counsel to admit that the jury might infer that Marable's statement implicated Appellant in light of the Commonwealth's attempt to have Marable testify. Trial counsel did not accept PCRA counsel's reasoning and reiterated, "As long as the substantive portion of the statement did not come into the record, . . . the jury is not going to say [Marable] must have said something about [Appellant]." *Id.* at 22.

As with trial counsel's decision to stipulate to Marable's guilty plea, the PCRA court agreed that the detectives' testimony advanced Appellant's theory that other individuals were responsible for the home invasion: [*22]

> [F]ailing to object to the testimony of the detective[s] who stated that Marable confessed was in [Appellant's] best interest. That testimony went to [Appellant's] claim of innocence. Someone with whom [Appellant] had no connection confessed. As the content of the confession was not admitted, [Appellant] was not implicated. Thus, there was no reason to object.

PCRA Ct. Op. at 10. We cannot say that the PCRA court erred in its analysis. *See Koehler, 36 A.3d at 146*; *Chmiel*, 30 A.3d at 1127; *Miller, 102 A.3d at 992*.

In his final claim, Appellant contends that the Commonwealth improperly referenced Marable's guilty plea and silence during the portion of its closing argument that we previously quoted. Appellant's Brief at 63. Appellant argues that when viewed in context, the Commonwealth's comments effectively implored the jury to find that Marable's guilty plea and silence proved Appellant's guilt. *Id.* at 64. Appellant maintains that the comments were impermissible, because he had the right to have his guilt or innocence determined by the evidence against him rather than what happened during the Commonwealth's prosecution of Marable. *Id.* at 63-64. Appellant insists that trial counsel was ineffective for failing to object to these remarks, trial counsel had no reasonable basis [*23] for his failure, and the failure resulted in prejudice to Appellant. *Id.* at 64.

"To establish the third, prejudice prong [of the test for ineffectiveness], the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's

ineffectiveness." *Chmiel, 30 A.3d at 1127-28* (citation omitted).

> In making this determination, a court hearing an ineffectiveness claim must consider the **totality of the evidence** before the judge or jury . . . . Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Ultimately, a reviewing court must question the reliability of the proceedings and ask whether the result of the particular proceeding [was] unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

*Commonwealth v. Crispell, 193 A.3d 919, 932 (Pa. 2018)* (citations and quotation marks omitted) (emphasis in original).

"In closing arguments, a prosecutor may comment on the evidence and any reasonable inferences arising from the evidence." *Commonwealth v. Charleston, 2014 PA Super 116, 94 A.3d 1012, 1024 (Pa. Super. 2014)* (citation omitted).

> A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present [*24] his or her arguments with logical force and vigor. The prosecutor is also permitted to respond to defense arguments. Finally, in order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made.

*Id.* (citation omitted).

Instantly, trial counsel conceded that he should have objected to the Commonwealth's closing argument:

> No strategic reason [for failing to object]. When I was informed of [Appellant's PCRA] petition and I went back and [the assistant district attorney] showed me the transcript, I don't recall [the remarks at issue]. Obviously, it did [happen]. If you asked me today should I have objected, I would say, "Yes, I should have objected."

N.T. PCRA Hr'g at 29.

Despite trial counsel's testimony, the PCRA court concluded that there was no reasonable probability that the outcome of the proceedings would have been different but for counsel's failure to object. *See* PCRA Ct. Op. at 11. The PCRA court highlighted the evidence against Appellant, including: (1) Dina Khem's positive

Commonwealth v. In

identifications of Appellant as the gunman immediately after the incident and at trial; (2) the victims' testimony **[\*25]** that three men were involved in the home invasion, and police arrived to find two men inside the house and Appellant crouching behind a vehicle parked outside; and (3) Appellant's attempted flight in a vehicle containing a firearm and other items linked to Mr. Jean. *Id.*

Under the totality of this evidence, trial counsel's failure to object to the Commonwealth's closing argument did not create a reasonable probability that the outcome of the proceedings would have been different. ***See*** *Crispell, 193 A.3d at 932*; ***Chmiel***, *30 A.3d at 1127-28*. Therefore, the PCRA court properly dismissed the PCRA petition.[4] *Miller, 102 A.3d at 992*.

Order affirmed.

Judgment Entered.

Date: 4/23/19

---

**End of Document**

---

[4] Appellant also suggests that he is entitled to relief based upon the theory that his claims cumulatively undermine confidence in the convictions. Appellant's Brief at 75. "[N]o number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. When the failure of individual claims is based upon a lack of prejudice, however, then the cumulative prejudice from those individual claims may properly be assessed." *Commonwealth v. Elliott, 622 Pa. 236, 80 A.3d 415, 450 (Pa. 2013)* (citations omitted). Here, we have rejected Appellant's claims of ineffectiveness based solely on a lack of prejudice in connection with his final issue only. Thus, there can be no aggregation of prejudice from multiple ineffectiveness claims, and Appellant's claim of cumulative error fails.

014

0037_Opinion

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CRIMINAL SECTION**

**FILED**

JAN 0 9 2018

Office of Judicial Records
Appeals/Post Trial

COMMONWEALTH OF PENNSYLVANIA          :          CP-51-CR-0004829-2007

:

v.                                    :

:

JOHN IN                    :          SUPERIOR COURT



CP-51-CR-0004829-2007 Comm. v. In, John N.
Opinion

**OPINION**

Byrd, J.

8051322731

January 9, 2018

John In was convicted by a jury of criminal conspiracy on September 15, 2008, and of burglary, two counts of robbery, possession of an instrument of crime (PIC), and violating Sections 6106 and 6108 of the Uniform Firearms Act (VUFA) on September 16, 2008. Thereafter, this court held a bench trial on the charge of violating Section 6105 of the Uniform Firearms Act and found him guilty.[1] On December 19, 2008, petitioner was sentenced to an aggregate term of twenty-five to fifty years imprisonment to be followed by ten years probation. Petitioner's post-sentence motion was denied on April 8, 2009. On May 8, 2009, petitioner filed a notice of appeal. The Superior Court affirmed petitioner's judgment of sentence on July 23, 2010, and the Supreme Court denied petitioner's allowance of appeal on January 5, 2011.

On July 15, 2011, petitioner filed a *pro se* Post Conviction Relief Act (PCRA) petition. David Rudenstein, Esquire, was appointed counsel on December 29, 2011 and entered his appearance on that same day. Counsel filed an amended PCRA petition on October 4, 2012, and the Commonwealth filed a motion to dismiss on January 24, 2013. Petitioner filed a supplemental

---

[1] Petitioner's motion to sever this charge was granted on September 10, 2008.

1

*Commonwealth v. John In*

amended petition on July 19, 2013 and a supplemental motion to dismiss was filed by the Commonwealth on July 30, 2013. This court issued a notice of intent to dismiss the petition, pursuant to Pennsylvania Rule of Criminal Procedure 907 on September 6, 2013. On October 11, 2013, this court formally dismissed the PCRA petition. On October 28, 2013, petitioner filed a notice of appeal. Petitioner then filed a *pro se* "motion for appointment of new counsel or in the alternative waive counsel" on November 7, 2013. On January 14, 2014, this court issued an Opinion. On March 13, 2014, the Superior Court ordered this court to conduct an on-the-record determination as to whether petitioner's waiver of counsel was knowing, intelligent and voluntary pursuant to *Commonwealth v. Grazier,* 713 A.2d 81 (Pa. 1998). After a *Grazier* hearing, this court permitted petitioner to proceed *pro se*, and appointed counsel withdrew on April 11, 2014.

On April 3, 2015, Craig Cooley, Esquire, was retained to represent petitioner in this PCRA proceeding. On October 26, 2016, the Superior Court issued an Opinion directing this court to conduct an evidentiary hearing and make necessary factual findings on the issues raised by petitioner. Counsel for petitioner failed to appear for an evidentiary hearing scheduled on February 3, 2017. An evidentiary hearing was subsequently held on July 7, 2017, and this court formally dismissed the PCRA petition on August 18, 2017. Petitioner then filed a notice of appeal on September 5, 2017. Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), this court ordered petitioner to file a statement of matters complained of on appeal on September 11, 2017. On October 2, 2017, petitioner filed said statement.

## **STATEMENT OF FACTS**

The following facts are reproduced from this court's January 14, 2014 Opinion:

On March 7, 2007, at 5:00 a.m., Vuthary Yun (Yun) saw three men break into his row home at 720 Mifflin Street as he washed dishes in his kitchen. (N.T. 9/10/08, pp. 101-102). As Yun turned in their direction, one

2

*Commonwealth v. John In*

man pointed a gun at his head and told him to shut up. (N.T. 9/10/08, pp. 23, 101-102). [Petitioner] pushed Yun to the bottom basement step and asked him for money and jewelry. (N.T. 9/10/08, p. 103). When Yun told [petitioner] he did not have any money, [petitioner] told him to "shut the fuck up." (N.T. 9/10/08, pp. 103-104, 124). [Petitioner] then tied Yun's hands behind his back with red string, stuffed cloth into his mouth, placed the victim's head between his legs, and took him to the top step. (N.T. 9/10/08, pp. 103-105, 108, 124-125).

Yun's oldest daughter, Dina Khem, heard [petitioner] yelling at Yun from her bedroom in the basement. (N.T. 9/10/08, pp. 124, 133; N.T. 12/19/08, p. 12). As a result, she called 911 on her cell phone. (N.T. 9/10/08, pp. 124, 133). About five (5) to seven (7) minutes later, Dina heard the police upstairs and went over toward the basement steps. (N.T. 9/10/08, p. 124). As Dina walked up the steps, she saw [petitioner] wearing a dark hoodie. (N.T. 9/10/08, pp. 124-126, 130). [Petitioner] was holding the basement doorknob in one hand and a gun in the other hand while standing behind Yun, who faced her while being tied up at the top step. (N.T. 9/10/08, pp. 124-126). Dina also saw [petitioner] pull back the basement door when Angela Khem, her fifteen-year-old sister, tried to open the door. (N.T. 9/10/08, p. 128). [Petitioner] pointed the gun at Dina and told her to "shut the fuck up" when she tried to talk to Yun in Cambodian. (N.T. 9/10/08, pp. 126-127). One to two minutes later, Dina turned and went back into her bedroom. (N.T. 9/10/08, pp. 127, 144-145). Shortly thereafter, Dina called the house phone and received confirmation from Angela that it was safe to leave the basement. (N.T. 9/10/08, pp. 78, 82, 128-129). When Dina came upstairs, she joined Yun, Angela, and her eleven-year-old brother Keith Khem, who were all with the police. (N.T. 9/10/08, pp. 127-129).

While [petitioner] held Yun at gunpoint, Christina Khem, Yun's sixteen-year-old daughter, was awakened by co-conspirators Jerry Jean (Jean) and Dyshon Marable (Marable), when they came into her middle bedroom on the second floor. (N.T. 9/10/08, pp. 75-76). Jean, wearing a green sweatshirt, ordered Christina to get up and take off her jewelry. (N.T. 9/10/08, pp. 75-78). Jean grabbed Christina's rings and charm bracelet once she took them off and placed them on a pillow next to her. (N.T. 9/10/08, pp. 76-78). Marable, wearing a blue Adidas sweat jacket, first stood over Christina and then walked with Jean into Yun's adjoining bedroom, where Keith was asleep. (N.T. 9/10/08, pp. 77-79). Christina followed them after being ordered to do so. (N.T. 9/10/08, pp. 78-79). Jean then opened the closet door and asked Christina where they kept money and jewelry. (N.T. 9/10/08, pp. 78-79). Christina denied having any money or jewelry. (N.T. 9/10/08, pp. 78-79). Jerry Jean then said: "[W]ell, you better tell me something or your dad's going to die." (N.T. 9/10/08, p. 79).

As this home invasion was in progress, Police Officers Battles, Nolan and Robinson arrived on the scene in response to a police radio call. (N.T. 9/11/08, p. 29). After knocking and receiving no response, Officer Battles

3

went through the slightly-opened front door and yelled: "Did anyone call the police?" (N.T. 9/11/08, p. 30). Upstairs, Jean pointed a gun at Christina, covered her mouth with his latex gloved hand, and ordered her to be silent. (N.T. 9/10/08, pp. 79-81, 80, 86, 89). Officer Robinson heard an African-American voice from upstairs yell back: "Nobody called the police," which he thought odd after observing a ten to twelve-year-old Asian male in the corner on the first floor. (N.T. 9/11/08, p. 30). Officer Battles again yelled: "Did anybody here call the police?" (N.T. 9/11/08, p. 30). The voice again denied calling the police. (N.T. 9/11/08, p. 30). After Officer Battles yelled back that police had received a call from the basement, Jean released Christina and ran toward the second floor back bedroom. (N.T. 9/10/08, p. 81). Christina immediately ran down the steps, screaming: "Help me, help me, they have guns there's somebody upstairs." (N.T. 9/11/08, pp. 31, 40).

In response, Officer Nolan ran upstairs and saw Jean sliding out of the back bedroom window. (N.T. 9/11/08, pp. 31, 47-48). Officer Nolan tried to pull Jean back into the room, but he was unable to do so. (N.T. 9/11/08, p. 48). Officers Robinson and Battles began to pursue Jean, who ran past Officer Robinson and hid inside a shed in the backyard. (N.T. 9/11/08, pp. 31-33). Officers Robinson and Battles ordered Jean to come out of the shed and to lie on the ground. (N.T. 9/11/08, pp. 32-33, 42). Refusing to comply with their orders, Jean exited the shed and climbed onto an approximately eight-foot-high fence. (N.T. 9/11/08, p. 34). Once he reached the top of the fence, Jean went inside his pocket. (N.T. 9/11/08, p. 34). Having been informed that these men had guns, Officer Battles fired a shot at Jean, who climbed over the fence. (N.T. 9/11/08, p. 34, 43).

Hearing this gunshot, Officer Nolan came back down to the first floor and ran to the backyard. (N.T. 9/11/08, pp. 31-33, 42, 48). Learning that Jean had run down the alley, Officer Nolan ran out of the front of the house toward the alley entrance. (N.T. 9/11/08, p. 48). Several other police officers responded to the scene after receiving a police radio call about gunshots being fired at this location. (N.T. 9/11/08, pp. 88, 95, 116, 128). When Officer Nolan reached the 600 block of Mifflin Street, he assisted Police Officer Cannon, one of the responding officers, in apprehending Jean, who had been hiding between two parked cars, which were near a white Nissan Altima that had its lights on. (N.T. 9/11/08, pp. 35-37, 45, 49, 80-82). Shortly thereafter, Police Officers Jenkins and Baldwin arrived at 7th and Mifflin Streets and took custody of Jean. (N.T. 9/11/08, p. 131). Before they placed him into the police wagon, they searched him and found a green hoodie. (N.T. 9/11/08, pp. 131-132). Inside this hoodie, they found pieces of a white latex glove. (N.T. 9/11/08, p. 132).

As Officers Robinson and Battles ran out to the backyard in pursuit of Jean, Christina encountered a man in dark clothes with a hood over his head running from the direction of the kitchen toward the front vestibule. (N.T. 9/10/08, pp. 82-85, 90). As this man ran past Christina and observed the police activity, he exclaimed: "[O]h shit, what's happening," and walked

4

018

outside. (N.T. 9/10/08, pp. 82-85). When Police Officer Birch arrived at 7th and Mifflin Streets, he observed the man, [petitioner], kneeling outside of the passenger side of the white Nissan Altima. (N.T. 9/11/08, pp. 80, 95-96, 105). [Petitioner] entered through the front passenger's side of the vehicle, put the car in reverse, and sped eastbound on the 600 block of Mifflin Street. (N.T. 9/11/08, pp. 80-81, 85-86, 96, 98).

At that point, Officer Birch pursued [petitioner] in his police vehicle. (N.T. 9/11/08, p. 96). As Sergeant Woods was approaching him from the opposite direction, [petitioner] crashed the Nissan Altima into a house at 524 Mifflin Street, jumped out of the car and ran westbound on the 500 block of Mifflin Street. (N.T. 9/11/08, pp. 90-91, 96-97, 99-100). Officer Birch parked his car next to the Nissan Altima and pursued [petitioner] on foot. (N.T. 9/11/08, pp. 96-97, 100). As [petitioner] jumped over a fence and exited the 500 block of Hoffman Street, he ran into Sergeant Woods who apprehended him. (N.T. 9/11/08, pp. 89, 97, 100). Officers Jenkins and Baldwin arrived at 5th and Mifflin Streets and took custody of [petitioner]. (N.T. 9/11/08, p. 132). Before placing [petitioner] into the police wagon, they recovered a blue camouflage hoodie from him. (N.T. 9/11/08, p. 132).

When Officer Robinson took Dina and Christina to their police wagon, the victims observed two men sitting inside. (N.T. 9/10/08, pp. 91-92; N.T. 9/11/08, p. 38). Dina immediately identified [petitioner] as the man who held Yun at gunpoint in the basement. (N.T. 9/10/08, pp. 130-131). Yun was unable to identify [petitioner] to the police because he had been ordered at gunpoint to not look at [petitioner]'s face. (N.T. 9/10/08, p. 107). On the next morning, Dina and Christina were taken to the South Detectives police station, where they provided written statements to the police. (N.T. 9/10/08, pp. 93-95). In Christina's statement, she identified Jean as one of the perpetrators. (N.T. 9/10/08, pp. 93-95). Later in the day, Detectives Conn and Detective Hopkins found Marable wearing a blue Adidas sweat jacket, hiding underneath clothes inside a bedroom closet on the second floor of the victims' home. (N.T. 9/11/08, pp. 10, 160). Marable was arrested and taken to the South Detectives police station. (N.T. 9/11/08, p. 161).[2]

Surveying the residence, Detective Conn observed that the kitchen window bars were spread apart wide enough for a person to enter Yun's home. (N.T. 9/11/08, pp. 11, 22-23). In the kitchen, Detective Conn recovered red string and a piece of a clear latex glove in the front vestibule of the house. (N.T. 9/11/08, pp. 22-24). In the backyard shed, Police Officer McGough recovered a .9mm semi-automatic loaded Heckler and Koch handgun underneath a pile of leaves and a latex glove. (N.T. 9/11/08, pp. 11-13, 24, 27, 128, 179). When Officer Birch walked toward his police vehicle, he saw a handgun in the front driver's side of the white Nissan Altima and

---

[2] On December 3, 2007, Marable entered a negotiated guilty plea to three counts of robbery, burglary, possession of an instrument of crime, and conspiracy. (N.T. 9/11/08, p. 78; CP-51-CR-0004827-2007). On March 11, 2008, Jean entered a negotiated guilty plea to three counts of first-degree robbery, conspiracy, burglary, and possession of an instrument of crime before this court. (N.T. 12/19/08, p. 9; CP-51-CR-0004828-2007).

5

*Commonwealth v. John In*

019

latex gloves in the back. (N.T. 9/11/08, pp. 101, 112). Police Officer Seabron had also observed this gun when he parked the abandoned white Nissan Altima while Officer Birch pursued [petitioner]. (N.T. 9/11/08, pp. 118-124). For safety reasons, Officer Wilson took possession of this .9mm semi-automatic loaded Zig Zauer handgun. (N.T. 9/11/08, pp. 14, 25, 27). At trial, counsel stipulated that Police Officer Johnson from the Firearms Identification Unit test-fired the two recovered handguns and found them to be operable at the time they were submitted to his unit. (N.T. 9/11/08, p. 185). After obtaining a search warrant for the Nissan Altima, Detective Conn seized from the vehicle a title listing Roan Adderly as its owner, a driver's license listing the name of Smith Printemps, two men's coats, three plastic drink containers, three traffic tickets listing the name Jerry Jean, one Shoprite card listing the name Jacquelyn Jean, and one black tee shirt. (N.T. 9/11/08, pp. 16-21). Later, Yun discovered that sixty dollars ($60) had been taken from his wallet, which he left upstairs. (N.T. 9/10/08, pp. 106-107).

## STATEMENT OF MATTERS

Petitioner raises the following issues in his statement of matters complained of on appeal:

1. Trial counsel made a series of objectively unreasonable decisions regarding the prosecutor's attempt to have Dyshon Marable testify against John In. Individually and cumulatively, these unreasonable decisions prejudiced Mr. In because they allowed the prosecutor to present and the jury to consider irrelevant, inadmissible, and highly prejudicial evidence regarding Mr. Marable's pre-trial statement and guilty plea without being subjected to cross-examination and without instructing the jury it could not consider Mr. Marable's guilty plea as substantive evidence of Mr. In's guilt. Had trial counsel lodged timely objections there is a reasonable probability the trial court would have prohibited the prosecutor from presenting Mr. Marable as a Commonwealth witness as well as the other evidence relating to his guilty plea and pre-trial statement. It would have also struck the prosecutor's impermissible closing arguments relating to Mr. Marable's refusal to testify, statement, and guilty plea. Trial counsel did not have a reasonable basis not to make the Individually and collectively, the introduction and consideration of this evidence undermines confidence in the jury's guilty verdicts warranting a new trial and the PCRA court erred when it refused to grant a new trial because the record supported Mr. In's right to a new trial based on trial counsel's ineffectiveness. U.S. Const. amdts. 5, 6, 8, 14; Pa. Const. art. 1, §§ 1, 6, 9.

2. In his supplemental amended PCRA petition, appointed PCRA counsel raised a cumulative prejudice claim, but did not set forth specific, reasoned, and legally and factually supported arguments for this claim. Appointed PCRA counsel did not have a strategic reason for not adequately briefing this claim. Appointed PCRA counsel's ineffectiveness prejudiced Mr. In because the

6

020

PCRA court ruled Mr. In did not "properly aver" this claim and thus waived
it. U.S. Const. amdts. 5, 6, 8, 14; Pa. Const. art. 1, §§ 1, 6, 9.

## DISCUSSION

The Post Conviction Relief Act affords collateral relief to those individuals convicted of
crimes they did not commit and to those individuals serving illegal sentences. 42 Pa. C.S. §9542.
Claims pursuant to the PCRA are extraordinary assertions that the judicial system failed; they are
not merely direct appeal claims that are made at a later stage of the judicial proceedings.
*Commonwealth v. Rivers*, 786 A.2d 923 (Pa. 2001). A petitioner is entitled to file all PCRA
petitions, including second and subsequent petitions within one (1) year from the date his judgment
of sentence becomes final. 42 Pa. C.S. §9545(b)(1); 42 Pa. C.S. §9545(b)(3). A petitioner is
eligible for relief under the PCRA if he proves by a preponderance of the evidence that his
conviction or sentence resulted from one or more of the enumerated circumstances found at 42 Pa.
C.S. §9543(a)(2) (setting forth the eligibility requirements of the PCRA). *Commonwealth v.
Ligons*, 971 A.2d 1125 (Pa. 2009).

A petitioner may be entitled to relief under the PCRA if he is able to plead and prove that
a conviction or sentence resulted from ineffective assistance of counsel which, in the
circumstances of the particular case, so undermined the truth-determining process that no reliable
adjudication of guilt or innocence could have taken place. 42 Pa. C.S. §9543(a)(2)(ii). It is the
ineffectiveness claim, not the underlying error at trial, which is reviewed. *See Commonwealth v.
Clayton*, 816 A.2d 217 (Pa. 2002). Under the PCRA, an allegation of ineffective assistance of
counsel amounts to constitutional malpractice where counsel's incompetence deprived a defendant
of his Sixth Amendment right to counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984);
*Commonwealth v. Williams*, 782 A.2d 517 (Pa. 2001).

7

*Commonwealth v. John In*

021

The law presumes that counsel was effective, and the petitioner carries the burden of proving otherwise. *Commonwealth v. Baker*, 614 A.2d 663, 673 (1992). To prevail on an ineffective assistance of counsel claim, a three-pronged test must be satisfied: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). Furthermore, counsel's choices cannot be evaluated in hindsight, but rather should be examined in light of the circumstances at that time. *See Commonwealth v. Hardcastle*, 701 A.2d 541 (Pa. 1997). Even if there was no reasonable basis for counsel's course of conduct, a petitioner is not entitled to relief if he fails to demonstrate prejudice. *See Commonwealth v. Douglas*, 645 A.2d 226 (Pa. 1994).

Our Superior Court, in its October 26, 2016 remand order, directed this court to conduct an evidentiary hearing and articulated petitioner's claims thusly:

> Stripped to its essence, Appellant's first issue subsumes six distinct ineffectiveness claims against his trial counsel. Trial counsel was ineffective for: (A) failing to object to the Commonwealth's presentation of Marable as a witness at trial when the Commonwealth knew that Marable would refuse to testify against Appellant; (B) requesting a cautionary instruction that the jury should not infer Appellant's guilt from Marable's refusal to testify; (C) stipulating to the fact that Marable entered into a guilty plea in connection with the home invasion robbery *sub judice*; (D) failing to request a cautionary instruction informing the jury that it should not infer Appellant's guilt from Marable's admitted guilt (guilt by association); (E) failing to object to the detective's testimony referencing Marable's post-arrest statement; and (F) failing to object to the Commonwealth's closing argument referencing Marable's silence and refusal to testify against Appellant on behalf of the Commonwealth. In his second issue, Appellant argues that his appointed PCRA counsel was ineffective insofar as counsel failed to develop a cumulative prejudice claim.

Superior Court Opinion at 8-9.

8

*Commonwealth v. John In*

In accordance therewith, an evidentiary hearing was held on July 7, 2017, and petitioner called trial counsel Richard Giuliani, Esquire, as his only witness. The Commonwealth did not call any witnesses to testify. After the evidence was closed, this court took the matter under advisement and, on August 18, 2017, issued following findings of fact and conclusions of law:

> John In was tried to a jury before this Court in a home invasion case and convicted of numerous offenses, including robbery, burglary, conspiracy and weapons offenses. On appeal the Superior Court affirmed judgment of sentence.
>
> Mr. In, petitioner, herein filed a Post Conviction Relief Act petition and this Court dismissed his claims without an evidentiary hearing.
>
> On October 26, 2016, the Superior Court issued an order vacating this Court's dismissal and remanded the case for an evidentiary hearing.
>
> An evidentiary hearing was held on July 7, 2017 and PCRA counsel called one witness, Richard Giuliani, Esq., petitioner's trial counsel.
>
> The PCRA standard is straightforward, a petitioner may be entitled to relief if he pleads and proves that a conviction resulted from ineffective assistance of counsel, which in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place; COMMONWEALTH versus CLAYTON, 816 A.2d, 217, a 2002 case. Since the law presumes that counsel was effective, the petitioner, in order to prevail on an ineffectiveness claim, must meet the three prong PIERCE TEST which states the following:
>
> 1: The underlying claim is of arguable merit; 2: Counsel had no reasonable strategic basis for his action or inaction; 3: But for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceeding would have been different. PIERCE is at 527 A.2d 973, 1987.
>
> Further, to obtain PCRA relief, petitioner must meet the STRICKLAND "actual prejudice" test, which requires a showing that counsel's performance was deficient and that the deficient performance prejudiced him; that is, the outcome of the case would have been different but for counsel's deficient performance. PCRA counsel made the following claims before the Superior Court:
>
> One, trial counsel was ineffective for failing to object to the Commonwealth's presentation of co-defendant Marable where the prosecutor knew Marable would refuse to testify.
>
> Two, trial counsel was ineffective for failing to request a cautionary instruction that the jury should not infer petitioner's guilt from Marable's refusal to testify.
>
> Three, trial counsel was ineffective for stipulating to the fact that Marable entered a guilty plea in the same case wherein petitioner was charged.

9

023

Four, trial counsel was ineffective for failing to request a cautionary instruction that the jury should not infer petitioner's guilt from Marable's admission of guilt.

Five, trial counsel was ineffective for failing to object to the detective's testimony that Marable made a confession.

Six, trial counsel was ineffective for failing to object to the Commonwealth's closing argument referencing Marable's silence and his refusal to testify against the petitioner.

As the testimony from trial counsel makes abundantly clear, he, Mr. Giuliani, had a reasonable strategic basis for each of his challenged decisions, all designed to effectuate petitioner's best interest.

Taking these claims in order:

First, trial counsel testified that although he believed Marable would refuse to answer questions, such refusal inured to petitioner's best interest. Indeed, had Marable offered testimony, the Commonwealth would have admitted his statement as substantive evidence pursuant to the BRADY/LIVELY line of cases. Further, trial counsel wanted the jury to see co-defendant Marable, who was much taller than petitioner, as was the other co-defendant, Jerry Jean. The trial evidence established that three perpetrators committed the home invasion: Marable was found inside the house, and Jean was arrested in the backyard. The male victim, Mr. Yun, could not identify petitioner and gave a description of the third male that did not fit John In.

Second, in light of the foregoing, there was no sound reason to request a cautionary instruction because Marable's refusal to testify did not inculpate petitioner. Further, as Mr. Giuliani stated, and I'm paraphrasing here: "If something doesn't hurt my client, why highlight it by seeking a cautionary instruction?"

Third, trial counsel testified that his entire defense strategy was that Mr. In was not involved in the home invasion and it was committed by others; Mr. Marable, Mr. Jean and a third unidentified person. Thus, his stipulation that Marable entered a guilty plea was in petitioner's best interest as it placed blame for this home invasion on other persons who were not tied to John In in any manner whatsoever.

Fourth, in light of the foregoing, there was no reasonable basis to request an instruction that petitioner's guilt should not be inferred from Marable's guilty plea. As stated above, nothing in the case tied Marable to John In. A cautionary instruction would have served no purpose other than to highlight something that had not inured to petitioner's disadvantage.

Fifth, failing to object to the testimony of the detective who stated that Marable confessed was in John In's best interest. That testimony went to petitioner's claim of innocence. Someone with whom petitioner had no connection confessed. As the content of the confession was not admitted, petitioner was not implicated. Thus, there was no reason to object.

Sixth, here petitioner claims trial counsel was ineffective for failing to object to the prosecutor's closing argument wherein she is alleged to have argued that Marable failed to testify in order to protect John In.

10

*Commonwealth v. John In*

024

The law is clear: "Every unwise or irrelevant remark made in the course of a trial does not compel the grant of a new trial." The focus must be on whether the defendant was denied a fair trial, not whether the defendant was denied a perfect trial. See COMMONWEALTH versus KEMP, 753 A.2d 1278, 2008. As this Court wrote in the original 1925 opinion, that remark did not adversely impact the verdict in this case.

Here the evidence against John In was substantial. Indeed, overwhelming. It included the following:

*One*: John In was identified by one of the home invasion victims, Dana Khem, as the gunman.

*Two*: Her father, Mr. Yun, described the gunman as wearing a hooded sweater and John In was wearing a sweatshirt, hooded sweatshirt when arrested shortly after the home invasion.

*Three*: Three men were involved in this home invasion. One was arrested inside the home, a second was arrested in the backyard and the third, John In, walked out of the house after dropping a latex glove.

*Four*: Immediately after police arrive John In was found in a car just outside the subject premises in which a gun was on the front seat and a box of latex gloves on the back seat.

*Five*: John In entered that car and attempted to flee. During flight he crashed the car and was arrested near the scene of the home invasion.

Thus, it can clearly be seen that trial counsel had reasonable basis for his decisions in this case. This is especially so in light of the teachings from COMMONWEALTH versus HARDCASTLE; "counsel's choices cannot be evaluated in hindsight but rather should be examined in light of the circumstances at the time." 701 A.2d 541. It's a 1997 case.

The foregoing notwithstanding, petitioner cannot demonstrate prejudice. In light of the overwhelming evidence in this case petitioner cannot show that but for counsel's alleged errors or omissions there was a reasonable probability that the outcome of this case would have been different.

Finally, petitioner argues that relief is due because of cumulative prejudice. However, his claims are all meritless and no number of failed claims may offer a route to relief.

Finally, this PCRA petition is meritless. Accordingly, this Court stands by its initial decision to formally dismiss petition.

The matter will be returned to the Superior Court where it is now on appeal.

N.T. 8/18/2017, 6-13.

As the court held in *Commonwealth v. Fisher*, 813 A.2d 761, 767 (Pa. 2002), "[s]peculation by hindsight that a different strategy might possibly have been successful is not the test which establishes ineffectiveness of counsel." In *Strickland v. Washington*, 466 U.S. 668, 689 (1984), the

11

*Commonwealth v. John In*

025

United States Supreme Court instructed that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

Additionally, "where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Howard*, 719 A.2d 233, 237 (Pa. 1998). The Court has further declared that "[a] chosen strategy will not be found to have lacked a reasonable basis unless it is proven 'that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" *Commonwealth v. Williams*, 899 A.2d 1060, 1064 (Pa. 2006) (quoting *Howard*, 719 A.2d at 237). Indeed, "a claim of ineffectiveness will not succeed by comparing, in hindsight, the trial strategy trial counsel actually employed with the alternatives foregone." *Commonwealth v. Miller*, 987 A.2d 638, 653 (Pa. 2009).

Accordingly, for the foregoing reasons, the dismissal of petitioner's PCRA petition should be AFFIRMED.

BY THE COURT:

SANDY L.V. BYRD     J.

12

*Commonwealth v. John In*