# First Judicial District of Pennsylvania

*51CR00048292007*
*John In*

---

*Trial (Jury) Volume 1*
*September 09, 2008*



---

*First Judicial District of Pennsylvania*
*100 South Broad Street, Second Floor*
*Philadelphia, PA 19110*
*(215) 683-8000   FAX:(215) 683-8005*

*Original File IN2.PRT, 156 Pages*
*CRS Catalog ID: 09110735*

## Page 1

[1]
[2]  IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
[3]  CRIMINAL TRIAL DIVISION
[4]  -----
[5] COMMONWEALTH          :
                         :
[6]                      :
   vs.                   :  CP-51-CR-0004821-2007
[7]                      :
                         :
[8] JOHN IN              :
[9]  -----
[10]  Room 801, Criminal Justice Center
[11]  Philadelphia, Pennsylvania
[12]  -----
[13]  TUESDAY, SEPTEMBER 9, 2008
[14]  -----
[15]  BEFORE: THE HONORABLE SANDY L.V. BYRD, J.
[16]  -----
[17]  JURY SELECTION
[18]  -----
[19] APPEARANCES:
[20]  LAUREN BARALDI, ESQUIRE
   Assistant District Attorney
[21]  for the Commonwealth
[22]  RICHARD GIULIANI, ESQUIRE
   Attorney for the Defendant
[23]
[24]
[25]

## Page 2

[1]  COMMONWEALTH VS. JOHN IN.
[2]  (The Court was called to Order.)
[3]  THE COURT: Commonwealth vs. John In.
[4]  Richard Giuliani for John In, numbers 2, 3,
[5]  4. Defendant John In is here.
[6]  The Commonwealth is represented by
[7]  Ms. Baraldi. Three cases here are number 2,
[8]  3 and 4. Number 2 is CP-51-CR-0004768-2007,
[9]  number 3 is CP-51-CR-0004821-2007, and number
[10]  4 is CP-51-CR-0004829-2007.
[11]  MS. BARALDI: Yes.
[12]  THE COURT: Let's have the defendant
[13]  sworn.
[14]  THE COURT CRIER: State your name, spell
[15]  your last name for us.
[16]  THE DEFENDANT: John In, I-N.
[17]  - - -
[18]  . . . JOHN IN, having
[19] been duly sworn, was examined and testified
[20] **as follows**:
[21]  - - -
[22]  THE COURT: You may be seated.
[23]  Is the Commonwealth ready to proceed?
[24]  MS. BARALDI: Yes, sir.
[25]  THE COURT: Are these matters

## Page 3

[1]  COMMONWEALTH VS. JOHN IN
[2]  consolidated for trial?
[3]  MS. BARALDI: No, sir. They are
[4]  separate cases.
[5]  THE COURT: What cases are you trying
[6]  first?
[7]  MS. BARALDI: Number 4 on your list ends
[8]  with 4829.
[9]  THE COURT: Ready, Mr. Giuliani?
[10]  MR. GIULIANI: I am, Your Honor.
[11]  THE COURT: We'll take up
[12]  CP-51-CR-004829-2007 and mark the other cases
[13]  defendant on trial, time ruled excludable.
[14]  How does your client wish to be tried,
[15]  sir?
[16]  MR. GIULIANI: Jury, Your Honor.
[17]  THE COURT: How long will this case take
[18]  to try, counsel?
[19]  MS. BARALDI: Your Honor, I believe we
[20]  would be finished by Friday.
[21]  THE COURT: How many days of testimony
[22]  does the Commonwealth have?
[23]  MS. BARALDI: I would say at the most
[24]  two-and-a-half full days.
[25]  THE COURT: Sorry.

## Page 4

[1]  COMMONWEALTH VS. JOHN IN
[2]  MS. BARALDI: At the most two-and-a-half
[3]  full days.
[4]  THE COURT: How many days of testimony
[5]  does the defense have?
[6]  MR. GIULIANI: I would anticipate there
[7]  will not be any defense evidence.
[8]  THE COURT: Set aside three days of
[9]  testimony, select the jury today. We can
[10]  start the testimony tomorrow morning.
[11]  MR. GIULIANI: Yes, sir.
[12]  THE COURT: Are there any pretrial
[13]  motions, Mr. Giuliani?
[14]  MR. GIULIANI: There are none, Your
[15]  Honor.
[16]  THE COURT: What counts are the
[17]  Commonwealth moving on? Say the count
[18]  number, offense and grading, please.
[19]  MS. BARALDI: I apologize, Your Honor.
[20]  If I could just grab my file.
[21]  (Brief pause.)
[22]  MS. BARALDI: Your Honor, it would be
[23]  count 2, possession of instrument of crime in
[24]  the first degree; count 3, carrying a firearm
[25]  on a public street in Philadelphia, felony in

COMMONWEALTH VS. JOHN IN

[1]
[2] the first degree.
[3]     **THE COURT**:  Wait a second, 6108.
[4]     **MS. BARALDI**:  Yes.  Count 4, 6105; Count
[5] 7, 6106; count 9, burglary, felony in the
[6] first degree; count 11, robbery, felony in
[7] the first degree; count 20, robbery, felony
[8] in the first degree; and count 26, robbery,
[9] felony in the first degree; count 29,
[10] criminal conspiracy, felony in the first
[11] degree.
[12]     **THE COURT**:  How many complainants are
[13] there in the case?
[14]     **MS. BARALDI**:  Three, sir.
[15]     **THE COURT**:  Do you have a witness list
[16] and statement of allegations?
[17]     **MS. BARALDI**:  Yes.  I do not have a
[18] statement of allegations, just have typed
[19] allegations.
[20]     **THE COURT**:  Will you draft a statement
[21] of allegation so I can inform the prospective
[22] jurors what the case is alleging, tell me if
[23] they know any of the people.  Give me some
[24] idea where they live, hundred block.  Or if
[25] you don't want to do that, what section of

COMMONWEALTH VS. JOHN IN

[1]
[2] the city, just after the name.
[3]     **MS. BARALDI**:  Yes, Your Honor.
[4]     **THE COURT**:  Do you have any witnesses,
[5] Mr. Giuliani?
[6]     **MR. GIULIANI**:  No, Your Honor.
[7]     **THE COURT**:  Mr. Giuliani, Count No. 4,
[8] former convict not to carry a firearm.  Want
[9] to proceed on that case in your
[10] case-in-chief?
[11]     **MR. GIULIANI**:  Yes, Your Honor.
[12]     **THE COURT**:  You do?
[13]     **MR. GIULIANI**:  Do you want me to?  Do I
[14] want you to hear --
[15]     **THE COURT**:  Want to sever?
[16]     **MR. GIULIANI**:  Yes.
[17]     **THE COURT**:  We'll sever out 6105.  If
[18] the two of you would write your full names on
[19] a pad so that I can get the spelling correct.
[20]     Anything else before we commence jury
[21] selection?
[22]     **MR. GIULIANI**:  No, Your Honor.
[23]     **MS. BARALDI**:  No, Your Honor.
[24]     (Pause.)
[25]     **THE COURT**:  John In is with us, as is

COMMONWEALTH VS. JOHN IN

[1]
[2] his attorney and the Assistant District
[3] Attorney.  I have been advised that we have a
[4] jury panel available.  Shall we commence jury
[5] selection?
[6]     **MR. GIULIANI**:  Yes.
[7]     **THE COURT**:  We expect to select a jury
[8] today and take testimony Wednesday, Thursday
[9] and Friday so the case will undoubtedly go
[10] into Monday of next week.
[11]     **MS. BARALDI**:  Yes.  We'll tell the panel
[12] we expect the case to go into Monday,
[13] possibly Tuesday.
[14]     **MR. GIULIANI**:  At the latest, possibly;
[15] include Friday.
[16]     **THE COURT**:  Before we commence, have
[17] seven peremptory challenges.  I don't know if
[18] either of you selected a jury with me, but I
[19] will address the panel.
[20]     If you have any questions you wish to
[21] ask the panel as a whole, please bring them
[22] out.  I will consider them.  Thereafter, we
[23] will have individual voir dire.  I'll bring
[24] the prospective jurors one at a time.
[25]     I'll ask questions.  When I finish my

COMMONWEALTH VS. JOHN IN

[1]
[2] questions, the prospective jurors will be
[3] asked to exit and immediately after he or she
[4] leaves the room, if you have a challenge for
[5] cause, raise it at that time.  If you have
[6] additional follow-up questions, I will decide
[7] whether it's appropriate.
[8]     (The prospective jurors entered the
[9] courtroom.)
[10]     **THE COURT**:  Good morning.
[11]     **PROSPECTIVE JURORS**:  Good morning.
[12]     **THE COURT**:  Would you please swear in
[13] the panel.
[14]     **THE COURT CRIER**:  Would the panel please
[15] rise.
[16]     (The prospective jury panel was duly
[17] sworn.)
[18]     **THE COURT CRIER**:  You may be seated.
[19]     **THE COURT**:  Ladies and gentlemen,
[20] welcome to Courtroom 801.  I'm Judge Byrd.
[21] You've been summoned here this morning to
[22] participate as jurors in the trial of a
[23] criminal case.
[24]     This is the case of the Commonwealth of
[25] Pennsylvania vs. John In.  Now I will tell

COMMONWEALTH VS. JOHN IN

[1]
[2] you more about this case in short order, but
[3] there are certain things I must first discuss
[4] with you.
[5]     Let's start with something that you
[6] already know, that is, jury service is one of
[7] the most important responsibilities of
[8] citizenship. It has been described by legal
[9] commentators as second only to service in the
[10] military in terms of its importance to the
[11] preservation of our democracy. So ladies and
[12] gentlemen, for that reason no one can be
[13] excused from jury service except for the most
[14] serious, most compelling of reasons.
[15]     Those of you selected to serve on this
[16] jury will be fact finders. It is the
[17] responsibility of a juror to decide in a
[18] criminal case what the facts are so you will
[19] be asked to present yourself here with an
[20] open mind, listen to the evidence, and from
[21] that evidence, collectively, that is, the
[22] jury of twelve determine what the facts are.
[23]     You must then, on your oath, accept the
[24] law from me, apply that law to the facts as
[25] you determine the facts to be, and thereafter

COMMONWEALTH VS. JOHN IN

[1]
[2] to render a fair and impartial verdict
[3] consistent with the evidence in the law.
[4]     Now there are, ladies and gentlemen,
[5] certain constitutional principles that
[6] undergird our system of criminal law. The
[7] principles I'm about to discuss with you are
[8] in effect in this Commonwealth, in our sister
[9] jurisdiction and in the federal system.
[10] Every trial, every criminal case in these
[11] United States has proceeded with these
[12] principles undergirding the trial.
[13]     In the case of a criminal trial, a
[14] defendant is presumed to be innocent and that
[15] presumption remains with the defendant unless
[16] and until the Commonwealth proves his guilt
[17] beyond a reasonable doubt. So a defendant
[18] merely because he has been arrested does not
[19] lose his presumption of innocence.
[20]     An arrest is not evidence of guilt. The
[21] evidence in a criminal case unfolds in the
[22] courtroom for the edification of the jury.
[23] Because the defendant is presumed to be
[24] innocent, the Constitution affords every
[25] defendant a right of silence at trial.

COMMONWEALTH VS. JOHN IN

[1]
[2]     A defendant has no obligation to testify
[3] or call witnesses, and if a defendant elects
[4] to exercise his constitutional right of
[5] silence, you may draw no inference of guilt,
[6] no adverse inference from the decision to
[7] exercise a constitutional right. Your task
[8] would be to determine from the evidence you
[9] heard whether or not the Commonwealth proved
[10] guilt beyond a reasonable doubt.
[11]     Now, I will be asking some questions of
[12] you during the course of this procedure. I
[13] want you to know that I'm well aware that all
[14] of you have been here since at least 8:15,
[15] that you filled out a questionnaire.
[16]     I have that questionnaire so I do not
[17] intend to ask again the questions you also
[18] answered. It will be necessary, however, for
[19] me to ask some additional questions. If I
[20] ask a question that applies to you and you
[21] are not certain whether it applies to you,
[22] bring that to our attention by raising your
[23] hand.
[24]     You've been given a number so if you are
[25] responding to a question I've asked, raise

COMMONWEALTH VS. JOHN IN

[1]
[2] your hand. Make sure that you have, in your
[3] hand, that card. Keep your hand raised until
[4] you hear that number called out. Then you
[5] may lower your card again.
[6]     Please, ladies and gentlemen, don't
[7] blurt out any answers. I will be speaking to
[8] each of you individually and you can, at that
[9] time, bring to my attention whatever it is
[10] you wish to have me know.
[11]     I want to express to all of you how
[12] important it is to answer questions with
[13] honesty and candor without making an effort
[14] to get out of jury service and without making
[15] a special effort to get onto the jury. If
[16] you continue to answer questions with candor,
[17] we will, from your midst, impanel twelve
[18] jurors and two alternates to hear this case.
[19]     The cases, as I said, is the case of the
[20] Commonwealth of Pennsylvania vs. John In. As
[21] you can see, both sides have counsel. The
[22] Commonwealth is represented and the defendant
[23] is represented in this case.
[24]     The defendant has been charged with the
[25] **following offenses**: robbery, three counts;

[1]     COMMONWEALTH VS. JOHN IN
[2] burglary, criminal conspiracy, possessing an
[3] instrument of crime, and violation of
[4] Sections 6106 and 6108 of the Uniform
[5] Firearms Act.
[6]     These charges were lodged against the
[7] defendant as a result of the following
[8] **allegation**:  The Commonwealth alleges that on
[9] or about March 7th, year 2007, at or about
[10] 5:15 a.m. the defendant John In and two other
[11] men, Jerry Jean and Deshawn Marrible, entered
[12] the residence of Vatari Yun, Y-U-N, at 720
[13] Mifflin Street here in Philadelphia, entered
[14] the premises without his permission, without
[15] the permission of the occupant, and therein
[16] robbed three persons, the mentioned Vatari
[17] Yun, Dena Khem, and Christina Khem.
[18]     My first question to you, ladies and
[19] gentlemen, is do any of you know or think you
[20] know something or anything at all about the
[21] allegations that gave rise to the charge
[22] against the defendant?  If so, please raise
[23] your hand.
[24]     **THE COURT CRIER**:  No response, Your
[25] Honor.

[1]     COMMONWEALTH VS. JOHN IN
[2]     **THE COURT**:  Now, ladies and gentlemen, I
[3] commenced by telling you that jurors are the
[4] fact finders in a criminal case.  And those
[5] of you selected to serve on this jury will
[6] be, as I pointed out, passing up on the
[7] credibility, that is, the believability, the
[8] accuracy of the testimony, and any other
[9] evidence in the case.
[10]     To that end, I must bring to your
[11] attention two questions that are in the
[12] questionnaire and address them before we go
[13] forward.  One of the questions asked, "Will
[14] you be more likely to believe the testimony
[15] of a police officer or other law enforcement
[16] agent simply because of his or her job?"
[17]     The other asks, "Would you be less
[18] likely to believe the testimony of a police
[19] officer or other law enforcement agent simply
[20] because of his or her job?"
[21]     As you, ladies and gentlemen, sit in the
[22] courtroom today, it is clear that the answer
[23] is obvious.  A police officer's testimony is
[24] entitled to no greater weight or lesser
[25] weight than any other witness.  Those of you

[1]     COMMONWEALTH VS. JOHN IN
[2] selected to serve on this jury will be, and
[3] bears repeating, fact finders so you will
[4] evaluate the testimony of each witness and
[5] you will use the same standard for each
[6] witness who appears before you.
[7]     You may not evaluate one class of
[8] witnesses using one standard and another
[9] class of witnesses using a different
[10] standard.  Everyone who comes before you must
[11] have his or her testimony evaluated using the
[12] very same standard.
[13]     You cannot remove the burden of deciding
[14] the facts in this case by saying, oh that was
[15] a police officer testifying.  I would never
[16] believe a police officer's testimony or that
[17] was a police officer testifying, I would
[18] always believe a police officer's testimony.
[19]     When you evaluate the testimony of a
[20] witness, you will evaluate a police officer's
[21] testimony in the same manner you would that
[22] of a truck driver or astronaut or engineer or
[23] insurance salesman.  No one comes before you
[24] with a ticket entitling him or her to be
[25] believed or disbelieved for that matter.

[1]     COMMONWEALTH VS. JOHN IN
[2]     All of you know that in the trial of a
[3] criminal case, witnesses will be called.  And
[4] before I read to you a list of potential
[5] witnesses in this case, let me introduce the
[6] principals in the trial to each of you.
[7]     I will introduce the Assistant District
[8] Attorney, the defense attorney, and the
[9] defendant in turn and ask each to stand and
[10] position himself or herself so that you see
[11] them because I'll ask if you know any of
[12] these people.
[13]     Now, in this case, the Commonwealth of
[14] Pennsylvania vs. John In, the Commonwealth is
[15] represented by a member of the District
[16] Attorney's Office.  Her name is Lauren
[17] Baraldi, Esquire.  Would you stand, ma'am,
[18] and remain standing.
[19]     The defendant in this case is
[20] represented by a member of the defense bar.
[21] His name is Richard Giuliani, Esquire.  He is
[22] representing the defendant, John In.  Would
[23] you stand next to your attorney.
[24]     The next question I have is, Do any of
[25] you know or have you had any association with

Page 17

[1]     COMMONWEALTH VS. JOHN IN

[2] or are you related by blood or marriage to

[3] either the Defendant John In?

[4]     **PROSPECTIVE JUROR 17**: I'm bond. I'm

[5] not blood, sir. The question I'm asking the

[6] Judge --

[7]     **THE COURT**: Would you step outside, sir.

[8]     **PROSPECTIVE JUROR NO. 17**: I'm not his

[9] blood brother, but I'm bond. I'm going out.

[10] He's my brother by bond. I don't know you

[11] too. Bond.

[12]     **THE COURT**: Prospective Juror No. 17,

[13] you will disregard his comments. You will

[14] disregard entirely the remarks he made. They

[15] have no relevance to this serious business

[16] before you and this Court.

[17]     Now, before I was interrupted, I had

[18] this question for all of you. Do any of you

[19] know or have you had any association with or

[20] are you related by blood or marriage to

[21] either the defendant John In, his attorney

[22] Richard Giuliani, the Assistant District

[23] Attorney Lauren Baraldi, or me. I'm Judge

[24] Byrd. If so, please raise your hand.

[25]     **THE COURT CRIER**: No response.

Page 18

[1]     COMMONWEALTH VS. JOHN IN

[2]     **THE COURT**: You may all be seated.

[3]     Ladies and gentlemen, look around the

[4] courtroom. You see that we have a full

[5] staff. We have a court crier and a court

[6] officer whom you already met, a court

[7] reporter who is taking down a transcript of

[8] these proceedings; a court clerk, who is

[9] keeping a record; a deputy sheriff.

[10]     My question is the same as before. Do

[11] any of you know or have you had any

[12] association with or are you related by blood

[13] or marriage to any of the persons who make up

[14] the court staff? If so, please raise your

[15] hand.

[16]     **THE COURT CRIER**: No response, Your

[17] Honor.

[18]     **THE COURT**: I advise you, ladies and

[19] gentlemen, that in this trial criminal case

[20] witnesses are called and I will be reading to

[21] you from a list of potential witnesses. I

[22] use that phrase "potential witness"

[23] advisedly. Although some of these

[24] individuals will undoubtedly testify in this

[25] case, others will simply be mentioned, which

Page 19

[1]     COMMONWEALTH VS. JOHN IN

[2] these testifying and still others may be in

[3] and out about the courtroom during the course

[4] of the trial.

[5]     Listen carefully to the names from this

[6] list. Let us know if you know any of these

[7] persons by raising your hand.

[8]     The witness list includes the mentioned

[9] residence of the address, then known as 720

[10] Mifflin Street; Vatari Yun, Y-U-N; Christina

[11] Khem, K-H-E-M; Dena Khem, K-H-E-M; Angela

[12] Khem, K-H-E-M; Keith K-H-E-M, all from South

[13] Philadelphia; one Deshawn Marable from the

[14] 1700 block of North Underwood Street;

[15] Jacqueline Jean and one Jerry Jean from the

[16] 300 block of Clarkson Avenue.

[17]     In addition, the following police

[18] officers, Police Officer Thomas Nolan from

[19] the 4th Police District; Police Officer Kevin

[20] Cannon from the 4th Police District; Police

[21] Officer Raphael McGough, Fourth Police

[22] District, probably mispronounced that,

[23] spelled M-C-G-O-U-G-H, Police Officer Peter

[24] Seabron from the 3rd Police District; Police

[25] Officer Roger Birch from the 3rd Police

Page 20

[1]     COMMONWEALTH VS. JOHN IN

[2] District, Police Officer Carol Jenkins from

[3] the 4th Police District, Police Officer Kevin

[4] Baldwin from the 4th Police District, Police

[5] Officer Felicia Battle; from the 4th Police

[6] District, Police Officer Robert Robinson from

[7] the 4th Police District; Sergeant Steven

[8] Woods from the 4th Police District; Sergeant

[9] Steven Spansky from the 25th Police District,

[10] and one additional officer from the 4th

[11] Police District, Police Officer Thomas Foley

[12] and Police Lieutenant Michael Deal from the

[13] 17th Police District.

[14]     The following officers from the crime

[15] scene unit, Police Officer Avon Wilson and

[16] Police Officer Simon Rory; Sergeant Wilfredo

[17] Aponte. From the Firearms Identification

[18] Unit, Police Officer Leonard Johnson; two

[19] lieutenants, both from the Internal Affairs

[20] Unit, Lieutenant Steven Nolan and Police

[21] Officer John Pendergast, P-E-N-D-E-R-G-A-S-T;

[22] the following, Detective Robert Conn from the

[23] Northeast Detectives Division, and Detective

[24] John Hopkins from South Detectives Division;

[25] one civilian employee of the police

Page 21

[1]     COMMONWEALTH VS. JOHN IN
[2] department in the DNA laboratory, Benjamin
[3] Levlavin, L-E-V-L-A-V-I-N.
[4]     Do any of you have any association with
[5] or related by blood or marriage to any of the
[6] witnesses from the list of potential
[7] witnesses?  If so, please raise your hand.
[8]     THE COURT CRIER:  No response, Your
[9] Honor.
[10]     THE COURT:  Ladies and gentlemen, I
[11] discussed with you those constitutional
[12] principles which undergird our system of
[13] criminal law.  Nevertheless, let me ask you
[14] the following questions.  Does anyone here
[15] have a fixed opinion about the guilt or
[16] innocence of this defendant to any of the
[17] charges lodged against him?  If so, please
[18] raise your hand.
[19]     THE COURT CRIER:  No response, Your
[20] Honor.
[21]     THE COURT:  Do any of you know of any
[22] reason why, if you were selected to serve on
[23] this jury, you would not be able to give both
[24] sides, the defendant and the Commonwealth, a
[25] fair and impartial trial?  If so, please

Page 22

[1]     COMMONWEALTH VS. JOHN IN
[2] raise your hand.
[3]     THE COURT CRIER:  No response, Your
[4] Honor.
[5]     THE COURT:  Now ladies and gentlemen, we
[6] expect to select our jury today and we will
[7] commence testimony in the case tomorrow.  We
[8] expect that the testimony will last
[9] approximately three days.  We will take
[10] testimony Wednesday, Thursday and perhaps
[11] into Friday.
[12]     Thereafter, we will hear the attorneys
[13] make their closing arguments and the case
[14] will be submitted to the jury for
[15] deliberations and a verdict.  The case will
[16] undoubtedly go through and into Friday and
[17] perhaps Monday of next week.
[18]     That's our best estimate based on our
[19] collective experience with matters of this
[20] sort.  We sometimes overestimate the length
[21] of time a case will take to try.  We
[22] sometimes underestimate the length of time a
[23] case will take to try.  This is our best
[24] estimate and we believe we got it just about
[25] right.

Page 23

[1]     COMMONWEALTH VS. JOHN IN
[2]     I can tell you that this is not a death
[3] penalty case nor will the jury be
[4] sequestered.  You will discover we work
[5] business hours here much like you work in
[6] your everyday business of employment.  It is
[7] our intention to go get underway each morning
[8] at 9:30, work each morning taking breaks as
[9] you members of the jury require breaks.
[10]     We have an hour for lunch.  We come back
[11] in the afternoon.  We work until 4;30.  The
[12] hours are not onerous.  If it appears we're
[13] falling behind we will make every effort to
[14] start at 9:00 to go into 5 p.m.  Bearing in
[15] mind everything I just said, is there anyone
[16] for whom service would be a real true serious
[17] hardship?  Not an inconvenience but a
[18] hardship.  If you have a hardship, raise your
[19] hand.
[20]     THE COURT CRIER:  Your Honor, number 2,
[21] 7, 3, 18, 14, 21, 24, 26, 27, 30, 32, 34, 40,
[22] 41, 42, 43, 44, 45.
[23]     THE COURT:  Mr. Giuliani, Ms. Baraldi,
[24] did either of you have any additional
[25] questions you wish me to put to the panel as

Page 24

[1]     COMMONWEALTH VS. JOHN IN
[2] a whole?
[3]     MR. GIULIANI:  No, Your Honor.
[4]     MS. BARALDI:  No, Your Honor.
[5]     THE COURT:  Thank you.  If you ladies
[6] and gentlemen will be so kind to follow
[7] Mr. Dafino's instructions, we will be with
[8] you.
[9]     (Pause.)
[10]     THE COURT CRIER:  State your name for
[11] us.
[12]     PROSPECTIVE JUROR:  Gail Andrews.
[13]         - - -
[14]     . . . GAIL ANDREWS, having
[15] been duly sworn, was examined and testified
[16] **as follows**:
[17]         - - -
[18] **BY THE COURT:**
[19]     Q.  Ms. Andrews, you checked off that there is a
[20] reason or reasons you would not be fair in a criminal
[21] case.
[22]     A.  Yes.
[23]     Q.  What is your reason?
[24]     A.  Back in '88 my nephew was murdered.
[25]     Q.  And you think that would affect your ability

[1]      COMMONWEALTH VS. JOHN IN
[2] to believe a fair juror in this case?
[3]    **A.**   Yes.
[4]      **THE COURT**:  Do either of you wish to
[5] follow up?
[6]      **MS. BARALDI**:  No, sir.
[7]      **MR. GIULIANI**:  No, Your Honor.
[8]      **THE COURT**:  Wait on the other side of
[9] the door.  We'll be right with you.
[10]     (The prospective juror departed the
[11] courtroom.)
[12]     **MS. BARALDI**:  Your Honor, Commonwealth
[13] has a motion to strike this juror for cause.
[14]     **THE COURT**:  Motion for cause granted.
[15] Next.
[16]     **THE COURT CRIER**:  State your name for
[17] us.
[18]     **PROSPECTIVE JUROR**:  Robert Starsinic.
[19]       - - -
[20]  . . . ROBERT STARSINIC, having
[21] been duly sworn, was examined and testified
[22] **as follows**:
[23]       - - -
[24] **BY THE COURT**:
[25]    **Q.**   Tell us what you do for a living please.

[1]      COMMONWEALTH VS. JOHN IN
[2]    **A.**   I'm an automotive technician.
[3]    **Q.**   You've been in that line of work now for how
[4] long?
[5]    **A.**   My eighth year.
[6]    **Q.**   Would you have any problem following my
[7] instructions in this case that the defendant is
[8] presumed innocent until proven guilty beyond a
[9] reasonable doubt?
[10]   **A.**   No.
[11]   **Q.**   You check "yes" on the form.  Why was that?
[12]   **A.**   Sorry.
[13]   **Q.**   You checked yes on the form.  Why was that?
[14]   **A.**   I -- maybe by accident.
[15]   **Q.**   Accident?
[16]   **A.**   Yes.
[17]   **Q.**   Would you have any problem accepting my
[18] instructions that a defendant in a criminal case has
[19] the right of silence and if he elects to exercise that
[20] right it cannot be held against him?  You can draw no
[21] adverse inference from his decision to exercise a
[22] constitutional right?
[23]   **A.**   I feel that if someone is being charged,
[24] they should speak up for themselves.
[25]   **Q.**   And if they invoke their right of silence,

[1]      COMMONWEALTH VS. JOHN IN
[2] would you hold it against him?
[3]    **A.**   I probably would.
[4]    **Q.**   You probably would not?
[5]    **A.**   Would.
[6]    **Q.**   You probably would.
[7]      **THE COURT**:  You wish to follow up?
[8]      **MS. BARALDI**:  No, Your Honor.
[9]      **MR. GIULIANI**:  No, Your Honor.
[10]     **THE COURT**:  Wait on the other side of
[11] that door, sir.  We'll be right with you.
[12]     (The prospective juror departed the
[13] courtroom.)
[14]     **THE COURT**:  Half the panel raised their
[15] hand for hardship.
[16]     **MR. GIULIANI**:  Motion for cause.
[17]     **THE COURT**:  Defense cause granted.
[18]     **THE COURT CRIER**:  Number 3, state your
[19] name for us.
[20]     **PROSPECTIVE JUROR**:  Barbara Carr.
[21]       - - -
[22]  . . . BARBARA CARR, having
[23] been duly sworn, was examined and testified
[24] **as follows**:
[25]       - - -

[1]      COMMONWEALTH VS. JOHN IN
[2] **BY THE COURT**:
[3]    **Q.**   You raised your hand that jury service would
[4] be a hardship, ma'am?
[5]    **A.**   Yes.
[6]    **Q.**   Did you raise your hand that jury service
[7] would be a hardship?
[8]    **A.**   Yes.
[9]    **Q.**   What's the nature of your hardship?
[10]   **A.**   I have a child that has special needs and he
[11] just started school.  He tends to fall behind getting
[12] his homework done.  Too late for me.
[13]   **Q.**   I'm really having difficulty hearing you,
[14] ma'am.  Pull up to the mike and tell us, repeat what
[15] you said.
[16]   **A.**   I said I have a child that tends to fall
[17] behind in school and I -- 4:00, getting home at 4:00 is
[18] a long time to getting his homework done.  Last night I
[19] been up a long time with him.  About 10:00 he just gets
[20] done his homework.
[21]   **Q.**   Are you presently taking any medication that
[22] might interfere with or prevent you from serving,
[23] ma'am?
[24]   **A.**   Yeah, Flexeril.
[25]   **Q.**   How does it affect you?

## Page 29

COMMONWEALTH VS. JOHN IN

[2]  **A.**  Tend to get drowsy a little bit.

[3]  **THE COURT:**  Would you wait for us on the

[4]  other side of that door, ma'am.  We'll be

[5]  right with you.

[6]  (The prospective juror departed the

[7]  courtroom.)

[8]  **MS. BARALDI:**  Commonwealth has a motion

[9]  for cause.

[10]  **THE COURT:**  Cause granted.

[11]  May I see the two of you for one quick

[12]  second.

[13]  (Sidebar discussion off the record.)

[14]  **THE COURT CRIER:**  Sir, could you state

[15]  your name for us.

[16]  **PROSPECTIVE JUROR:**  Jamal Jackson.

[17]  - - -

[18]  . . . JAMAL JACKSON, having

[19]  been duly sworn, was examined and testified

[20]  **as follows:**

[21]  - - -

[22]  **BY THE COURT:**

[23]  **Q.**  Mr. Jackson, how old are you, sir?

[24]  **A.**  Twenty-eight.

[25]  **Q.**  Tell us what you do for a living.

## Page 30

COMMONWEALTH VS. JOHN IN

[2]  **A.**  Work at a rental center.

[3]  **Q.**  What kind of work you do?

[4]  **A.**  Retail.

[5]  **Q.**  How long have you been in that line of work?

[6]  **A.**  Seven months.

[7]  **Q.**  What kind of work did you do before that?

[8]  **A.**  I was in school.

[9]  **Q.**  You were where?

[10]  **A.**  In school.

[11]  **Q.**  What were you studying?

[12]  **A.**  Computer science.

[13]  **Q.**  Have you ever served on a jury before?

[14]  **A.**  Yes.

[15]  **Q.**  How long ago?

[16]  **A.**  Maybe about three years ago.

[17]  **Q.**  Civil or criminal case?

[18]  **A.**  It was criminal.

[19]  **Q.**  You or someone close to you were a victim of

[20]  a crime?

[21]  **A.**  No.

[22]  **Q.**  You checked "yes" on the form.  Have you or

[23]  anyone close to you ever been the victim of a crime?

[24]  **A.**  Yes.

[25]  **Q.**  What relationship was that person or those

## Page 31

COMMONWEALTH VS. JOHN IN

[2]  persons to you?

[3]  **A.**  It was me.

[4]  **Q.**  What happened to you?

[5]  **A.**  I was robbed.

[6]  **Q.**  How long ago was that?

[7]  **A.**  About three years ago.

[8]  **Q.**  Was it strong-arm gunpoint?

[9]  **A.**  Gunpoint.

[10]  **Q.**  Did you report it?

[11]  **A.**  Yes.

[12]  **Q.**  Was anyone arrested?

[13]  **A.**  No.

[14]  **Q.**  Is there anything about that incident which

[15]  would affect your ability to be a fair juror in this

[16]  case?

[17]  **A.**  No.

[18]  **Q.**  If you are selected to serve on this jury,

[19]  would you give both sides, the defendant and the

[20]  Commonwealth, a fair trial?

[21]  **A.**  Yes.

[22]  **THE COURT:**  Wait for us on the other

[23]  side of that door, sir.  We'll be right with

[24]  you.

[25]  (The prospective juror departed the

## Page 32

COMMONWEALTH VS. JOHN IN

[2]  courtroom.)

[3]  (Sidebar discussion off the record.)

[4]  **MR. GIULIANI:**  The answer to number 16,

[5]  number 16 the final question on --

[6]  **THE COURT:**  Says "no."

[7]  **MR. GIULIANI:**  Thank you.

[8]  **THE COURT CRIER:**  State your name for

[9]  us.

[10]  **PROSPECTIVE JUROR:**  Judy DeLeo.

[11]  - - -

[12]  . . . JUDY DELEO, having

[13]  been duly sworn, was examined and testified

[14]  **as follows:**

[15]  - - -

[16]  **BY THE COURT:**

[17]  **Q.**  Ma'am, I see here that you are semi-retired;

[18]  is that correct?

[19]  **A.**  I work four days a week -- Monday, Thursday,

[20]  Friday, Saturday.

[21]  **Q.**  What kind of work do you do?

[22]  **A.**  Iam Institute.  I do skin care.

[23]  **Q.**  You've been in that line of work for how

[24]  long?

[25]  **A.**  Almost five years.

Page 33

COMMONWEALTH VS. JOHN IN

[1]
[2]    **Q.**   Do you have any religious or ethical beliefs
[3] that would prevent you from sitting in judgment in this
[4] case and rendering a fair verdict?
[5]    **A.**   I don't think so.
[6]    **Q.**   When you say you don't think so, is that a
[7] figure of speech or do you have some doubt about your
[8] ability to be fair?
[9]    **A.**   No.  You stated that there is no death
[10] penalty.  That's my only real -- other than that, no.
[11]    **Q.**   A defendant in a criminal case has the
[12] constitutional right of silence at trial.  Would you be
[13] able to accept my instructions that your task, if the
[14] defendant is elected to invoke his right of silence, is
[15] to determine from the evidence you heard whether or not
[16] the Commonwealth met its burden and not hold it against
[17] the defendant?
[18]    **A.**   I would try my hardest.  It would be okay.
[19] I'm not hedging.  I just feel that people who can't
[20] speak have something to hide.  I don't know that that
[21] would necessarily change.  I've never had to really
[22] come across that, so I can't honestly answer you yes or
[23] no on that, sir.
[24]    **THE COURT:**  If you wait on the side of
[25]    the door, we'll be right with you.

Page 34

COMMONWEALTH VS. JOHN IN

[1]
[2]    **MR. GIULIANI:**  I have a motion for
[3] cause.
[4]    **THE COURT:**  Motion granted.
[5]    **THE COURT CRIER:**  State your name,
[6] please.
[7]    **PROSPECTIVE JUROR:**  Brenda Maldonado.
[8]    - - -
[9]    . . . BRENDA MALDONADO, having
[10] been duly sworn, was examined and testified
[11] **as follows**:
[12]    - - -
[13] **BY THE COURT:**
[14]    **Q.**   Ms. Maldonado, what you do you do for a
[15] living?
[16]    **A.**   I work at custodial services.
[17]    **Q.**   How long have you been in that line of work?
[18]    **A.**   Twenty years.
[19]    **Q.**   You served on a jury before, ma'am?
[20]    **A.**   Yes.
[21]    **Q.**   How long ago?
[22]    **A.**   Quite a few years ago.
[23]    **Q.**   More than five years?
[24]    **A.**   Approximately.
[25]    **Q.**   Civil or criminal case?

Page 35

COMMONWEALTH VS. JOHN IN

[1]
[2]    **A.**   Civil.
[3]    **Q.**   You or someone close to you was a victim of
[4] a crime?
[5]    **A.**   Yes.
[6]    **Q.**   What's the relationship with that person or
[7] those persons to you?
[8]    **A.**   My mother.
[9]    **Q.**   What happened to your mother?
[10]    **A.**   Homicide case.
[11]    **Q.**   Sorry to hear that.  Was anyone arrested?
[12]    **A.**   No.
[13]    **Q.**   If you were selected to serve on the jury,
[14] would you give both sides, the defendant and the
[15] Commonwealth, a fair trial?
[16]    **A.**   Of course.
[17]    **THE COURT:**  Would you wait for us on
[18]    outside of the exit door, ma'am.  We'll be
[19]    right with you.
[20]    (The prospective juror departed the
[21]    courtroom.)
[22]    **THE COURT:**  That's Juror No. 2.
[23]    **THE COURT CRIER:**  State your name for
[24]    us.
[25]    - - -

Page 36

COMMONWEALTH VS. JOHN IN

[1]
[2]    . . . BEVERLY MILES, having
[3] been duly sworn, was examined and testified
[4] **as follows**:
[5]    - - -
[6]    EXAMINATION
[7]    - - -
[8] **BY THE COURT:**
[9]    **Q.**   Ms. Miles, I see here that you are retired.
[10]    **A.**   Yes.
[11]    **Q.**   How long have you been retired, ma'am?
[12]    **A.**   Seven years.
[13]    **Q.**   Tell us what you did before retirement?
[14]    **A.**   I was a patient care assistant at Temple
[15] Hospital.
[16]    **Q.**   You were in that job for how long?
[17]    **A.**   Thirty-one years.
[18]    **Q.**   You or someone close to you was arrested and
[19] charged with a crime.
[20]    **A.**   My son was arrested, but he was never
[21] charged.
[22]    **Q.**   What was he arrested for?
[23]    **A.**   He was with someone that robbed a person.
[24]    **Q.**   Do you have an opinion as to whether he was
[25] treated fair or unfair?

Page 37

COMMONWEALTH VS. JOHN IN

[2]　**A.**　I think he was treated fair because they
[3] asked him to testify.  They didn't convict them.
[4]　**Q.**　Did he go to trial?
[5]　**A.**　No.
[6]　**Q.**　Is there anything about that incident which
[7] would affect your ability to be a fair juror in this
[8] case?
[9]　**A.**　No, it's not that.  I'm going through some
[10] personal things, not feeling good.  Kind of like
[11] winding down, having problems here, and my eyes are
[12] bothering me.  Really just don't feel good.  That was
[13] the purpose of my saying hardship.
[14]　　　Not -- I'm just not really feeling good.  I
[15] do take medication.  I have a bad stomach sometimes.
[16] If I'm sitting all day long, start getting sleepy, then
[17] I have to go to the bathroom.  Right at this moment, my
[18] mind is not really, I really don't feel like doing it.
[19]　　**THE COURT**:  Would you be so kind to give
[20]　us a moment.  Wait on the other side of that
[21]　exit door to your right.  Be right with you.
[22]　　　(The prospective juror departed the
[23]　courtroom.)
[24]　　**THE COURT**:  Any objection to her
[25]　hardship?

Page 38

COMMONWEALTH VS. JOHN IN

[2]　**MS. BARALDI**:  No, Your Honor.
[3]　**MR. GIULIANI**:  No objection.
[4]　　**THE COURT**:  We thought since we had so
[5]　many people with hardships, perhaps this was
[6]　not a fresh panel.  Turns out we were wrong
[7]　as to hardship.  This is just Philadelphia.
[8]　Nothing you can do about it.
[9]　　**THE COURT CRIER**:  State your name for
[10]　us.
[11]　　**PROSPECTIVE JUROR**:  Nathaniel Goldsmith.
[12]　　　- - -
[13]　　. . . NATHANIEL GOLDSMITH, having
[14] been duly sworn, was examined and testified
[15] **as follows**:
[16]　　　- - -
[17]　　　EXAMINATION
[18]　　　- - -
[19] **BY THE COURT**:
[20]　**Q.**　Mr. Goldsmith, would you be less likely to
[21] believe the testimony of a police officer or other law
[22] enforcement officer just because of his or her job?
[23]　**A.**　No.  When I answered that question though, I
[24] answered it like I was from both sides.  I was like I
[25] got to hear the testimony now.  Like, I heard your

Page 39

COMMONWEALTH VS. JOHN IN

[2] thoughts on it and it changed my thoughts around of
[3] hearing both sides of the case because --
[4]　**Q.**　First question says, "Would you be more
[5] likely to believe the testimony of a police officer or
[6] other law enforcement agent just because of his or her
[7] job?"  You checked no.
[8]　**A.**　Yes.
[9]　**Q.**　The question was, "Would you be less likely
[10] to believe the testimony of a law enforcement agent
[11] because of his or her job?"  You checked yes.
[12]　**A.**　Yes.
[13]　**Q.**　Why did you check that?
[14]　**A.**　Because -- repeat that again.
[15]　**Q.**　Why did you check "yes" to the second of
[16] those two question?
[17]　**A.**　That's the verdict, right?
[18]　**Q.**　Sorry.
[19]　**A.**　That's the one, not the police officer,
[20] right?
[21]　**Q.**　Would you be less likely to believe the
[22] testimony of a police officer or other law enforcement
[23] officer just because of his or her job?  You checked
[24] "yes."  Why did you check that?
[25]　**A.**　Not really the situation.  But the job

Page 40

COMMONWEALTH VS. JOHN IN

[2] though, based on the life experiences with my family
[3] members and everything because I have a few family
[4] members that were convicted of -- twenty years ago.
[5] One got convicted, like two last year, two years ago.
[6] One of them is serving a 10-to-29 and everything, but
[7] basically around that area and everything.
[8]　**Q.**　Are you telling me that because of your
[9] background and personal experience you'd be less likely
[10] to believe the police officer's testimony simply
[11] because of his of her job?
[12]　**A.**　Yeah.  A little bit in between, sir.  I got
[13] to hear the evidence though.  If I ain't heard the
[14] evidence, then got to be hard stuff to make me believe.
[15]　**Q.**　I understand that.  The standard proof is
[16] beyond a reasonable doubt.  But before we get to this
[17] point, my question is based on what you told us about
[18] your family history, would you be less likely to
[19] believe the testimony of a police officer just because
[20] of his or her job?
[21]　**A.**　Not because of their job.  I got to hear the
[22] evidence though.
[23]　**Q.**　What section of the city -- don't want your
[24] home address, but what section of the city do you live
[25] in?

Page 41

COMMONWEALTH VS. JOHN IN

[2]   A.   South Philadelphia.
[3]   Q.   Any reason you didn't fill out the form?
[4]   A.   What's that?  The Philadelphia,
[5] Pennsylvania.
[6]   Q.   It says, "section of the city, occupation.
[7] number of children."
[8]   A.   I didn't understand that.  I don't have any
[9] children.
[10]   Q.   You didn't understand what?
[11]   A.   I didn't understand that area location.
[12] Usually I put Philadelphia, Pennsylvania, though.
[13]   Q.   Didn't understand the words "section of the
[14] city?"
[15]   A.   Yeah.  I mean, that's South Philadelphia
[16] though.
[17]   Q.   What do you do for a living?  You understand
[18] the work occupation?
[19]   A.   Yes, job.
[20]   Q.   What do you do for a living?
[21]   A.   Philadelphia Airport.
[22]   Q.   What do you do there?
[23]   A.   Adult and global service lab.
[24]   Q.   How long have you worked for them?
[25]   A.   Seven months.

Page 42

COMMONWEALTH VS. JOHN IN

[2]   Q.   What did you do before that?
[3]   A.   Aviation safeguard.
[4]   Q.   How long were you there?
[5]   A.   Six months.
[6]   Q.   Both at the airport?
[7]   A.   Yes.
[8]   Q.   You or someone close to you, sir, was a
[9] victim of a crime?
[10]   A.   I wasn't.  But it wasn't someone close to
[11] me.
[12]   Q.   What relationship is that person to you?
[13]   A.   One of them was my cousin.
[14]   Q.   What happened to your cousin?
[15]   A.   He was -- armed robbery.
[16]   Q.   He was robbed?
[17]   A.   No.  My cousin wasn't no victim.  You saying
[18] victim or convicted of it?  No, somebody was convicted
[19] of a crime.  They went to jail, went to court for it,
[20] right?
[21]   Q.   There are two separate questions.  The one
[22] says, "Have you or anyone close to you ever been a
[23] victim of a crime?"
[24]   A.   No.
[25]   Q.   You checked "yes."  You're referring to your

Page 43

COMMONWEALTH VS. JOHN IN

[2] cousin who was convicted of an armed robbery?
[3]   A.   Yeah, he was.
[4]   Q.   Let's go to the next question then.  "Have
[5] you or anyone close to you ever been arrested or
[6] charged with a crime?"
[7]   A.   My cousin.
[8]   Q.   What was he charged with?
[9]   A.   Armed robbery.
[10]   Q.   How long ago was that?
[11]   A.   Like two years ago.
[12]   Q.   Did you attend his trial?
[13]   A.   No.
[14]   Q.   You have an opinion as to whether he was
[15] treated fair or unfair?
[16]   A.   No.
[17]       THE COURT:  All right.  Could you give
[18]   us a moment, sir?  Wait on the other side of
[19]   that door.
[20]       (Prospective juror departed the
[21]   courtroom.)
[22]       MS. BARALDI:  Commonwealth has a motion
[23]   for cause.
[24]       THE COURT:  Do you have any objection?
[25]       MR. GIULIANI:  No objection.

Page 44

COMMONWEALTH VS. JOHN IN

[2]       THE COURT:  Jury Panel No. 19, she must
[3]   leave by two for childcare problems.  Any
[4]   objection to calling her out of order?
[5]       MS. BARALDI:  No, Your Honor.
[6]       MR. GIULIANI:  No, Your Honor.
[7]       THE COURT CRIER:  State your name and
[8]   spell your last name.
[9]       PROSPECTIVE JUROR:  Courtney
[10]   Billingslea, B-I-L-L-I-N-G-S-L-E-A.
[11]       THE COURT CRIER:  Have a seat.
[12]           - - -
[13]       . . . COURTNEY BILLINGSLEA, having
[14] been duly sworn, was examined and testified
[15] **as follows**:
[16]           - - -
[17]           EXAMINATION
[18]           - - -
[19] **BY THE COURT:**
[20]   Q.   Ma'am, please correct me if I'm wrong.  Did
[21] you raise your hand that jury service would be a
[22] hardship?
[23]   A.   Yes, I did you.
[24]   Q.   What's the nature of your hardship?
[25]   A.   I have an eight-year-old who's in school.  I

COMMONWEALTH VS. JOHN IN

[1]

[2] usually leave work.  I try to pick him up by three.

[3]     **Q.**    Did you bring to our attention that you have

[4] to leave at two today?

[5]     **A.**    Yes, I did.  The gentleman that bought us up

[6] and ordered us in line.

[7]     **THE COURT**:  Either one of you have any

[8] questions?

[9]     **MS. BARALDI**:  No, Your Honor.

[10]     **MR. GIULIANI**:  No, Your Honor.

[11]     **THE COURT**:  Wait on the side of that

[12] door.  Be right with you.

[13]     **MR. GIULIANI**:  Motion for cause, Your

[14] Honor.

[15]     **THE COURT**:  I'll grant it.

[16]     Let the record reflect everyone is in

[17] place.   You have a motion?

[18]     **MR. GIULIANI**:  It was Commonwealth.  No

[19] objection.

[20]     **THE COURT CRIER**:  State your name for

[21] us.

[22]     **PROSPECTIVE JUROR**:  Carmen Serrano.

[23]     - - -

[24]     . . . CARMEN SERRANO, having

[25] been duly sworn, was examined and testified

COMMONWEALTH VS. JOHN IN

[1]

[2] **as follows**:

[3]     - - -

[4]     EXAMINATION

[5]     - - -

[6] **BY THE COURT**:

[7]     **Q.**    Ms. Serrano, tell us what you do for a

[8] living, please.

[9]     **A.**    Counselor at the Community College of

[10] Philadelphia.

[11]     **Q.**    How long have you been in that role?

[12]     **A.**    Thirty-five years.

[13]     **Q.**    I see here that you serve on a jury before?

[14]     **A.**    Yes.

[15]     **Q.**    How long ago?

[16]     **A.**    Four years ago.

[17]     **Q.**    Civil or criminal case?

[18]     **A.**    Civil.

[19]     **Q.**    You or someone close to you was a victim of

[20] a crime?

[21]     **A.**    My sister was attacked by a drunk driver.

[22]     **Q.**    Sorry to hear about that.

[23]     **A.**    Nineteen years ago.

[24]     **Q.**    If you were selected to serve on this jury,

[25] would you give both sides, the defendant and the

COMMONWEALTH VS. JOHN IN

[1]

[2] Commonwealth, a fair trial?

[3]     **A.**    Sure.

[4]     **THE COURT**:  Would you wait on the other

[5] side of that exit door, ma'am.  Go to your

[6] right.  We'll be right with you.

[7]     (The prospective juror departed the

[8] courtroom.)

[9]     **MR. GIULIANI**:  Your Honor, before we

[10] pass the pad, I note on the sheet it says

[11] occupation of spouse "probation officer

[12] supervisor," but when it was asked, "Has

[13] anyone close to you ever worked as a police

[14] officer in any law enforcement job," no.  Is

[15] that something we want to clarify possibly?

[16]     **THE COURT**:  You want me to follow up?

[17]     **MR. GIULIANI**:  Yes, Your Honor.

[18]     (The prospective juror entered the

[19] courtroom.)

[20] **BY THE COURT**:

[21]     **Q.**    Ms. Serrano, let me follow up.  Tell me one

[22] more time, what did you say you do at community

[23] college?

[24]     **A.**    I am a counselor at community college

[25] through career counseling, academic plan.

COMMONWEALTH VS. JOHN IN

[1]

[2]     **Q.**    Tell us what your spouse does for a living.

[3]     **A.**    My husband is a probation officer

[4] supervisor.

[5]     **Q.**    Okay.  Now, there is a question, it says,

[6] "Have you or anyone close to you ever worked as a

[7] police officer or in any law enforcement job?  This

[8] includes prosecutors, public defenders, defense

[9] lawyers, detectives, security guards or prison guards.

[10] You wrote "no," then a question mark, correct?

[11]     **A.**    My stepson is a patent attorney.

[12]     **Q.**    But we're referring to your husband.

[13]     **A.**    Right.

[14]     **Q.**    He's in law enforcement.

[15]     **A.**    Right.

[16]     **Q.**    Question is, Why did you check "yes" to

[17] that?

[18]     **A.**    Because I wasn't quite sure what exactly the

[19] question was.

[20]     **Q.**    Which is why you had a question mark?

[21]     **A.**    Right.

[22]     **Q.**    I don't know if the question mark came

[23] through on yours, but came through on mine.

[24]     All right.  Let me ask this question.  Would

[25] the fact that your husband is a probation officer,

[1]     COMMONWEALTH VS. JOHN IN
[2] would that in any way affect your ability to be a fair
[3] juror?
[4]    **A.**   I don't think so.
[5]    **Q.**   The fact your son or stepson is a patent
[6] attorney, would that affect your ability to be fair?
[7]    **A.**   Not at all.
[8]       **THE COURT**:  Thank you, ma'am.  Wait on
[9]    the other side of the door.  We'll be right
[10]   with you.
[11]      (The prospective juror departed the
[12]   courtroom.)
[13]      **THE COURT**:  Mr. Giuliani, want to make
[14]   sure I covered the area you had concerns
[15]   about.
[16]      **MR. GIULIANI**:  I'm satisfied.  Thank
[17]   you, Your Honor.
[18]      **MS. BARALDI**:  I don't have any
[19]   questions.  Thank you.  Pass the pad.
[20]      **THE COURT**:  That's Juror No. 3.
[21]      **THE COURT CRIER**:  Can you state your
[22]   name for us?
[23]      **PROSPECTIVE JUROR**:  James Robb.
[24]      - - -
[25]      . . . JAMES ROBB, having

[1]     COMMONWEALTH VS. JOHN IN
[2] been duly sworn, was examined and testified
[3] **as follows**:
[4]      - - -
[5]      EXAMINATION
[6]      - - -
[7] **BY THE COURT**:
[8]    **Q.**   Mr. Robb, I see here that you are retired;
[9] is that correct?
[10]   **A.**   Yes.
[11]   **Q.**   How long have you been retired, sir?
[12]   **A.**   Five years.
[13]   **Q.**   Tell us what you did for a living before
[14] retiring.
[15]   **A.**   Culture program director, City of
[16] Philadelphia.
[17]   **Q.**   You were in that job, sir, for how long?
[18]   **A.**   About 35 years.
[19]   **Q.**   I also see from your form that you served on
[20] a jury before, correct?
[21]   **A.**   I was an alternate.
[22]   **Q.**   How long ago was that?
[23]   **A.**   Fifteen, eighteen years ago.
[24]   **Q.**   Do you recall, sir, whether it was a civil
[25] or criminal case?

[1]     COMMONWEALTH VS. JOHN IN
[2]    **A.**   Criminal.
[3]    **Q.**   Were you or someone close to you a victim of
[4] a crime?  That's a separate question.  Okay.  Let me
[5] start over again.
[6]      The question is a separate question.  I'm
[7] referring to Question No. 4.  Have you or anyone close
[8] to you ever been a victim of a crime?
[9]    **A.**   Yes.
[10]   **Q.**   What relationship is that person or those
[11] persons to you?
[12]   **A.**   My sister.
[13]   **Q.**   What happened to your sister?
[14]   **A.**   My sister was murdered.
[15]   **Q.**   Sorry to hear that.  How long ago was that?
[16]   **A.**   1970.
[17]   **Q.**   Was anyone arrested?
[18]   **A.**   Yes.
[19]   **Q.**   Was there someone else?
[20]   **A.**   Yes, a brother.
[21]   **Q.**   What happened to your brother?
[22]   **A.**   He was burglarized.
[23]   **Q.**   The defendant in this case is charged with
[24] burglary.  Can you set that incident aside and judge
[25] this case based simply on the evidence and the law?

[1]     COMMONWEALTH VS. JOHN IN
[2]    **A.**   Well, in addition to that I was burglarized.
[3]    **Q.**   Okay.
[4]    **A.**   I don't know.  That's a difficult position
[5] to put me in.
[6]    **Q.**   Why is that?
[7]    **A.**   I don't like to be burglarized.  I might
[8] have a difficult time deciding on a case like that.
[9]    **Q.**   How long ago were you burglarized?
[10]   **A.**   About ten years ago.
[11]   **Q.**   Is there something about that incident which
[12] would affect your ability to set that aside and judge
[13] this case based simply on the evidence and the law?
[14]   **A.**   I don't know.  I just think the trauma of
[15] being burglarized really shook me.
[16]   **Q.**   Were you home when it happened?
[17]   **A.**   No, but my house was ransacked.
[18]      **THE COURT**:  All right, sir.  Wait on the
[19]   other side of the exit door.  We'll be right
[20]   with you.
[21]      (The prospective juror departed the
[22]   courtroom.)
[23]      **MR. GIULIANI**:  Motion for cause, Your
[24]   Honor.
[25]      **THE COURT**:  Granted.

Page 53

[1] 　　　COMMONWEALTH VS. JOHN IN
[2] 　　　THE COURT CRIER: Have a seat. State
[3] your name for us.
[4] 　　　PROSPECTIVE JUROR: Vashada Banks.
[5] 　　　　　- - -
[6] 　　　. . . VASHADA BANKS, having
[7] been duly sworn, was examined and testified
[8] as follows:
[9] 　　　　　- - -
[10] 　　　EXAMINATION
[11] 　　　　　- - -
[12] BY THE COURT:
[13] 　Q.　Ms. Banks, you checked off on your form that
[14] there is a reason you could not be fair.
[15] 　A.　Yes.
[16] 　Q.　What are those reasons?
[17] 　A.　Well, I witnessed a couple of things I feel
[18] wasn't fair, from the police.
[19] 　Q.　Do you think that would affect your ability
[20] to be a fair juror in this case?
[21] 　A.　Yes.
[22] 　Q.　You have a hardship?
[23] 　A.　Yes. My hardship is I'm a headstart teacher
[24] and school for us starts on Monday. We were using this
[25] week to prepare our classroom for children. We start

Page 54

[1] 　　　COMMONWEALTH VS. JOHN IN
[2] on Monday.
[3] 　　　THE COURT: Would you give us a moment
[4] please. Wait on the other side of that door.
[5] We'll be right with you.
[6] 　　　(The prospective juror departed the
[7] courtroom.)
[8] 　　　MS. BARALDI: The Commonwealth has a
[9] motion.
[10] 　　　THE COURT: Motion for cause granted.
[11] 　　　THE COURT CRIER: Have a seat there.
[12] State your name for us.
[13] 　　　PROSPECTIVE JUROR: Michelle Hallman.
[14] 　　　　　- - -
[15] 　　　. . . MICHELLE HALLMAN, having
[16] been duly sworn, was examined and testified
[17] as follows:
[18] 　　　　　- - -
[19] 　　　EXAMINATION
[20] 　　　　　- - -
[21] BY THE COURT:
[22] 　Q.　Tell us what you do for a living, please.
[23] 　A.　I'm an insurance broker.
[24] 　Q.　You've been in that line of work for how
[25] long?

Page 55

[1] 　　　COMMONWEALTH VS. JOHN IN
[2] 　A.　Almost four years.
[3] 　Q.　Have you or anyone close to you ever been
[4] the victim of a crime?
[5] 　A.　Yes.
[6] 　Q.　What relationship is that person to you?
[7] 　A.　It's a co-worker, for four years.
[8] 　Q.　What happened to your co-worker?
[9] 　A.　Robbery at gunpoint.
[10] 　Q.　How long ago was that?
[11] 　A.　A year ago.
[12] 　Q.　To the best of your knowledge, was anyone
[13] arrested?
[14] 　A.　I know they went to a trial.
[15] 　Q.　I told you and your fellow jurors earlier
[16] this morning you may not give greater or lesser weight
[17] to the testimony of a police officer or other law
[18] enforcement agent simply because of his or her job,
[19] that a police officer's testimony is to be evaluated in
[20] the same manner as any other witness. Would you accept
[21] and apply that instruction?
[22] 　A.　I would.
[23] 　Q.　If you were selected to serve on this jury,
[24] would you give both sides, the defendant and the
[25] Commonwealth, a fair trial?

Page 56

[1] 　　　COMMONWEALTH VS. JOHN IN
[2] 　A.　I would, after hearing you speak this
[3] morning.
[4] 　　　THE COURT: Thank you. Be so kind as to
[5] wait on the other side of the exit door. Be
[6] right with you.
[7] 　　　(The prospective juror departed the
[8] courtroom.)
[9] 　　　THE COURT: You may pass the pad.
[10] 　　　THE COURT CRIER: Commonwealth Strike
[11] No. 1.
[12] 　　　THE COURT CRIER: Have a seat in number
[13] 7. State your name for us.
[14] 　　　PROSPECTIVE JUROR: Allan Williams.
[15] 　　　　　- - -
[16] 　　　. . . ALLAN WILLIAMS, having
[17] been duly sworn, was examined and testified
[18] as follows:
[19] 　　　　　- - -
[20] 　　　EXAMINATION
[21] 　　　　　- - -
[22] BY THE COURT:
[23] 　Q.　Sorry, tell us your name again.
[24] 　A.　Allan Williams.
[25] 　Q.　Mr. Williams, what do you do for a living?

[1]         COMMONWEALTH VS. JOHN IN
[2]    **A.**   Accountant.
[3]    **Q.**   How long have you been in that line of work?
[4]    **A.**   About twelve, fourteen years or so.
[5]    **Q.**   If you were selected to serve on this jury,
[6] would you give both sides, the defendant and the
[7] Commonwealth, a fair trial?
[8]    **A.**   Yes.
[9]         **THE COURT**: Thank you, sir. Be so kind
[10]     to wait on the side of the exit door. We'll
[11]     be right with you.
[12]         (The prospective juror departed the
[13]     courtroom.)
[14]         **THE COURT CRIER**: Ma'am, state your name
[15]     for us.
[16]         **PROSPECTIVE JUROR**: Nadiya Brooks Kelly.
[17]                    - - -
[18]     . . . NADIYA BROOKS KELLY, having
[19] been duly sworn, was examined and testified
[20] **as follows**:
[21]                    - - -
[22]         EXAMINATION
[23]                    - - -
[24] **BY THE COURT**:
[25]    **Q.**   Okay. Ma'am, would you please tell us what

[1]         COMMONWEALTH VS. JOHN IN
[2] you do for a living.
[3]    **A.**   I'm a homemaker. I take care of my four
[4] kids. That's pretty much it.
[5]    **Q.**   Have you ever worked outside of the home?
[6]    **A.**   I have.
[7]    **Q.**   How long ago was it that you last worked
[8] outside of the home?
[9]    **A.**   Probably be a year and a half now.
[10]    **Q.**   What kind of work did you do then?
[11]    **A.**   Post office.
[12]    **Q.**   How long were you there?
[13]    **A.**   Six months.
[14]    **Q.**   Six months?
[15]    **A.**   Yes.
[16]    **Q.**   Let me just go through some of your
[17] responses on the questionnaire. Would you have any
[18] problem during jury deliberations in a criminal case
[19] discussing the case fully but still making up your own
[20] mind?
[21]    **A.**   I have trouble understanding that one.
[22]    **Q.**   Say it again.
[23]    **A.**   I have problems understanding that question.
[24]    **Q.**   But you checked "yes," correct?
[25]    **A.**   Yes.

[1]         COMMONWEALTH VS. JOHN IN
[2]    **Q.**   What did you understand the question to
[3] mean?
[4]    **A.**   It's like I can make up my own mind, but yet
[5] I still have to see what's in front of, what's the
[6] evidence. That's how I looked at it. The evidence in
[7] my mind. I might think one thing, but the evidence
[8] might show something totally different.
[9]    **Q.**   Did you raise your hand that jury service
[10] would be a hardship?
[11]    **A.**   Yes.
[12]    **Q.**   What's the nature of your hardship?
[13]    **A.**   I have a disabled kid at home that goes to
[14] school for like four hours and I don't have childcare.
[15] I would have a, wouldn't have a problem doing it. I
[16] need somebody there to get him on the bus and off the
[17] bus.
[18]    **Q.**   You have three other children?
[19]    **A.**   Correct. They go to public school.
[20]         **THE COURT**: Can you give us a moment,
[21]     please? Wait on the other side of the exit
[22]     door, we'll be right with you.
[23]         **PROSPECTIVE JUROR**: Sure.
[24]         (The prospective juror departed the
[25]     courtroom.)

[1]         COMMONWEALTH VS. JOHN IN
[2]         **THE COURT**: May I see you at sidebar.
[3]     (Sidebar discussion off the record.)
[4]         **THE COURT**: All right, counsel. I'll
[5]     grant her hardship.
[6]         **THE COURT CRIER**: State your name for
[7]     us.
[8]         **PROSPECTIVE JUROR**: Francis J. Sassa.
[9]                    - - -
[10]     . . . FRANCIS J. SASSA, having
[11] been duly sworn, was examined and testified
[12] **as follows**:
[13]                    - - -
[14]         EXAMINATION
[15]                    - - -
[16] **BY THE COURT**:
[17]    **Q.**   Mr. Sassa, it states here that you are
[18] retired, correct?
[19]    **A.**   That's correct.
[20]    **Q.**   How long have you been retired?
[21]    **A.**   Four years.
[22]    **Q.**   Tell us what you did before retiring.
[23]    **A.**   Worked as an accountant and general manager
[24] at the Storage Warehouse.
[25]    **Q.**   How long were you in that last position?

COMMONWEALTH VS. JOHN IN

[1]

[2] **A.** Since 1978.

[3] **Q.** You checked off that you know people in law
[4] enforcement.

[5] **A.** That's correct, sir.

[6] **Q.** What relationship are they to you?

[7] **A.** Personal friends and my cousin.

[8] **Q.** Would the fact you have friends and
[9] relatives in law enforcement, would that affect your
[10] ability to be a fair juror?

[11] **A.** I don't really think so. Except my cousin
[12] in Jersey was a cop for about twenty-five years. When
[13] we had our get-togethers, he would express himself
[14] regarding the authority. He wasn't too happy with the
[15] authority. I don't think it would affect me.

[16] **Q.** Let me ask you this, sir. If you are
[17] selected to serve on the jury, you would be obliged to
[18] decide the case based simply on the evidence and the
[19] law and set aside everything else. Could you do this?

[20] **A.** I think I could.

[21] **Q.** If you are selected to serve on this jury,
[22] would you give both sides, the defendant and the
[23] Commonwealth, a fair trial?

[24] **A.** I would try to, sir. The reason why I say
[25] that because my cousin in 1980 was shot. He was at the

COMMONWEALTH VS. JOHN IN

[1]

[2] wrong spot at the wrong time. It happened in
[3] Philadelphia across Sears and Roebucks. He was in the
[4] wrong spot, the wrong time, was shot and messed up his
[5] left arm. They went to trial and I think the witness
[6] was dismissed.

[7] **Q.** I understand, sir. But does that have
[8] anything to do with this case?

[9] **A.** But it's simply, I think you said it was a
[10] robbery. I don't know if that would affect me or not.
[11] I just want to be honest with you.

[12] **THE COURT:** Either one of you have any
[13] follow-up questions?

[14] **MS. BARALDI:** No.

[15] **MR. GIULIANI:** No.

[16] **THE COURT:** Would you wait on the other
[17] side of that door.

[18] (The prospective juror departed the
[19] courtroom.)

[20] **MR. GIULIANI:** Motion for cause, Your
[21] Honor.

[22] **THE COURT:** Ms. Baraldi.

[23] **MS. BARALDI:** I don't have any
[24] objection.

[25] **THE COURT:** Motion granted.

COMMONWEALTH VS. JOHN IN

[1]

[2] **THE COURT CRIER:** State your name for
[3] us.

[4] **PROSPECTIVE JUROR:** Valery Galibov.

[5] - - -

[6] . . . VALERY GALIBOV, having
[7] been duly sworn, was examined and testified
[8] **as follows:**

[9] - - -

[10] EXAMINATION

[11] - - -

[12] **BY THE COURT:**

[13] **Q.** What do you do for a living?

[14] **A.** Computer programmer.

[15] **Q.** How long have you been a computer
[16] programmer?

[17] **A.** Here in this country? Seventeen, eighteen
[18] years.

[19] **Q.** You lived in this country at least 17, 18
[20] years?

[21] **A.** Yeah.

[22] **Q.** You have any religious, moral or ethical
[23] beliefs that would prevent you from sitting in judgment
[24] in this case and rendering a fair verdict?

[25] **A.** I am religious. But given how the trial

COMMONWEALTH VS. JOHN IN

[1]

[2] will go.

[3] **Q.** You tell me. When you checked off "yes" to
[4] this question, was it a religious, moral or ethical
[5] belief that caused you to check it?

[6] **A.** It's more religious.

[7] **Q.** What is it, the religious belief?

[8] **A.** The truth is supposed to be right.

[9] **Q.** How would that affect your ability to render
[10] a fair verdict?

[11] **A.** I -- I don't know.

[12] **Q.** Would you have any problem during jury
[13] deliberations in a criminal case discussing the case
[14] fully with your fellow jurors and still making up your
[15] own mind?

[16] **A.** Sorry.

[17] **Q.** Would you have any problem in a criminal
[18] case discussing the evidence with your fellow jurors
[19] but still making up your own mind?

[20] **A.** Problem on the lack of English.

[21] **Q.** Say it again.

[22] **A.** Lack of English. Sometimes I might not
[23] understand fully what people talking about. That's
[24] all.

[25] **THE COURT:** Would you give me a moment

Page 65

COMMONWEALTH VS. JOHN IN

[1]
[2] please and wait on the other side of the exit
[3] door to your right.  We'll be right with you.
[4] **PROSPECTIVE JUROR**:  Yes.
[5] (The prospective juror departed the
[6] courtroom.)
[7] **THE COURT**:  Either one of you have any
[8] follow-up questions?
[9] **MS. BARALDI**:  I have a motion for cause.
[10] **THE COURT**:  Motion granted.
[11] **THE COURT CRIER**:  Number 17, Your Honor.
[12] **THE COURT**:  Mr. Dafino has just called
[13] number 17.  The record should reflect Mr. 17
[14] had an outburst during my general
[15] instructions to the panel.  He was dismissed.
[16] It is the Court's belief that he has
[17] some kind of mental, serious mental disorder.
[18] Anybody have any objection to his dismissal?
[19] **MR. GIULIANI**:  No, Your Honor.
[20] **MS. BARALDI**:  No, Your Honor.
[21] **THE COURT CRIER**:  State your name for
[22] us.
[23] **PROSPECTIVE JUROR**:  Patricia Davis.
[24] - - -
[25] . . . PATRICIA DAVIS, having

Page 66

COMMONWEALTH VS. JOHN IN

[1]
[2] been duly sworn, was examined and testified
[3] **as follows**:
[4] - - -
[5] EXAMINATION
[6] - - -
[7] **BY THE COURT**:
[8] **Q.**  Ms. Davis, tell us what you do for a living
[9] please.
[10] **A.**  I'm a homekeeper right now.
[11] **Q.**  Now, let me see if I understand you.  Do you
[12] keep house for someone or referring to keeping your own
[13] house?
[14] **A.**  Own home, house.
[15] **Q.**  Full-time housewife?
[16] **A.**  Yes.
[17] **Q.**  You wrote "/student."
[18] **A.**  Yes.  Excuse me?
[19] **Q.**  You wrote --
[20] **A.**  Just a little upgrade.  I was a CNA, just
[21] something to keep me busy.
[22] **Q.**  You wrote homekeeper/student.  What are you
[23] studying?
[24] **A.**  Just refreshment course, math.
[25] **Q.**  Have you ever served on a jury before?

Page 67

COMMONWEALTH VS. JOHN IN

[1]
[2] **A.**  No.
[3] **Q.**  You checked "yes" on the form.  Was that a
[4] mistake?
[5] **A.**  Well, I don't know if you could call it a --
[6] we made a decision about a jury once about two years
[7] ago.  It was just a day jury.
[8] **Q.**  Say that one more time.
[9] **A.**  They had to decide.  I don't know what it
[10] was about, but we made a decision about something.  It
[11] was like a full day jury there.  There all day long.
[12] The judge kept us as a jury.  He dismissed us after the
[13] decision came through.
[14] **Q.**  Who made the decision?
[15] **A.**  I guess we did.  Whatever reason there was I
[16] don't know.  Probably a mistake.
[17] **Q.**  You were or were not --
[18] **A.**  For a day.  It was just for a day.
[19] **Q.**  For a day?
[20] **A.**  It was just for a day.
[21] **Q.**  Was it a civil or criminal case?
[22] **A.**  Civil.
[23] **Q.**  Have you or anyone close to you been a
[24] victim of a crime?
[25] **A.**  No, I haven't.

Page 68

COMMONWEALTH VS. JOHN IN

[1]
[2] **Q.**  Sorry.
[3] **A.**  I haven't, no.
[4] **Q.**  You checked "yes" to that on the form.
[5] **A.**  Someone close to me but not I.
[6] **Q.**  What's your relationship to that person?
[7] **A.**  My brother.
[8] **Q.**  What happened to your brother?
[9] **A.**  He was robbed and beat up.
[10] **Q.**  How long ago was that?
[11] **A.**  Been about five years.
[12] **Q.**  Did he report it?
[13] **A.**  Yes.
[14] **Q.**  Was anyone arrested?
[15] **A.**  No.
[16] **Q.**  Is there anything about that incident that
[17] would affect your ability to be a fair juror in this
[18] case?
[19] **A.**  No.
[20] **Q.**  You checked off that you or someone close to
[21] you was arrested or charged with a crime?
[22] **A.**  That was a mistake.  Someone I know, but
[23] they're not close to me.
[24] **Q.**  Someone you know?
[25] **A.**  Someone I know, a neighbor of mine.

Page 69

COMMONWEALTH VS. JOHN IN

[2] **Q.** What was your neighbor charged with?

[3] **A.** Robbery, assault.

[4] **Q.** How long ago was that?

[5] **A.** That's been about ten years because he's

[6] still in jail for the charges right now.

[7] **Q.** Did you attend the trial?

[8] **A.** No.

[9] **Q.** Do you have an opinion to whether your

[10] neighbor was treated fair or unfair?

[11] **A.** Not knowing the circumstances I believe he

[12] was treated fair.

[13] **Q.** Knowing him as the person you know him as.

[14] When you checked off that you or someone close to you

[15] was a victim of a crime, is that someone we already

[16] discussed?

[17] **A.** No.

[18] **Q.** Tell us who the person was.

[19] **A.** It was a neighbor of mine who I used to go

[20] to work with, catched the bus to work. I came out and

[21] the police were all surrounding somebody. Someone had

[22] beat her, hit her in the back of the head and left her

[23] for dead.

[24] **Q.** Sorry to hear that. Is there anything about

[25] that incident which would affect your ability to be a

Page 70

COMMONWEALTH VS. JOHN IN

[2] fair juror?

[3] **A.** No.

[4] **Q.** You know people in law enforcement?

[5] **A.** Yes.

[6] **Q.** What relationship are they to you?

[7] **A.** My mother's godson.

[8] **Q.** What does he do?

[9] **A.** He's a prison guard.

[10] **Q.** Would the fact that you know someone in law

[11] enforcement, would that affect your ability to be a

[12] fair juror?

[13] **A.** No.

[14] **Q.** One of the instructions I gave you and your

[15] fellow jurors earlier this morning was that you can

[16] give no greater or lesser weight to the testimony of a

[17] police officer or other law enforcement agent simply

[18] because of his or her job. A police officer's

[19] testimony is to be evaluated in the same way as any

[20] other witnesses. Would you accept and apply that

[21] instruction?

[22] **A.** Yes, I did mark that wrong because I

[23] understood it better after you explained.

[24] **Q.** If you were selected to serve on this jury,

[25] would you give both sides, the defendant and the

Page 71

COMMONWEALTH VS. JOHN IN

[2] Commonwealth, a fair trial?

[3] **A.** Yes.

[4] **THE COURT:** If you would wait for us on

[5] the other side of the exit door for a moment,

[6] Ms. Davis, we'll be right with you.

[7] **PROSPECTIVE JUROR:** Sure.

[8] (The prospective juror departed the

[9] courtroom.)

[10] **THE COURT:** Counsel, do either of you

[11] have any follow-up question?

[12] **MS. BARALDI:** No, Your Honor.

[13] **MR. GIULIANI:** No, Your Honor.

[14] **THE COURT CRIER:** State your name for

[15] us.

[16] **PROSPECTIVE JUROR:** Marianne Leonetti

[17] Merkle.

[18] - - -

[19] . . . MARIANNE LEONETTI MERKLE, having

[20] been duly sworn, was examined and testified

[21] **as follows:**

[22] - - -

[23] EXAMINATION

[24] - - -

[25] **BY THE COURT:**

Page 72

COMMONWEALTH VS. JOHN IN

[2] **Q.** Ms. Leonetti Merkle, what you do for a

[3] living?

[4] **A.** Nurse.

[5] **Q.** That's an RN?

[6] **A.** Yes.

[7] **Q.** Do you work at either a hospital, doctor's

[8] office or some other setting?

[9] **A.** Home care.

[10] **Q.** You've been a nurse now for how long?

[11] **A.** Twenty-one years.

[12] **Q.** How long ago was it, ma'am, that you served

[13] on a jury?

[14] **A.** About three years.

[15] **Q.** Civil or criminal case?

[16] **A.** Civil.

[17] **Q.** If you were selected to serve on this jury,

[18] would you give both sides, the defendant and the

[19] Commonwealth, a fair trial?

[20] **A.** Yes.

[21] **THE COURT:** Would you be so kind to wait

[22] on the other side of the exit door. We'll be

[23] right with you.

[24] (The prospective juror departed the

[25] courtroom.)

Page 73

[1]      COMMONWEALTH VS. JOHN IN
[2]      **THE COURT CRIER**:  State your name for
[3]  us.
[4]      **PROSPECTIVE JUROR**:  One moment, please.
[5]      **THE COURT CRIER**:  Sure, take your time.
[6]      **PROSPECTIVE JUROR**:  Dannette Delange.
[7]              - - -
[8]      . . . DANNETTE DELANGE, having
[9]  been duly sworn, was examined and testified
[10]  **as follows**:
[11]              - - -
[12]          EXAMINATION
[13]              - - -
[14]  **BY THE COURT**:
[15]      **Q.**    Tell us what you do for a living, please.
[16]      **A.**    I'm currently on welfare.  I don't have a
[17]  job right now so.
[18]      **Q.**    How long ago was it that you last worked?
[19]      **A.**    June.
[20]      **Q.**    June of '08?
[21]      **A.**    Yes.
[22]      **Q.**    What kind of work were you doing then?
[23]      **A.**    Receptionist, sales.  Worked for a legal
[24]  supply company.
[25]      **Q.**    How long were you in that job?

Page 74

[1]      COMMONWEALTH VS. JOHN IN
[2]      **A.**    Four years.
[3]      **Q.**    Please don't tell me your home address or
[4]  even the street that you live on, but in what section
[5]  of the city do you live?
[6]      **A.**    Port Richmond.
[7]      **Q.**    Going to ask you the next two questions
[8]  because I'm not sure whether you checked yes or no.
[9]  Have you or anyone close to you ever been a victim of a
[10]  crime?
[11]      **A.**    No.  That was my brother, but he won't --
[12]  that's why I put it first.  It was yes then I put no.
[13]      **Q.**    Your brother was a victim of a crime?
[14]      **A.**    He wasn't.  I wrote it over.  He wasn't.
[15]      **Q.**    Has anyone close to you ever been arrested
[16]  or charged with a crime?
[17]      **A.**    My brother was.
[18]      **Q.**    The answer is yes?
[19]      **A.**    Yes.
[20]      **Q.**    What was your brother charged with?
[21]      **A.**    Robbery.
[22]      **Q.**    How long ago was that?
[23]      **A.**    He's on parole now.  He just got out a year
[24]  ago.
[25]      **Q.**    Did you attend his trial?

Page 75

[1]      COMMONWEALTH VS. JOHN IN
[2]      **A.**    He didn't make a trial, but I was in the
[3]  courtroom.
[4]      **Q.**    Did you have an opinion to whether he was
[5]  treated fair or unfair?
[6]      **A.**    He was treated fair.
[7]      **Q.**    When you checked off that you or someone
[8]  close to you was an eyewitness to a crime, is that
[9]  something we already discussed or something else?
[10]      **A.**    No, that's something different.
[11]      **Q.**    You were a witness?
[12]      **A.**    Yes.
[13]      **Q.**    Tell us what you saw.
[14]      **A.**    I don't know if you remember the Aramingo
[15]  Diner shooting.  I was working.  Some guy came in.
[16]  They had an argument.  The two of them had an argument.
[17]  A guy pulled out a gun and killed him.
[18]      **Q.**    You witnessed that?
[19]      **A.**    Yes.
[20]      **Q.**    If you were selected to serve on this jury,
[21]  could you set that incident aside and decide the case
[22]  based simply on the evidence and the law?
[23]      **A.**    Yes.
[24]      **Q.**    Pardon me, I suppose I should have asked
[25]  that before.  Are you presently taking any medication

Page 76

[1]      COMMONWEALTH VS. JOHN IN
[2]  that might interfere with or prevent you from serving
[3]  as a juror?
[4]      **A.**    I'm taking a lot of medication actually.  I
[5]  get sleepy through the day.  Like, just back there I
[6]  was sleeping.  But I'm taking 100 mm. of Seroquel, of
[7]  Restoril 30 mm. -- Restoril and Clozapin.
[8]      **Q.**    It makes you drowsy?
[9]      **A.**    Yeah, makes me tired.
[10]      **THE COURT**:  Can you give us a moment.
[11]  Wait on the other side of the door.  We'll be
[12]  with you momentarily.
[13]      **PROSPECTIVE JUROR**:  Sure.
[14]      (The prospective juror departed the
[15]  courtroom.)
[16]      **MR. GIULIANI**:  Motion for cause.
[17]      **THE COURT**:  Motion granted.
[18]      **THE COURT CRIER**:  State your name for
[19]  us.
[20]      **PROSPECTIVE JUROR**:  Ansil Boyce.
[21]              - - -
[22]      . . . ANSIL BOYCE, having
[23]  been duly sworn, was examined and testified
[24]  **as follows**:
[25]              - - -

[1]     COMMONWEALTH VS. JOHN IN
[2]         EXAMINATION
[3]             - - -
[4] **BY THE COURT**:
[5]     **Q.**   Mr. Boyce, do you have any religious, moral
[6] or ethical beliefs that would prevent you from sitting
[7] in judgment in a criminal case rendering a fair
[8] verdict?
[9]     **A.**   Yes, I do.
[10]     **Q.**   Is your belief religious, moral, ethical?
[11]     **A.**   Moral.
[12]     **Q.**   What is the nature of the belief?
[13]     **A.**   I do not believe in the death probation.
[14]     **Q.**   This is not a death penalty case.  Would you
[15] be able to serve on this jury?
[16]     **A.**   No, I cannot, due to medical appointments
[17] that I have.
[18]     **Q.**   Would you tell us about it.
[19]     **A.**   Yes.  I have two procedures I have to do --
[20] one is a blood, I have to take my blood to do some
[21] bloodwork; the next one is for my prostate.
[22]     **Q.**   That's when?
[23]     **A.**   One is on Thursday, the next one is on
[24] Monday.
[25]         **THE COURT**:  Would you give us a moment.

[1]     COMMONWEALTH VS. JOHN IN
[2] Wait on the other side of the exit door.
[3] We'll be right with you.
[4]         (The prospective juror departed the
[5] courtroom.)
[6]         **THE COURT**:  Any objection to these
[7] hardships?
[8]         **MS. BARALDI**:  No, Your Honor.
[9]         **MR. GIULIANI**:  No, Your Honor.
[10]         **THE COURT**:  Hardship granted.
[11]         **THE COURT CRIER**:  State your name for
[12] us, spell your last name.
[13]         **PROSPECTIVE JUROR**:  Crystal Jones,
[14] J-O-N-E-S.
[15]             - - -
[16]         . . . CRYSTAL JONES, having
[17] been duly sworn, was examined and testified
[18] **as follows**:
[19]             - - -
[20]         EXAMINATION
[21]             - - -
[22] **BY THE COURT**:
[23]     **Q.**   Ms. Jones, you check off on the form that
[24] there is a reason or reasons why you could not be a
[25] fair juror?

[1]     COMMONWEALTH VS. JOHN IN
[2]     **A.**   Yes.
[3]     **Q.**   Would you tell us what your reasons are.
[4]     **A.**   It's -- if it was a homicide case.
[5]     **Q.**   It's not a homicide case.
[6]     **A.**   That's the reason I checked it off.
[7]     **Q.**   Would you have any problem following the
[8] Judge's instruction that the defendant in a criminal
[9] case is presumed to be innocent until proven guilty
[10] beyond a reasonable doubt?
[11]     **A.**   No.
[12]     **Q.**   You checked "yes" on the form.
[13]     **A.**   I meant to check "no."
[14]     **Q.**   Tell us what you do for a living.
[15]     **A.**   Quality analyst.
[16]     **Q.**   And how long have you been in that job?
[17]     **A.**   Three years.
[18]     **Q.**   Have you ever served on a jury before?
[19]     **A.**   Yes.
[20]     **Q.**   How long ago?
[21]     **A.**   Seven years.
[22]     **Q.**   Was that a civil or criminal case?
[23]     **A.**   Criminal.
[24]     **Q.**   You or someone close to you, ma'am, was a
[25] victim of a crime?

[1]     COMMONWEALTH VS. JOHN IN
[2]     **A.**   Yes.
[3]     **Q.**   What relationship is that to you?
[4]     **A.**   My cousin.
[5]     **Q.**   What happened to your cousin?
[6]     **A.**   He was murdered.
[7]     **Q.**   Sorry to hear that.  How long ago was it?
[8]     **A.**   Two years ago.
[9]     **Q.**   Sorry.
[10]     **A.**   Two years ago.
[11]     **Q.**   Was anyone arrested?
[12]     **A.**   Yes.
[13]     **Q.**   Is there anything about that case which
[14] would affect your ability to be a fair juror in this
[15] case?
[16]     **A.**   Honestly I don't know.  I really couldn't
[17] say.  I don't know.
[18]     **Q.**   You think it might?
[19]     **A.**   It might.  I don't know.
[20]     **Q.**   What is it about the cousin's case that
[21] might affect your ability to be fair in this case?
[22]     **A.**   I can't think of a reason.  It would -- I
[23] can't -- I don't know because I haven't, I haven't been
[24] in a courtroom or anything since then.
[25]         **THE COURT**:  Could you give us a moment,

COMMONWEALTH VS. JOHN IN

[1]
[2] ma'am. Wait on the other side of the exit
[3] door. We'll be right with you.
[4]     (The prospective juror departed the
[5] courtroom.)
[6]     THE COURT: Do either of you wish to
[7] follow up?
[8]     MS. BARALDI: No, Your Honor.
[9]     MR. GIULIANI: No, Your Honor. Motion
[10] for cause.
[11]     THE COURT: Granted cause on Ms. Jones.
[12]     THE COURT CRIER: State your name for
[13] us.
[14]     PROSPECTIVE JUROR: Michele Higgins.
[15]     - - -
[16]     . . . MICHELE HIGGINS, having
[17] been duly sworn, was examined and testified
[18] as follows:
[19]     - - -
[20]     EXAMINATION
[21]     - - -
[22] BY THE COURT:
[23]     Q. Ms. Higgins, what do you do for a living?
[24]     A. I work at United Parcel Service as quality
[25] control.

COMMONWEALTH VS. JOHN IN

[1]
[2]     Q. How long you been with them?
[3]     A. Excuse me.
[4]     Q. How long have you been with them?
[5]     A. Twenty-three years.
[6]     Q. Have you or anyone close to you ever been
[7] charged with a crime?
[8]     A. Judge, my niece had a DUI.
[9]     Q. How long ago was that?
[10]     A. I guess about two years ago.
[11]     Q. Is there anything about that case which
[12] would affect your ability to be a fair juror in this
[13] case?
[14]     A. No, ma'am.
[15]     Q. You checked off that you know people in law
[16] enforcement.
[17]     A. Yes, my father was a police officer.
[18]     Q. Would the fact that your father worked in
[19] law enforcement, would that in any way affect your
[20] ability to be a fair juror?
[21]     A. I don't think so, no.
[22]     Q. One of the instructions I gave you and your
[23] fellow jurors this morning was you may give no greater
[24] or lesser weight to the testimony of a policeman or
[25] other law enforcement agent simply because of his or

COMMONWEALTH VS. JOHN IN

[1]
[2] her job. A police officer is to have his or her
[3] testimony evaluated the same way you would that of any
[4] other witness. Would you accept and follow that
[5] instruction?
[6]     A. Can you say that again, Judge?
[7]     Q. Yes. When you and your fellow panel members
[8] came in the morning, you will recall I gave you some
[9] instructions in the law. One instruction was that you
[10] may give no greater or lesser weight to the testimony
[11] of a police officer or any other law enforcement agent
[12] simply because of his or her job. A police officer's
[13] testimony is to be evaluated in the same way that you
[14] would that of any other witness. Would you accept and
[15] follow that instruction?
[16]     A. Yes.
[17]     Q. If you were selected to serve on this jury,
[18] would you give both sides, the defendant and the
[19] Commonwealth, a fair trial?
[20]     A. Yes.
[21]     THE COURT CRIER: If you would wait for
[22] us on the other side of the exit door, we'll
[23] be right with you.
[24]     PROSPECTIVE JUROR: Sure.
[25]     (The prospective juror departed the

COMMONWEALTH VS. JOHN IN

[1]
[2] courtroom.)
[3]     MR. GIULIANI: Defense Strike No. 1.
[4]     THE COURT CRIER: State your name for
[5] us.
[6]     PROSPECTIVE JUROR: Margaretta L.
[7] Nicholson.
[8]     - - -
[9]     . . . MARGARETTA L. NICHOLSON, having
[10] been duly sworn, was examined and testified
[11] as follows:
[12]     - - -
[13]     EXAMINATION
[14]     - - -
[15] BY THE COURT:
[16]     Q. Ms. Nicholson, I see here you are retired;
[17] is that correct?
[18]     A. That's correct.
[19]     Q. How long have you been retired?
[20]     A. Since June 29th.
[21]     Q. What kind of work did you do before
[22] retiring?
[23]     A. Emergency room nurse.
[24]     Q. Were you an RN or --
[25]     A. LPN.

Page 85

[1]          COMMONWEALTH VS. JOHN IN
[2]     **Q.**   How long did you work as an LPN?
[3]     **A.**   About thirty years.
[4]     **Q.**   Sorry.
[5]     **A.**   Maybe thirty years.
[6]     **Q.**   Now, you checked off on your form that there
[7] is a reason or reasons you could not be a fair juror.
[8] What are they?
[9]     **A.**   Well, the reason is I can't be a juror, not
[10] that I wouldn't be fair.  I wouldn't be a juror because
[11] I know part of the world, the world as you have it.
[12] I'm one of the Jehovah's Witnesses.  No reason, the
[13] reason because we know part of the world.  I can't get
[14] involved in this thing; the world does.
[15]     **Q.**   Is that why you checked "no"?
[16]     **A.**   This?  Yes.
[17]     **Q.**   Do you have any religious, moral or ethical
[18] beliefs that would prevent you from serving as a fair
[19] juror?
[20]     **A.**   Yes.
[21]          **THE COURT**:  Give us a moment.  Wait on
[22]     the other side of the exit door.  We'll be
[23]     right with you.
[24]          **PROSPECTIVE JUROR**:  Thank you.
[25]          (The prospective juror departed the

Page 86

[1]          COMMONWEALTH VS. JOHN IN
[2] courtroom.)
[3]          **MS. BARALDI**:  Motion for cause, Your
[4] Honor.
[5]          **THE COURT**:  Granted.
[6]          **THE COURT CRIER**:  State your name for
[7] us, please.
[8]          **PROSPECTIVE JUROR**:  Neshaa Swayne.
[9]                    - - -
[10]          . . . NESHAA SWAYNE, having
[11] been duly sworn, was examined and testified
[12] **as follows**:
[13]                    - - -
[14]               EXAMINATION
[15]                    - - -
[16] **BY THE COURT**:
[17]     **Q.**   What do you do for a living, please?
[18]     **A.**   Right now I'm unemployed.
[19]     **Q.**   How long have you been unemployed?
[20]     **A.**   For about four months.
[21]     **Q.**   What kind of work did you do before that?
[22]     **A.**   I was working at a bridal shop doing order
[23] entries.
[24]     **Q.**   How long were you there?
[25]     **A.**   Two months.

Page 87

[1]          COMMONWEALTH VS. JOHN IN
[2]     **Q.**   What kind of work did you do before that?
[3]     **A.**   Loan support coordinator.
[4]     **Q.**   Say that one more time.
[5]     **A.**   Loan support coordinator.
[6]     **Q.**   What kind of agency?
[7]     **A.**   Agency for Option One.
[8]     **Q.**   How long did you work at that job?
[9]     **A.**   For a year.
[10]     **Q.**   I see here, ma'am, that you served on a jury
[11] before?
[12]     **A.**   Yes, that was a long time ago.
[13]     **Q.**   About how long ago?
[14]     **A.**   I can't even remember.
[15]     **Q.**   Over five years?
[16]     **A.**   Maybe so.
[17]     **Q.**   Over ten years?
[18]     **A.**   No.  Between five and ten, yeah.
[19]     **Q.**   Do you remember whether it was a civil or
[20] criminal case?
[21]     **A.**   No.
[22]     **Q.**   You don't remember?
[23]     **A.**   No.
[24]     **Q.**   You or someone close to you, Ms. Swain, was
[25] a victim of a crime?

Page 88

[1]          COMMONWEALTH VS. JOHN IN
[2]     **A.**   Yes.
[3]     **Q.**   What relationship is that person or those
[4] persons to you?
[5]     **A.**   My cousin.
[6]     **Q.**   What happened to your cousin?
[7]     **A.**   I think he was committed for, committed the
[8] crime of robbery.  He just came home from jail.
[9]     **Q.**   All right.  Let me ask it another way.
[10] There are two questions.  One asks, "Have you or anyone
[11] close to you ever been the victim of a crime?"  The
[12] other one asks, "Have you or anyone close to you been
[13] arrested or charged with a crime?"  I'll take the
[14] second one first.  Your cousin was arrested and charged
[15] with robbery; is that right?
[16]     **A.**   Yes.
[17]     **Q.**   Did you attend his trial?
[18]     **A.**   No.
[19]     **Q.**   You have an opinion as to whether he was
[20] treated fair or unfair?
[21]     **A.**   He was treated fair.
[22]     **Q.**   The defendant is on trial for robbery.  Is
[23] there anything about your cousin's case which would
[24] affect your ability to be a fair juror in this case?
[25]     **A.**   No.

COMMONWEALTH VS. JOHN IN

[2]  **Q.**  Have you or anyone close to you ever been a
[3] victim of a crime?
[4]  **A.**  No.
[5]  **Q.**  You checked off that you or someone close to
[6] you was an eyewitness to a crime.  Who was the witness?
[7]  **A.**  It was a friend of mine.
[8]  **Q.**  What did your friend see?
[9]  **A.**  He seen someone get shot.
[10]  **Q.**  Is there anything about what your friend saw
[11] that would affect your ability to be a fair juror?
[12]  **A.**  No.
[13]  **Q.**  Would you be less likely to believe the
[14] testimony of a police officer or other law enforcement
[15] agent simply because of his or her job?
[16]  **A.**  No.
[17]  **Q.**  You checked "yes" on the form.
[18]  **A.**  What was the question again?
[19]  **Q.**  "Would you be less likely to believe the
[20] testimony of a police officer."
[21]  **A.**  Yeah.
[22]  **Q.**  You would?
[23]  **A.**  I feel as though they not no different from
[24] any other witness, no different from any other.
[25]  **Q.**  Let me put it another way, ma'am.  Earlier

COMMONWEALTH VS. JOHN IN

[2] this morning I gave you and your fellow jurors that
[3] **essentially as follows**:  "A police officer's testimony
[4] may be given no greater or lesser weight simply because
[5] of his or her job.  A police officer is to have his or
[6] her testimony evaluated using the same standard you
[7] would use to evaluate that of any other witnesses."
[8]  **A.**  Right.
[9]  **Q.**  Would you be able to accept and apply that
[10] instruction?
[11]  **A.**  Yes.
[12]  **Q.**  If you were selected to serve on this jury,
[13] would you give both sides, the defendant and the
[14] Commonwealth, a fair trial?
[15]  **A.**  Yes.
[16]  **THE COURT**:  Wait on the other side of
[17] that exit door to your right.  Be right with
[18] you.
[19]  (The prospective juror departed the
[20] courtroom.)
[21]  **THE COURT**:  Any follow-up?
[22]  **MS. BARALDI**:  No, Your Honor.
[23]  **MR. GIULIANI**:  No, Your Honor.
[24]  **THE COURT**:  Pass the pad.
[25]  **THE COURT CRIER**:  State your name,

COMMONWEALTH VS. JOHN IN

[2]  please.
[3]  **PROSPECTIVE JUROR**:  Kelly Dozier.
[4]  - - -
[5]  . . . KELLY DOZIER, having
[6] been duly sworn, was examined and testified
[7] **as follows**:
[8]  - - -
[9]  EXAMINATION
[10]  - - -
[11] **BY THE COURT:**
[12]  **Q.**  Ms. Dozier, tell us what you do for a
[13] living.
[14]  **A.**  Teller supervisor at PNC bank, full-time.
[15]  **Q.**  How long have you been in that job?
[16]  **A.**  Two years.  It will be three years in
[17] November.
[18]  **Q.**  Would you have any problem following the
[19] Court's instruction that the defendant in a criminal
[20] case is presumed to be innocent until proven guilty
[21] beyond a reasonable doubt?
[22]  **A.**  No.
[23]  **Q.**  Did you raise your hand that jury service
[24] would be a hardship?
[25]  **A.**  Yes.

COMMONWEALTH VS. JOHN IN

[2]  **Q.**  What's the nature of your hardship?
[3]  **A.**  We have a new bank so I'm the manager.  I'm
[4] supervisor and I open every morning.  Right now I don't
[5] have anyone to open the bank at seven-thirty.
[6]  **Q.**  What would happen if you got sick, ma'am?
[7]  **A.**  Well, they would have to find someone.
[8] You're right about that.
[9]  **Q.**  You live in the Northern Liberties section
[10] of our city?
[11]  **A.**  Yes.
[12]  **Q.**  How long have you lived in that section of
[13] Philadelphia?
[14]  **A.**  Two years.
[15]  **Q.**  Would you be less likely to believe the
[16] testimony of a police officer or other law enforcement
[17] agent simply because of his or her job?
[18]  **A.**  I put yes and no because I believe that
[19] there are some police officers that don't tell the
[20] truth.
[21]  **Q.**  Did you hear my instructions earlier this
[22] morning on that issue?
[23]  **A.**  What was it?  Recap.
[24]  **Q.**  A police officer's testimony is not to be
[25] given any lesser weight or greater weight merely

[1]     COMMONWEALTH VS. JOHN IN
[2] because of his or her job.  His or her testimony is to
[3] be evaluated in the same way as you would that of any
[4] other witness.  Would you be able to accept and follow
[5] that instruction?
[6]     **A.**   Yes.
[7]     **Q.**   Any doubt in your mind?
[8]     **A.**   No.
[9]     **Q.**   If you were selected to serve on this jury,
[10] would you give both sides, the defendant and the
[11] Commonwealth, a fair trial?
[12]    **A.**   Yes.
[13]        **THE COURT**:  All right, ma'am.  If you
[14]    would wait on the other side of the exit
[15]    door.  Be with you momentarily.
[16]        **PROSPECTIVE JUROR**:  All right.  Thank
[17]    you.
[18]        (The prospective juror departed the
[19]    courtroom.)
[20]        **THE COURT**:  Let me see the two of you
[21]    for a second.
[22]        (Sidebar discussion off the record.)
[23]        **THE COURT**:  Ms. Baraldi or Mr. Giuliani,
[24]    do either one of you have any follow-up
[25]    questions?

[1]     COMMONWEALTH VS. JOHN IN
[2]        **MS. BARALDI**:  No, Your Honor.
[3]        **MR. GIULIANI**:  No, Your Honor.
[4]        **THE COURT**:  Her hardship is denied.
[5]        **THE COURT CRIER**:  State your name for
[6]    us.
[7]        **PROSPECTIVE JUROR**:  Anthony Toliver.
[8]            - - -
[9]        . . . ANTHONY TOLIVER, having
[10] been duly sworn, was examined and testified
[11] **as follows**:
[12]            - - -
[13]        EXAMINATION
[14]            - - -
[15] **BY THE COURT**:
[16]    **Q.**   Mr. Toliver, are you presently taking any
[17] medication that might interfere with or prevent you
[18] from serving as a juror?
[19]    **A.**   I am.
[20]    **Q.**   Sorry.
[21]    **A.**   I am.
[22]    **Q.**   What effect does the medication have on you?
[23]    **A.**   Makes me drowsy, sometimes nauseous.
[24]    **Q.**   You checked off that you are disabled,
[25] correct?

[1]     COMMONWEALTH VS. JOHN IN
[2]    **A.**   Yes.
[3]    **Q.**   The question, do you have any physical or
[4] psychological disability, you checked "yes".
[5]    **A.**   Yes.  Physically, I have back and nerve
[6] damage in my lower back and if I sit, stand or walk too
[7] long, it becomes very uncomfortable for me.
[8]        **THE COURT**:  Give me a moment, sir.  Wait
[9]    on the other side of the door.  We'll be
[10]    right with you.
[11]        **MR. GIULIANI**:  Motion for cause, Your
[12]    Honor.
[13]        **THE COURT**:  Don't everybody speak at the
[14]    same time.  Defense cause granted.
[15]    He had said "medication makes me drowsy,
[16]    nauseous."  I granted his cause.
[17]        **THE COURT CRIER**:  State your name for
[18]    us.
[19]        **PROSPECTIVE JUROR**:  J. Jenkins Carter.
[20]            - - -
[21]        . . . J. JENKINS CARTER, having
[22] been duly sworn, was examined and testified
[23] **as follows**:
[24]            - - -
[25]        EXAMINATION

[1]     COMMONWEALTH VS. JOHN IN
[2]            - - -
[3] **BY THE COURT**:
[4]    **Q.**   Good afternoon.
[5]    **A.**   Hello.
[6]    **Q.**   Tell us what you do for a living.
[7]    **A.**   I stay at home, keep my grandkids when
[8] they're there.  I live by myself.
[9]    **Q.**   Did you ever work outside of the home?
[10]    **A.**   Yes.
[11]    **Q.**   What kind of work did you last do?
[12]    **A.**   I worked at hotel housekeeping, worked at a
[13] health facility keeping the elderly.  I worked at
[14] several restaurants as a cook.
[15]    **Q.**   How long ago was it that you last worked
[16] outside the home?
[17]    **A.**   Last time, twenty-five years ago.
[18]    **Q.**   Have you ever served on a jury?
[19]    **A.**   Yes.
[20]    **Q.**   How long ago was it that you last served?
[21]    **A.**   I guess about four or five years ago.
[22]    **Q.**   Civil or criminal case?
[23]    **A.**   Criminal.
[24]    **Q.**   Have you or anyone close to you ever been
[25] the victim of a crime, ma'am?

COMMONWEALTH VS. JOHN IN

[2]  **A.**  Yes, ma'am.

[3]  **Q.**  What relationship is that person to you?

[4]  **A.**  My nephew.

[5]  **Q.**  What happened to your nephew?

[6]  **A.**  Well, he was jumped and beat up and robbed.

[7]  **Q.**  How long ago was that?

[8]  **A.**  About, I guess about five years ago.

[9]  **Q.**  Did he report it?

[10]  **A.**  Yeah, he reported it.

[11]  **Q.**  Was anyone arrested?

[12]  **A.**  No.

[13]  **Q.**  Was there anything about that case which

[14] would affect your ability to be a fair juror in this

[15] case?

[16]  **A.**  No.

[17]  **Q.**  You checked off that you or someone close to

[18] you was arrested and charged with a crime?

[19]  **A.**  Yes.

[20]  **Q.**  What relationship is that person to you?

[21]  **A.**  A nephew.

[22]  **Q.**  Same or different nephew?

[23]  **A.**  Different.

[24]  **Q.**  What was this nephew charged with?

[25]  **A.**  I'm not sure.

COMMONWEALTH VS. JOHN IN

[2]  **Q.**  What he was charged with?

[3]  **A.**  He's grown.  I think he's in a halfway house

[4] now.  I'm not sure.

[5]  **Q.**  Do you recall how long ago he was arrested?

[6]  **A.**  In and out of jail so much, I guess about

[7] two years, year and a half.

[8]  **Q.**  Do you know if his case went to trial?

[9]  **A.**  No, we don't keep that much in touch.  I

[10] don't know.

[11]  **Q.**  Is there anything about that case which

[12] would affect your ability to be a fair juror in this

[13] case?

[14]  **A.**  No.

[15]  **Q.**  You know people in law enforcement?

[16]  **A.**  No.

[17]  **Q.**  Have you or anyone close to you ever worked

[18] as a police officer or any other law enforcement job

[19] such as a prosecutor, public defender, defense lawyer,

[20] detective, prison guard, security guard or corrections

[21] officer?

[22]  **A.**  That one job, I forgot I worked as a

[23] security guard.

[24]  **Q.**  About how many years is that?

[25]  **A.**  I worked outside the home.  That was about

COMMONWEALTH VS. JOHN IN

[2] twenty years ago.  That was the last job I had.

[3]  **Q.**  The fact you worked in law enforcement

[4] twenty years ago, would that affect your ability to be

[5] a fair juror in this case?

[6]  **A.**  No.

[7]  **Q.**  If you were selected to serve on this jury,

[8] would you give both sides, the defendant and the

[9] Commonwealth, a fair trial?

[10]  **A.**  Yes.

[11]  **THE COURT**:  Thank you, ma'am.  Wait on

[12] the other side of the exit door.  Be right

[13] with you.

[14]  (The prospective juror departed the

[15] courtroom.)

[16]  **THE COURT CRIER**:  State your name for

[17] us.

[18]  **PROSPECTIVE JUROR**:  Rochelle Workman.

[19]  - - -

[20]  . . . ROCHELLE WORKMAN, having

[21] been duly sworn, was examined and testified

[22]  **as follows**:

[23]  - - -

[24]  EXAMINATION

[25]  - - -

COMMONWEALTH VS. JOHN IN

[2]  **BY THE COURT**:

[3]  **Q.**  Ms. Workman, tell us what you do for a

[4] living.

[5]  **A.**  I'm a classroom assistant for special

[6] education.

[7]  **Q.**  Is this a public school?

[8]  **A.**  Yes.

[9]  **Q.**  What ages are the children that you take

[10] care of?

[11]  **A.**  The ages are from thirteen to fifteen.

[12]  **Q.**  How long have you been in that job?

[13]  **A.**  Twenty-one years.

[14]  **Q.**  Have you ever served on a jury before?

[15]  **A.**  No.

[16]  **Q.**  How long ago?

[17]  **A.**  No.

[18]  **Q.**  No, okay.  You checked "yes" on the form.

[19] Is that a mistake?

[20]  **A.**  Yes.

[21]  **Q.**  Have you or anyone close to you ever been a

[22] victim of a crime?

[23]  **A.**  No.

[24]  **Q.**  You checked "yes" to that.  Was this a

[25] mistake?

Page 101

COMMONWEALTH VS. JOHN IN

[2]   A.   Ever been a victim?
[3]   Q.   Yes.
[4]   A.   No, that's not a mistake.  Yes, that's
[5] mistake.
[6]   Q.   The next question is have you or anyone
[7] close to you ever been arrested or charged with a
[8] crime?
[9]   A.   Yes.
[10]   Q.   What relationships are the people to you?
[11]   A.   My son.
[12]   Q.   What was your son charged with?
[13]   A.   Stealing a car.
[14]   Q.   How long ago was that?
[15]   A.   He was seventeen.
[16]   Q.   How long ago was that?
[17]   A.   When he was 17 -- he's 29 now.
[18]   Q.   Did you attend the proceedings?
[19]   A.   Yes.
[20]   Q.   Do you have an opinion to whether he was
[21] treated fair or unfair?
[22]   A.   He was treated fair.
[23]   Q.   Anything about that case which would affect
[24] your ability to be a fair juror in this case?
[25]   A.   No.

Page 102

COMMONWEALTH VS. JOHN IN

[2]   Q.   You know people in law enforcement?
[3]   A.   Yes.
[4]   Q.   What relationship are they to you?
[5]   A.   My fiance is a detective.
[6]   Q.   And what division or unit does he work out
[7] of?
[8]   A.   He's one of the commissioner drivers.
[9]   Q.   Would the fact that you know people in law
[10] enforcement, would that affect your ability to be a
[11] fair juror in this case?
[12]   A.   No.
[13]   Q.   You know any of the police officers named on
[14] this list?
[15]   A.   No.
[16]   Q.   What is your fiance's name?
[17]   A.   Raymond Felder.
[18]   Q.   Felder?
[19]   A.   Felder.
[20]   Q.   If you were selected to serve on this jury,
[21] would you give both sides, the defendant and the
[22] Commonwealth, a fair trial?
[23]   A.   Yes.
[24]       THE COURT:  Wait for us on the other
[25]   side of the exit door.  We'll be right with

Page 103

COMMONWEALTH VS. JOHN IN

[2]   you.
[3]       (The prospective juror departed the
[4]   courtroom.)
[5]       THE COURT:  Counsel, follow-up
[6]   questions?
[7]       MR. GIULIANI:  No, Your Honor.
[8]       MS. BARALDI:  No, Your Honor.
[9]       THE COURT:  Let the record reflect we
[10]   already addressed number 30.  Mr. Dafino
[11]   pointed out she was removed for cause.
[12]       THE COURT CRIER:  Sir, state your name
[13]   for us.
[14]       PROSPECTIVE JUROR:  Eugene Williams.
[15]       - - -
[16]       . . . EUGENE WILLIAMS, having
[17] been duly sworn, was examined and testified
[18] as follows:
[19]       - - -
[20]       EXAMINATION
[21]       - - -
[22] BY THE COURT:
[23]   Q.   Mr. Williams, tell us what you do for a
[24] living, sir.
[25]   A.   I'm a line chef.

Page 104

COMMONWEALTH VS. JOHN IN

[2]   Q.   Do you work in a restaurant or some other
[3] facility?
[4]   A.   I work in a restaurant.
[5]   Q.   How long have you been a line chef?
[6]   A.   About twenty-six years.
[7]   Q.   Have you or anyone close to you ever been
[8] the victim of a crime?
[9]   A.   Yes.  I believe so, yes.
[10]   Q.   What relationship is that person or those
[11] persons to you?
[12]   A.   My brother.
[13]   Q.   What happened to your brother?
[14]   A.   He was murdered.
[15]   Q.   Sorry to hear that.  How long ago was that?
[16]   A.   Roughly, I don't know.  About 20 years.
[17]   Q.   Was anyone arrested for it to the best of
[18] your knowledge?
[19]   A.   I don't know if they were ever caught and
[20] captured.
[21]   Q.   Did it happen here in Philadelphia?
[22]   A.   Yes, sir.
[23]   Q.   Is there anything about that case which
[24] would affect your ability to be a fair juror in this
[25] case?

COMMONWEALTH VS. JOHN IN

[1]      COMMONWEALTH VS. JOHN IN
[2]   **A.**   I don't think so.
[3]   **Q.**   You or anyone close to you ever been
[4] arrested or charged with a crime?
[5]   **A.**   Yes, my brother has been arrested before.
[6]   **Q.**   Is this a different brother?
[7]   **A.**   Yes.
[8]   **Q.**   That was arrested?
[9]   **A.**   Yes.
[10]   **Q.**   What was he arrested for?
[11]   **A.**   Assault.
[12]   **Q.**   Did you attend his trial?
[13]   **A.**   Yes.
[14]   **Q.**   Do you have an opinion to whether he was
[15] treated fair or unfair?
[16]   **A.**   I believe it was fair.
[17]   **Q.**   Is there anything about that case which
[18] would affect your ability to be a fair juror in this
[19] case?
[20]   **A.**   No, Your Honor.
[21]   **Q.**   Would you be less likely to believe the
[22] testimony of a police officer or other law enforcement
[23] agent just because of his or her job?
[24]   **A.**   Repeat that, please.
[25]   **Q.**   Would you be less likely to believe the

[1]      COMMONWEALTH VS. JOHN IN
[2] testimony of a police officer or other law enforcement
[3] agent just because of his or her job?
[4]   **A.**   Not really.
[5]   **Q.**   You checked "yes" on the form. Why did you
[6] check yes?
[7]   **A.**   I don't know. The question seemed a bit
[8] confusing to me. I believe just because he's a police
[9] officer, would I be more inclined to believe they're
[10] telling the truth?
[11]   **Q.**   Just the opposite. The question -- listen.
[12] Would you be less likely to believe the testimony of a
[13] police officer or other law enforcement officer just
[14] because of his or her job?
[15]   **A.**   No.
[16]   **Q.**   Would you be more likely to believe the
[17] testimony of a police officer or other law enforcement
[18] officer just because of his or her job?
[19]   **A.**   Yes.
[20]   **Q.**   You would?
[21]   **A.**   I think so because of their position.
[22]   **Q.**   Earlier this morning I gave you and your
[23] fellow jurors the following instruction. You may give
[24] no greater or lesser weight to the testimony of a
[25] police officer or other law enforcement agent simply

[1]      COMMONWEALTH VS. JOHN IN
[2] because of his or her job. Would you accept and follow
[3] that instruction?
[4]   **A.**   I don't think I understood the question.
[5]      **THE COURT**: Can you give us one moment,
[6] sir. Can you wait on the other side of the
[7] door. We'll be right with you.
[8]      (The prospective juror departed the
[9] courtroom.)
[10]      **THE COURT**: May I see the attorneys for
[11] a second.
[12]      (Sidebar discussion off the record.)
[13]      **THE COURT**: Counsel.
[14]      **MS. BARALDI**: Your Honor, Commonwealth
[15] has a motion for cause.
[16]      **MR. GIULIANI**: No objection, Your Honor.
[17]      **THE COURT**: Motion granted.
[18]      **THE COURT CRIER**: Please state your name
[19] for us.
[20]      **PROSPECTIVE JUROR**: Jennifer Larmour.
[21]      - - -
[22]      . . . JENNIFER LARMOUR, having
[23] been duly sworn, was examined and testified
[24] **as follows**:
[25]      - - -

[1]      COMMONWEALTH VS. JOHN IN
[2]      EXAMINATION
[3]      - - -
[4] **BY THE COURT**:
[5]   **Q.**   Ms. Larmour, what do you do for a living?
[6]   **A.**   General manager of a WaWa.
[7]   **Q.**   How long have you been in that job?
[8]   **A.**   Eleven years.
[9]   **Q.**   Would you be less likely to believe the
[10] testimony of a police officer or other law enforcement
[11] officer just because of his or her job?
[12]   **A.**   Yes.
[13]   **Q.**   Why is that?
[14]   **A.**   Watch a lot of them.
[15]   **Q.**   Sorry.
[16]   **A.**   I -- I watch a lot of Law and Order. I
[17] think police lie sometimes.
[18]   **Q.**   The question isn't whether police officers
[19] lie sometimes. The question is whether you have
[20] preconceived notions that a police officer, by virtue
[21] of his position, is inclined to lie. So why didn't you
[22] check -- let me ask this question. Would you be more
[23] likely to believe the testimony of a law enforcement
[24] police officer or other law enforcement agent just
[25] because of his or her job?

COMMONWEALTH VS. JOHN IN

[1]
[2]  **A.**  No.
[3]  **Q.**  You would be less likely to believe the
[4] testimony of -- you watch a lot of Law and Order?
[5]  **A.**  I guess.
[6]  **Q.**  You feel that way as you sit here now?
[7]  **A.**  Yes.
[8]  **Q.**  Did you have a hardship?
[9]  **A.**  Yes.
[10]  **Q.**  What was your hardship?
[11]  **A.**  I'm a single mother, full-time student, and
[12] I run a business.  So if I had to be here, when I leave
[13] here I have to go to work, take my two-year-old with me
[14] or don't see her for three days because I have to find
[15] someone to watch her.
[16]  **THE COURT CRIER**:  Give us a moment,
[17]  ma'am.  Wait for us on the other side of the
[18]  door.  We'll be right with you.
[19]  (Prospective juror departed the
[20]  courtroom.)
[21]  (Sidebar discussion off the record.)
[22]  (The prospective juror was brought into
[23]  the courtroom.)
[24] **BY THE COURT**:
[25]  **Q.**  Can you hear me from where you are?

COMMONWEALTH VS. JOHN IN

[1]
[2]  **A.**  Yes.
[3]  **Q.**  You're a student?
[4]  **A.**  Yes.
[5]  **Q.**  What are you studying?
[6]  **A.**  Human resources and business at Englata.
[7]  **Q.**  Full-time?
[8]  **A.**  I'm full-time.
[9]  **THE COURT**:  Thank you.
[10]  (The prospective juror departed the
[11]  courtroom.)
[12]  **MR. GIULIANI**:  I have a motion.
[13]  **THE COURT**:  Any objection to her
[14] hardship?
[15]  **MS. BARALDI**:  No objection.
[16]  **THE COURT**:  Motion is granted.
[17]  **THE COURT CRIER**:  State your name for
[18]  us.
[19]  **PROSPECTIVE JUROR**:  Floyd Palmer.
[20]  - - -
[21]  . . . FLOYD PALMER, having
[22] been duly sworn, was examined and testified
[23] **as follows**:
[24]  - - -
[25]  EXAMINATION

COMMONWEALTH VS. JOHN IN

[1]
[2]  - - -
[3] **BY THE COURT**:
[4]  **Q.**  Mr. Palmer, good afternoon, sir.
[5]  **A.**  Good afternoon.
[6]  **Q.**  Tell us what you do for a living,
[7] Mr. Palmer.
[8]  **A.**  Custodial assistant at a school.
[9]  **Q.**  How long have you been a custodial
[10] assistant?
[11]  **A.**  Since seventeen months.
[12]  **Q.**  How long, what kind of work did you do
[13] before that?
[14]  **A.**  I worked at Saladworks in Wynnewood.
[15]  **Q.**  Say that again.
[16]  **A.**  I worked at Saladworks in Wynnewood.
[17]  **Q.**  How long were you there?
[18]  **A.**  Five years.
[19]  **Q.**  Have you or anyone close to you, Mr. Palmer,
[20] ever been arrested or charged with a crime?
[21]  **A.**  Yes, I have.
[22]  **Q.**  What were you charged with, sir?
[23]  **A.**  Possession.
[24]  **Q.**  Possession of a controlled substance?
[25]  **A.**  Yes, sir.

COMMONWEALTH VS. JOHN IN

[1]
[2]  **Q.**  And what happened to that case?
[3]  **A.**  I did probation, paid court costs and fines,
[4] and consequently I'm no longer on probation.
[5]  **Q.**  How long were you on probation for?
[6]  **A.**  Three years.
[7]  **THE COURT**:  Mr. Palmer, can you give us
[8]  one moment?  Wait for us on the other side of
[9]  the exit door.  We'll be right with you.
[10]  (The prospective juror departed the
[11]  courtroom.)
[12]  **MS. BARALDI**:  Motion for cause.
[13]  **MR. GIULIANI**:  He's ineligible.
[14]  **THE COURT**:  The Court finds that the
[15]  prospective juror is ineligible to serve by
[16]  virtue of his conviction.
[17]  **THE COURT CRIER**:  State your name for
[18]  us.
[19]  **PROSPECTIVE JUROR**:  Anthony Thomas.
[20]  - - -
[21]  . . . ANTHONY THOMAS, having
[22] been duly sworn, was examined and testified
[23] **as follows**:
[24]  - - -
[25]  EXAMINATION

[1]      COMMONWEALTH VS. JOHN IN

[2]      - - -

[3] **BY THE COURT**:

[4]  **Q.**  Good afternoon, sir.

[5]  **A.**  How you doing?

[6]  **Q.**  Mr. Thomas.  Is that right?

[7]  **A.**  Yes.

[8]  **Q.**  Tell us what you do for a living.

[9]  **A.**  Stylist.

[10]  **Q.**  What kind of facility do you work with?

[11]  **A.**  Hair salon.

[12]  **Q.**  You've been a stylist now for how long?

[13]  **A.**  Eleven years.

[14]  **Q.**  You or someone close to you, sir, was the

[15] victim of a crime?

[16]  **A.**  Me and a couple people close to me.

[17]  **Q.**  Did you say you were the victim of a crime?

[18]  **A.**  Yes.

[19]  **Q.**  What happened to you?

[20]  **A.**  I got stabbed.

[21]  **Q.**  Say it again.

[22]  **A.**  I got stabbed.

[23]  **Q.**  How long ago?

[24]  **A.**  Three years ago.

[25]  **Q.**  Did you know your assailant?

[1]      COMMONWEALTH VS. JOHN IN

[2]  **A.**  Uh-uh.

[3]  **Q.**  Sorry.

[4]  **A.**  No.

[5]  **Q.**  Did you report it?

[6]  **A.**  Yeah.

[7]  **Q.**  Was anyone arrested?

[8]  **A.**  Yes.

[9]  **Q.**  Is there anything about that incident which

[10] would affect your ability to be a fair juror in this

[11] case?

[12]  **A.**  No.

[13]  **Q.**  Did you say someone else close to you was

[14] also a victim of a crime?

[15]  **A.**  Uh-huh.

[16]  **Q.**  Yes?

[17]  **A.**  Yes.

[18]  **Q.**  What is the relationship of this person or

[19] persons to you?

[20]  **A.**  My sister.

[21]  **Q.**  What happened to your sister, sir?

[22]  **A.**  She got shot in the crossfire.

[23]  **Q.**  Sorry to hear that.  She survived the

[24] shooting?

[25]  **A.**  She survived.

[1]      COMMONWEALTH VS. JOHN IN

[2]  **Q.**  How long ago was that?

[3]  **A.**  Like four, five years ago.

[4]  **Q.**  Was anyone arrested?

[5]  **A.**  Not sure.

[6]  **Q.**  Is there anything about that incident which

[7] would affect your ability to be a fair juror in this

[8] case?

[9]  **A.**  No.

[10]  **Q.**  You also checked off that you or someone

[11] close to you was arrested or charged with a crime,

[12] correct?

[13]  **A.**  Yes.

[14]  **Q.**  What relationship was that person or those

[15] persons to you?

[16]  **A.**  My brother.

[17]  **Q.**  What was your brother charged with?

[18]  **A.**  Possession of a gun and drugs.

[19]  **Q.**  Did his case go to trial?

[20]  **A.**  Yes.

[21]  **Q.**  How long ago?

[22]  **A.**  Well, he just got out.  He did four years.

[23]  **Q.**  Did you attend his trial?

[24]  **A.**  No.

[25]  **Q.**  Do you have an opinion to whether he was

[1]      COMMONWEALTH VS. JOHN IN

[2] treated fair or unfair?

[3]  **A.**  I mean, I guess unfair.

[4]  **Q.**  Sorry?

[5]  **A.**  Unfair.

[6]  **Q.**  Would that affect your ability to be a fair

[7] juror in this case?

[8]  **A.**  No.

[9]  **Q.**  Why do you say unfair?

[10]  **A.**  Because everything they find, didn't found

[11] it on him, but they still charged him with it.

[12]  **Q.**  You understand that -- well, let me ask you

[13] directly, sir.  Was that here in Philadelphia or

[14] someplace else?

[15]  **A.**  Philadelphia.

[16]  **Q.**  You understand that if this case was tried

[17] in Philadelphia, the prosecuting authority on behalf of

[18] the Commonwealth would be the same authority that's

[19] prosecuting this case, which is the District Attorney?

[20] Is that clear to you?

[21]  **A.**  Okay.

[22]  **Q.**  Understanding that, would that affect your

[23] ability to give the Commonwealth a fair trial in this

[24] case?

[25]  **A.**  Probably so.

Page 117

[1]     COMMONWEALTH VS. JOHN IN
[2]   Q.   You think so?
[3]   A.   Yeah.
[4]     THE COURT:  Give me a moment, sir.  If
[5]   you wait on the other side of the door, we'll
[6]   be right with you.
[7]     (The prospective juror departed the
[8]   courtroom.)
[9]     THE COURT:  All right.
[10]     MS. BARALDI:  I have a motion for cause.
[11]     THE COURT:  Motion granted.
[12]     THE COURT CRIER:  State your name for
[13]   us.
[14]     PROSPECTIVE JUROR:  Melody Johnson.
[15]     - - -
[16]     . . . MELODY JOHNSON, having
[17]   been duly sworn, was examined and testified
[18]   as follows:
[19]     - - -
[20]     EXAMINATION
[21]     - - -
[22]   BY THE COURT:
[23]   Q.   Say that one more time, please.
[24]   A.   Melody Johnson.
[25]   Q.   Ms. Johnson.

Page 118

[1]     COMMONWEALTH VS. JOHN IN
[2]   A.   Yes.
[3]     THE COURT:  Ms. Johnson, would you
[4]   indulge me for one moment.  Step inside the
[5]   room for a second, we'll be right with you.
[6]     (Prospective juror departed the
[7]   courtroom and returned after a short break.)
[8]   BY THE COURT:
[9]   Q.   Thank you for your patience.  Ms. Johnson,
[10]   it says here that you're a student?
[11]   A.   Yes.
[12]   Q.   Full-time or part-time?
[13]   A.   Full-time.
[14]   Q.   When do you start classes?
[15]   A.   What time?
[16]   Q.   When.
[17]   A.   When?
[18]   Q.   When does the semester start for you?
[19]   A.   I'm at Empire.  I'm in trade school, beauty
[20]   school.
[21]   Q.   Say it again.
[22]   A.   A trade school, Empire Beauty School.
[23]   Q.   Are you in class now?
[24]   A.   Uh-huh.
[25]   Q.   When did your semester start?

Page 119

[1]     COMMONWEALTH VS. JOHN IN
[2]   A.   It started in October 8th.
[3]   Q.   You start next month?
[4]   A.   I started last year.  It's still an
[5]   hourly-based school.
[6]   Q.   Okay.  Let me set that aside just for a
[7]   second and ask a couple different questions.  Do you
[8]   have any religious, moral or ethical beliefs that would
[9]   prevent you from sitting in judgment in a criminal case
[10]   and rendering a fair verdict?
[11]   A.   My family is Jehovah's Witness.  I don't
[12]   believe another man can judge another man.
[13]   Q.   That's because you are?
[14]   A.   Jehovah's Witness.
[15]   Q.   This would be a religious belief?
[16]   A.   Yes.
[17]     THE COURT:  Give us a moment, ma'am.
[18]   Wait on the other side of the exit door.
[19]   We'll be right with you.
[20]     (The prospective juror departed the
[21]   courtroom.)
[22]     THE COURT:  Do either of you wish to
[23]   follow up?
[24]     MS. BARALDI:  No, Your Honor.
[25]     MR. GIULIANI:  No, Your Honor.

Page 120

[1]     COMMONWEALTH VS. JOHN IN
[2]     ___:  Motion for cause, please.
[3]     THE COURT:  Granted.
[4]     THE COURT CRIER:  State your name for
[5]   us.
[6]     PROSPECTIVE JUROR:  Jane Koons.
[7]     - - -
[8]     . . . JANE KOONS, having
[9]   been duly sworn, was examined and testified
[10]   as follows:
[11]     - - -
[12]     EXAMINATION
[13]     - - -
[14]   BY THE COURT:
[15]   Q.   Ma'am, do not tell us your home address.  I
[16]   do not even want to know the street that you live on,
[17]   but in what section of our city do you live?
[18]   A.   South Philly.
[19]   Q.   You lived in that section of the city for
[20]   more than ten years?
[21]   A.   Yes.
[22]   Q.   Have you ever served on a jury before?
[23]   A.   No.
[24]   Q.   If you were selected to serve on this jury,
[25]   would you give both sides, the defendant and the

COMMONWEALTH VS. JOHN IN

[1]
[2] Commonwealth, a fair trial?

[3]    **A.**   Yes.

[4]    **Q.**   What kind of work do you do for a living?

[5]    **A.**   I work for the federal government, clerical

[6] work.

[7]    **Q.**   How long have you been a clerk?

[8]    **A.**   Twenty-one years.

[9]      **THE COURT**: If you'd wait on the other

[10] side of that door to your right, we'll be

[11] right with you.

[12]      **THE COURT**: Juror No. 10.

[13]      **THE COURT CRIER**: State your name for

[14] us.

[15]      **PROSPECTIVE JUROR**: Steve Latney.

[16]      - - -

[17]      . . . STEVE LATNEY, having

[18] been duly sworn, was examined and testified

[19] **as follows**:

[20]      - - -

[21]      EXAMINATION

[22]      - - -

[23] **BY THE COURT**:

[24]    **Q.**   Mr. Latney, good afternoon, sir.

[25]    **A.**   How you doing, Your Honor?

COMMONWEALTH VS. JOHN IN

[1]
[2]    **Q.**   Tell us what you do for a living.

[3]    **A.**   Right now I'm a case manager for a

[4] Philadelphia health maintenance corporation. I deal

[5] with individuals who are incarcerated on State Road, in

[6] order to get them early sentence, help them get into

[7] rehabilitation programs, help them complete it.

[8]    **Q.**   In your capacity, do you work inside the

[9] prison?

[10]    **A.**   No.

[11]    **Q.**   When do you see the people that you service?

[12]    **A.**   The Defender Association will make referrals

[13] to our company. We see them after they're already

[14] released. Either on their way to a drug treatment the

[15] program sheriff brings them directly from prison or

[16] already been released home. The client, that's when I

[17] call them at their house. But they're already released

[18] from incarceration.

[19]    **Q.**   Now you identified the population you work

[20] with. What kind of service do you provide them again?

[21]    **A.**   I help them to get them into drug treatment

[22] programs, whether it be inpatient -- what happens they

[23] get evaluated. It will be determined whether they need

[24] inpatient treatment or handled with an outpatient

[25] setting.

COMMONWEALTH VS. JOHN IN

[1]
[2]    **Q.**   You've been in this line of work for how

[3] long?

[4]    **A.**   This one, just about a year and a few

[5] months.

[6]    **Q.**   What kind of work did you do before that?

[7]    **A.**   I was in child welfare for about fifteen

[8] years, social work, child welfare.

[9]    **Q.**   What agency did you work for?

[10]    **A.**   Children's Choice, and also Juvenile Justice

[11] Center.

[12]    **Q.**   You are a social worker by training,

[13] correct?

[14]    **A.**   Yes.

[15]    **Q.**   Have you ever served on a jury before?

[16]    **A.**   Three times.

[17]    **Q.**   How long ago was it that you last served?

[18]    **A.**   Excuse me.

[19]    **Q.**   How long ago was it that you last served?

[20]    **A.**   I think it was maybe 2004.

[21]    **Q.**   Was that a civil or criminal case?

[22]    **A.**   It was a criminal case.

[23]    **Q.**   Have you or anyone close to you ever been

[24] the victim of a crime?

[25]    **A.**   Not recently, no.

COMMONWEALTH VS. JOHN IN

[1]
[2]    **Q.**   How long ago was the person victimized that

[3] you checked "yes" on the form?

[4]    **A.**   I was a child. We had a home break-in. I

[5] was like nine, ten years old.

[6]    **Q.**   It was a burglary?

[7]    **A.**   Yes.

[8]    **Q.**   Was anyone in your house harmed physically?

[9]    **A.**   No. We were at all at a Cub Scout meeting,

[10] came home and saw the home had been broken into, just a

[11] few things taken.

[12]    **Q.**   Is there anything about that incident which

[13] would affect your ability to be a fair juror in this

[14] case?

[15]    **A.**   No.

[16]    **Q.**   I'm going to ask that, sir, whether or not

[17] your present job as you've described it to us, would

[18] affect your ability to be a fair juror in this case?

[19]    **A.**   I don't think so, no.

[20]    **Q.**   When you say you don't think so, is that a

[21] figure of speech? Do you have some doubt about your

[22] ability to be fair?

[23]    **A.**   Sorry, I mean no. Definitely not have any.

[24]    **Q.**   If you were selected to serve on this jury,

[25] would you give both sides, the defendant and the

COMMONWEALTH VS. JOHN IN

[1]
[2] Commonwealth, a fair trial?
[3]     **A.**    Absolutely, yes.
[4]         **THE COURT**:  If you'd be so kind,
[5]  Mr. Latney, to wait on the other side of the
[6]  exit door to your right.   We'll be right
[7]  with you.
[8]         (The prospective juror departed the
[9]  courtroom.)
[10]         **THE COURT CRIER**:  State your name for
[11]  us.
[12]         **PROSPECTIVE JUROR**:  Vanessa V. Herrera.
[13]             - - -
[14]      . . . VANESSA V. HERRERA, having
[15]  been duly sworn, was examined and testified
[16]  **as follows**:
[17]             - - -
[18]         EXAMINATION
[19]             - - -
[20] **BY THE COURT**:
[21]     **Q.**    Tell us what you do for a living.
[22]     **A.**    Client services associate at an IT company.
[23]     **Q.**    You've been in that role now for how long?
[24]     **A.**    Little over a year.
[25]     **Q.**    What did you do before then?

COMMONWEALTH VS. JOHN IN

[1]
[2]     **A.**    I was a mutual funds specialist at Vanguard.
[3]     **Q.**    How long had you been with Vanguard?
[4]     **A.**    Two years.
[5]     **Q.**    Have you ever served on a jury before?
[6]     **A.**    Yes.
[7]     **Q.**    How long ago?
[8]     **A.**    I believe it was two or three years ago.
[9]     **Q.**    Civil or criminal case?
[10]     **A.**    Civil.
[11]     **Q.**    You or someone close to you was a victim of
[12] a crime?
[13]     **A.**    Yes.
[14]     **Q.**    What relationship is this person to you?
[15]     **A.**    My father.
[16]     **Q.**    What happened to your father?
[17]     **A.**    He was stabbed randomly.
[18]     **Q.**    Sorry.
[19]     **A.**    He was stabbed.
[20]     **Q.**    Did he recover?
[21]     **A.**    Yes, he did.
[22]     **Q.**    Was anyone arrested?
[23]     **A.**    I don't believe so.
[24]     **Q.**    Is there anything about that case which
[25] would affect your ability to be a fair juror in this

COMMONWEALTH VS. JOHN IN

[1]
[2] case?
[3]     **A.**    No.
[4]     **Q.**    You or someone close to you were arrested
[5] and charged with a crime?
[6]     **A.**    I have cousins that have been arrested and
[7] my husband was arrested.
[8]     **Q.**    What was your husband charged with?
[9]     **A.**    Honestly I don't know.  Long time ago before
[10] I met him.  He was a teen.
[11]     **Q.**    Charged with what?
[12]     **A.**    Honestly I don't know.
[13]     **Q.**    You don't know?  Before you met him?
[14]     **A.**    Uh-huh.
[15]     **Q.**    But you know he was arrested?
[16]     **A.**    Yes.
[17]     **Q.**    Do you know what area it was in?
[18]     **A.**    I think it was Montgomery County.
[19]     **Q.**    Is there anything about that which would
[20] affect your ability to be a fair juror in this case?
[21]     **A.**    No.
[22]     **Q.**    How many cousins were arrested?
[23]     **A.**    Two.
[24]     **Q.**    What were they charged with?
[25]     **A.**    I believe it was drug-selling I believe.

COMMONWEALTH VS. JOHN IN

[1]
[2]     **Q.**    In both cases?
[3]     **A.**    Yes, they're brothers.
[4]     **Q.**    Do you know if those drug cases were in
[5] Philadelphia or someplace else?
[6]     **A.**    Philadelphia.
[7]     **Q.**    You say there were others or other arrests?
[8]     **A.**    No, they were brothers.
[9]     **Q.**    Brothers, okay.  Is there anything about
[10] your cousins' cases that would affect your ability to
[11] be a fair juror in this case?
[12]     **A.**    No.
[13]     **Q.**    If you were selected to serve on this jury,
[14] would you give both sides, the defendant and the
[15] Commonwealth, a fair trial?
[16]     **A.**    Yes.
[17]         **THE COURT**:  Thank you, ma'am.  Wait on
[18]  other side of the exit door to your right.
[19]  Be with you shortly.
[20]         (The prospective juror departed the
[21]  courtroom.)
[22]         **THE COURT CRIER**:  State your name for
[23]  us.
[24]         **PROSPECTIVE JUROR**:  Sherri Horsey.
[25]             - - -

[1]　　　COMMONWEALTH VS. JOHN IN
[2]　　　. . . SHERRI HORSEY, having
[3] been duly sworn, was examined and testified
[4] **as follows**:
[5]　　　　　- - -
[6]　　　　EXAMINATION
[7]　　　　　- - -
[8] **BY THE COURT**:
[9]　　**Q.**　Ms. Horsey, what do you do for a living,
[10] please?
[11]　　**A.**　HR assistant at the Public Defender's
[12] Office.
[13]　　**Q.**　Where?
[14]　　**A.**　The Defender's Association of Philadelphia.
[15]　　**Q.**　How long have you worked for them?
[16]　　**A.**　Twenty years.
[17]　　**Q.**　Have you ever served on a jury before?
[18]　　**A.**　Yes.
[19]　　**Q.**　How long ago?
[20]　　**A.**　Seven, eight years ago.
[21]　　**Q.**　Civil or criminal case?
[22]　　**A.**　Civil.
[23]　　**Q.**　You or someone close to you was a victim of
[24] a crime?
[25]　　**A.**　Yes.

[1]　　　COMMONWEALTH VS. JOHN IN
[2]　　**Q.**　What relationship is that person or persons
[3] to you?
[4]　　**A.**　Daughter.
[5]　　**Q.**　What happened to your daughter?
[6]　　**A.**　She was raped.
[7]　　**Q.**　Sorry to hear that. How old was she?
[8]　　**A.**　Twelve.
[9]　　**Q.**　Did she know her assailant?
[10]　　**A.**　Yes.
[11]　　**Q.**　Was anyone arrested?
[12]　　**A.**　Yes.
[13]　　**Q.**　Is there anything about that case which
[14] would affect your ability to be a fair juror in this
[15] case?
[16]　　**A.**　No.
[17]　　**Q.**　You also checked off that you or someone
[18] close to you was arrested and charged with a crime?
[19]　　**A.**　Yes.
[20]　　**Q.**　What relationship is that person or those
[21] persons to you?
[22]　　**A.**　Brother.
[23]　　**Q.**　What was your brother charged with?
[24]　　**A.**　Several offenses.
[25]　　**Q.**　Most recently?

[1]　　　COMMONWEALTH VS. JOHN IN
[2]　　**A.**　Narcotics.
[3]　　**Q.**　And was that here in Philadelphia?
[4]　　**A.**　Yes.
[5]　　**Q.**　Did you attend his trial?
[6]　　**A.**　Yes.
[7]　　**Q.**　Do you have an opinion to whether he was
[8] treated fair or unfair?
[9]　　**A.**　I believe it was fair.
[10]　　**Q.**　Is there anything about his case or any of
[11] his cases which would affect your ability to be a fair
[12] juror in this case?
[13]　　**A.**　No.
[14]　　**Q.**　You checked off that you know people in law
[15] enforcement.
[16]　　**A.**　Yes.
[17]　　**Q.**　Who were you referring to?
[18]　　**A.**　My fiance.
[19]　　**Q.**　What does your fiance do?
[20]　　**A.**　He's a police officer.
[21]　　**Q.**　The fact that you know a person in law
[22] enforcement, would that in any way affect your ability
[23] to be a fair juror?
[24]　　**A.**　No, it does not.
[25]　　**Q.**　You also told us earlier that you work for

[1]　　　COMMONWEALTH VS. JOHN IN
[2] the Defender's Association, correct?
[3]　　**A.**　Yes.
[4]　　**Q.**　So you know attorneys and investigators
[5] associated with that agency?
[6]　　**A.**　Yes.
[7]　　**Q.**　Would that fact of your employment and
[8] associates, would that affect your ability to be a fair
[9] juror in this case?
[10]　　**A.**　No.
[11]　　**Q.**　If you were selected to serve on this jury,
[12] would you be able to give both sides, the defendant and
[13] the Commonwealth, a fair trial?
[14]　　**A.**　Yes.
[15]　　　**THE COURT**: If you wait for us on the
[16]　　other side of the exit door to your right,
[17]　　Ms. Horsey, be right with you.
[18]　　　**PROSPECTIVE JUROR**: May I ask you a
[19]　　question?
[20]　　　**THE COURT**: Yes.
[21]　　　**PROSPECTIVE JUROR**: I saw a gentleman
[22]　　out in the hallway with the rest of the
[23]　　people -- I don't know if they were officers
[24]　　or family members. A gentleman, Carl, that I
[25]　　had grew up with, I don't know if he's

COMMONWEALTH VS. JOHN IN

[1]    COMMONWEALTH VS. JOHN IN
[2] involved in this particular case or if that
[3] would have an effect on my ability to serve
[4] in this case.
[5]     **THE COURT**: Someone in the corridor that
[6] you know?
[7]     **PROSPECTIVE JUROR**: Yes.
[8]     **THE COURT**: What's his name?
[9]     **PROSPECTIVE JUROR**: His name is Carl.
[10] I've known him since I was a young girl.
[11]     **THE COURT**: You know the last name?
[12]     **PROSPECTIVE JUROR**: No, I don't.
[13]     **THE COURT**: The question is?
[14]     **PROSPECTIVE JUROR**: I don't know what
[15] capacity he is but he was outside with the
[16] rest of the officers so I didn't want to ask
[17] him. They were kind of talking so I didn't
[18] interrupt.
[19]     **THE COURT**: Could you give us a moment?
[20] Wait in the anteroom to your right.
[21]    (The prospective juror departed the
[22] courtroom.)
[23]     **THE COURT**: Either of you have a sense
[24] as to who she's referring to?
[25]     **MS. BARALDI**: Your Honor, the only thing

COMMONWEALTH VS. JOHN IN

[1]    COMMONWEALTH VS. JOHN IN
[2] I can think of, there are a number of police
[3] officers on this case who are also subpoenaed
[4] for John In in other matters, who have been
[5] hanging around. I know there's no police
[6] officer by the first name of Carl on the case
[7] we're talking about right now.
[8]     **MR. GIULIANI**: Did she identify the
[9] individual as the police officer she knows?
[10]     **THE COURT**: She didn't know whether he
[11] was a police officer. Said she saw him
[12] speaking with police officers.
[13]     **MR. GIULIANI**: I don't think that's any
[14] problem, Your Honor.
[15]     **THE COURT**: Would you go outside and ask
[16] if there is anyone in the corridor whose
[17] first name is Carl?
[18]    Say, please come over and speak to me,
[19] meaning you. Then just get his or her last
[20] name and description.
[21]    (Pause.)
[22]     **THE COURT**: Nobody's there?
[23]     **THE COURT CRIER**: No.
[24]     **THE COURT**: Counsel, how do you wish to
[25] handle this?

COMMONWEALTH VS. JOHN IN

[1]    COMMONWEALTH VS. JOHN IN
[2]     **MR. GIULIANI**: Since no one is obviously
[3] on the witness list by that name, I don't see
[4] that there's any problem.
[5]     **THE COURT**: Ms. Baraldi.
[6]     **MS. BARALDI**: In an abundance of
[7] caution, I mean unless you have some
[8] strenuous objection to it, I would ask that
[9] she be removed for cause.
[10]     **MR. GIULIANI**: I'll leave it to Your
[11] Honor's discretion. I don't see any cause.
[12] She talked about she saw somebody, clearly
[13] not a witness on this case. I leave it to
[14] the Court's discretion.
[15]     **THE COURT**: Would you bring her back to
[16] the bar.
[17]    (The prospective juror entered the
[18] courtroom.)
[19] **BY THE COURT**:
[20]   **Q.** Can you hear me okay?
[21]   **A.** Yes.
[22]   **Q.** You say the person that you recognize is
[23] someone you grew up with?
[24]   **A.** Yes.
[25]   **Q.** How much contact have you recently had with

COMMONWEALTH VS. JOHN IN

[1]    COMMONWEALTH VS. JOHN IN
[2] Carl?
[3]   **A.** Outside of seeing him in the hallway, little
[4] to no contact at all.
[5]   **Q.** Would you estimate how long ago it was that
[6] you last saw him?
[7]   **A.** Five, ten years -- well, ten years.
[8]   **Q.** It's your recollection that he was speaking
[9] to the officers?
[10]   **A.** Yes.
[11]   **Q.** Plainclothes or uniform?
[12]   **A.** There were a number of people in the
[13] corridor. Just he and another who basically were in
[14] regular clothes. I'm assuming he was talking to a
[15] whole bunch of them, laughing and joking when we came
[16] back from lunch after a lot of people had already left,
[17] so probably was other officers.
[18]   **Q.** Did you say they were police officers and
[19] you know that because they were in uniform or
[20] plainclothes folk and you assumed they were police
[21] officers?
[22]   **A.** Well, the majority of them were sitting out
[23] there who I saw. Some of them were in uniform. When
[24] we walked up originally, he wasn't here when we first
[25] came here this morning. But this afternoon he was

COMMONWEALTH VS. JOHN IN

[1]
[2] there.  He was speaking with them.
[3]    **Q.**   Let me ask you this, ma'am.  If the person
[4] you know as Carl is in fact a witness in this case or
[5] otherwise associated with it, would that in any way
[6] affect your ability to be a fair juror?
[7]    **A.**   No.
[8]    **Q.**   No doubt in your mind?
[9]    **A.**   No.  I just wanted to make sure it wasn't a
[10] conflict.
[11]    **THE COURT**:  Wait on the outside of the
[12]    exit door to your right.  Be right with you.
[13]    (The prospective juror departed the
[14]    courtroom.)
[15]    **THE COURT**:  All right.  Counsel, under
[16]    the circumstances, although I can understand
[17]    the concern, unless there is an agreement, I
[18]    won't strike her for cause.
[19]    **MS. BARALDI**:  Commonwealth Strike No. 4.
[20]    **THE COURT CRIER**:  State your name for
[21]    us.
[22]    **PROSPECTIVE JUROR**:  Tyrone Finch.
[23]    - - -
[24]    . . . TYRONE FINCH, having
[25] been duly sworn, was examined and testified

COMMONWEALTH VS. JOHN IN

[1]
[2] **as follows**:
[3]    - - -
[4]    EXAMINATION
[5]    - - -
[6] **BY THE COURT**:
[7]    **Q.**   Mr. Finch, are you presently taking any
[8] medication that might interfere with or prevent you
[9] from serving as a juror?
[10]    **A.**   Yes, I'm taking a blood pressure medicine.
[11] Like five different types.
[12]    **Q.**   Tell me how, if at all, it would affect you.
[13]    **A.**   Sometimes it makes me drowsy and stuff.
[14]    **Q.**   You take it five times a day or five times?
[15]    **A.**   I take five different types, but I take one
[16] three times a day.
[17]    **Q.**   Makes you drowsy?
[18]    **A.**   Yes.
[19]    **THE COURT**:  Give us a moment.  Wait on
[20]    the other side of the door to your right.
[21]    Right with you.
[22]    (The prospective juror departed the
[23]    courtroom.)
[24]    **THE COURT**:  Counsel, motion for cause?
[25]    **MR. GIULIANI**:  Motion for cause.

COMMONWEALTH VS. JOHN IN

[1]
[2]    **THE COURT**:  Granted.
[3]    **THE COURT CRIER**:  State your name for
[4]    us.
[5]    **PROSPECTIVE JUROR**:  Jill Seidman.
[6]    - - -
[7]    . . . JILL SEIDMAN, having
[8] been duly sworn, was examined and testified
[9] **as follows**:
[10]    - - -
[11]    EXAMINATION
[12]    - - -
[13] **BY THE COURT**:
[14]    **Q.**   Ms. Seidman, do you have any religious,
[15] moral or ethical beliefs that would prevent you from
[16] sitting in judgment in a criminal case rendering a fair
[17] verdict?
[18]    **A.**   I think I had answered yes, that only if it
[19] was like a hate crime or religious crime or something
[20] like that, then that I would have a problem with it.
[21]    **Q.**   Let me ask this question, ma'am.  Having sat
[22] through the morning session, do you have any religious,
[23] moral or ethical beliefs that would prevent you from
[24] sitting in judgment in this case rendering a fair
[25] verdict?

COMMONWEALTH VS. JOHN IN

[1]
[2]    **A.**   No, probably not.
[3]    **Q.**   Sorry.
[4]    **A.**   No.
[5]    **Q.**   You or someone close to you was the victim
[6] of a crime?
[7]    **A.**   Yes, when we first moved into our new home.
[8] We were broken into and vandalized.
[9]    **Q.**   And was that reported?
[10]    **A.**   Yeah.
[11]    **Q.**   Was anyone arrested?
[12]    **A.**   No.
[13]    **Q.**   Is there anything about that incident which
[14] would affect your ability to be a fair juror in this
[15] case?
[16]    **A.**   I don't know.  I don't think so, no.
[17]    **Q.**   You checked off that you or someone close to
[18] you was an eyewitness to a crime.  Is that something we
[19] already discussed or something else?
[20]    **A.**   I saw a hit and run awhile ago.  I did
[21] report it.
[22]    **Q.**   Anything about what you saw which would
[23] affect your ability to be a fair juror?
[24]    **A.**   No.
[25]    **Q.**   You know people in law enforcement?

Page 141

COMMONWEALTH VS. JOHN IN

[1]
[2]   **A.**   Law enforcement, no.
[3]   **Q.**   Have you or anyone close to you ever worked
[4] as a police officer or other law enforcement agent or
[5] worked in the capacity of a prosecutor, public
[6] defender, defense lawyer, detective, prison guard,
[7] corrections officer?
[8]   **A.**   Yes.
[9]   **Q.**   What relationship is that person or those
[10] persons to you?
[11]   **A.**   People in my family are lawyers, my best
[12] friend and attorney.
[13]   **Q.**   Do those people practice criminal law?
[14]   **A.**   One.
[15]   **Q.**   How often do you see this person?
[16]   **A.**   Not very.
[17]   **Q.**   What relationship is that person to you?
[18]   **A.**   A distant relative.
[19]   **Q.**   Does that person live in Philadelphia?
[20]   **A.**   No.
[21]   **Q.**   The person's name?
[22]   **A.**   Mark Bad.
[23]   **Q.**   Can you give us your word if you were
[24] selected you would not speak with this person about
[25] this case?

Page 142

COMMONWEALTH VS. JOHN IN

[1]
[2]   **A.**   Yes.
[3]   **Q.**   Would you have any problem following the
[4] Judge's instruction that the defendant in a criminal
[5] case does not have to take the witness stand or present
[6] evidence and it cannot be held against the defendant if
[7] he elects to remain silent at trial?
[8]   **A.**   I mean, I would think it was odd if he
[9] didn't want to get up.  I never sat on a jury before.
[10] I don't know the answer.
[11]   **Q.**   The instruction that you would be given is
[12] that a defendant has a constitutional right to remain
[13] silent at trial.  You may not draw any adverse
[14] inference or inference of guilt from his decision not
[15] to testify.
[16]   **A.**   I understand.
[17]   **Q.**   Would you be able to accept and apply that
[18] instruction?
[19]   **A.**   I guess so.
[20]   **Q.**   When you say you guess so, is that a figure
[21] of speech or have some doubt about it?
[22]   **A.**   I said I thought it was odd if somebody
[23] didn't want to get up in their own defense, that's all.
[24] I guess if I was on a jury, I would have to try not to
[25] think that.

Page 143

COMMONWEALTH VS. JOHN IN

[1]
[2]   **Q.**   Did you raise your hand that jury service
[3] would be a hardship?
[4]   **A.**   I did.  I'm self-employed, straight
[5] commission every day.  If I'm not working -- especially
[6] right now we do everything quarterly.  The quarter
[7] starts on the 1st.  Right in my quarter right now.
[8]   **Q.**   What kind of business?
[9]   **A.**   I do -- media buyer.  I'm an advertiser.
[10]   **Q.**   You work out of your home?
[11]   **A.**   Yes.
[12]   **Q.**   So you could work before the day starts and
[13] after the day ends?
[14]   **A.**   I do television and cable media buying so I
[15] have to do it during those hours.
[16]   **Q.**   If you were selected to serve on this jury,
[17] would you be able to give this case 100 percent of your
[18] attention?
[19]   **A.**   I guess if I'm here all day I'd have to,
[20] yes.
[21]   **Q.**   If you were selected to serve on this jury,
[22] would you give both sides, the defendant and the
[23] Commonwealth, a fair trial?
[24]   **A.**   Yes.
[25]        **THE COURT**:  If you would be so kind to

Page 144

COMMONWEALTH VS. JOHN IN

[1]
[2] wait on the other side of the exit door.
[3] We'll be right with you.
[4]        (The prospective juror departed the
[5] courtroom.)
[6]        **MR. GIULIANI**:  I don't feel there is any
[7] hardship, Your Honor.
[8]        **MS. BARALDI**:  I don't feel hardship
[9] either.
[10]        **THE COURT**:  Let me see the two of you
[11] for a second.
[12]        (Sidebar discussion off the record.)
[13]        **THE COURT**:  Well, counsel, who starts
[14] first?
[15]        **THE COURT CRIER**:  Commonwealth.
[16]        **THE COURT**:  The concern was her answer
[17] to number 11.  You're satisfied with her
[18] answer?
[19]        **MR. GIULIANI**:  No, I'm not satisfied
[20] with her answer.
[21]        **THE COURT**:  Are you satisfied with her
[22] answer?
[23]        **MS. BARALDI**:  To be completely candid,
[24] no.  Motion for cause.
[25]        **THE COURT**:  Motion granted.

[1]    COMMONWEALTH VS. JOHN IN
[2]    **THE COURT CRIER**:  State your name for
[3]  us.
[4]    **PROSPECTIVE JUROR**:  Kimberly Downing.
[5]    - - -
[6]    . . . KIMBERLY DOWNING, having
[7]  been duly sworn, was examined and testified
[8]  **as follows**:
[9]    - - -
[10]    EXAMINATION
[11]    - - -
[12]  **BY THE COURT**:
[13]    **Q.**    Ms. Downing, do you have any religious,
[14]  moral or ethical beliefs that would prevent you from
[15]  sitting in a criminal case in render a fair verdict?
[16]    **Q.**    Would that involve the death penalty?
[17]    **Q.**    It does not in this case.  There is no death
[18]  penalty.
[19]    **A.**    No.
[20]    **Q.**    Would you be less likely to believe the
[21]  testimony of a police officer or other law enforcement
[22]  agent simply because of his or her job?
[23]    **A.**    Yes.
[24]    **Q.**    Did you raise your hand that you have a
[25]  hardship?

[1]    COMMONWEALTH VS. JOHN IN
[2]    **A.**    Yes.
[3]    **Q.**    What's the nature of your hardship?
[4]    **A.**    I have a two-month-old infant at home.  I
[5]  have a kindergartener that has to be picked up every
[6]  day by 2:30.
[7]    **THE COURT**:  Wait on the other side of
[8]  that door, ma'am.  Be right with you.
[9]    **PROSPECTIVE JUROR**:  And I have a
[10]  five-year-old at home.
[11]    (The prospective juror departed the
[12]  courtroom.)
[13]    **MS. BARALDI**:  I have a motion for cause.
[14]    **THE COURT**:  Have any objection?
[15]    **MR. GIULIANI**:  No objection, Your Honor.
[16]    **THE COURT CRIER**:  Sir, could you state
[17]  your name for us?
[18]    **PROSPECTIVE JUROR**:  My name is Richard
[19]  R. Young.
[20]    - - -
[21]    . . . RICHARD R. YOUNG, having
[22]  been duly sworn, was examined and testified
[23]  **as follows**:
[24]    - - -
[25]    EXAMINATION

[1]    COMMONWEALTH VS. JOHN IN
[2]    - - -
[3]  **BY THE COURT**:
[4]    **Q.**    Mr. Young, would you have any problem during
[5]  jury deliberations in a criminal case discussing a case
[6]  fully with your fellow jurors but still making up your
[7]  own mind?
[8]    **A.**    No.
[9]    **Q.**    You checked "yes" on the form.
[10]    **A.**    Sorry.
[11]    **Q.**    Still, you raised your hand that jury
[12]  service would be a hardship?
[13]    **A.**    Yes.
[14]    **Q.**    What's the nature of your hardship?
[15]    **A.**    My hardship is my brother.  He's -- right
[16]  now he's in the veteran's hospital.  But I don't know
[17]  when they're going to release him.
[18]    **Q.**    How is that a hardship?
[19]    **A.**    Because I'm the one that's taking care of
[20]  him when he come home.
[21]    **Q.**    You work every day?
[22]    **A.**    I work, yes.  But I'm not far from the
[23]  house, so I'm -- on my lunch hour I make sure I get
[24]  home.
[25]    **Q.**    If you would elaborate, how do you take care

[1]    COMMONWEALTH VS. JOHN IN
[2]  of your brother?
[3]    **A.**    My brother has a hard time getting up.  He
[4]  has to go to the bathroom.  I have to make sure that he
[5]  don't fall.  That's the hardship.
[6]    **Q.**    Does he live in his own home?
[7]    **A.**    No, we live in the same house together.
[8]    **Q.**    You're the only person that takes care of
[9]  him?
[10]    **A.**    Yes.
[11]    **Q.**    When he got ready to come home, how would
[12]  they notify you?
[13]    **A.**    By telephone.  They call me by my telephone
[14]  to let me know they're going to dismiss him.
[15]    **Q.**    You would have to leave to get him?
[16]    **A.**    Yes.
[17]    **Q.**    When do you expect he'll be released?
[18]    **A.**    I have no idea, Your Honor.
[19]    **Q.**    Soon this week?
[20]    **A.**    I don't know.
[21]    **Q.**    What's he being treated for?
[22]    **A.**    He has -- his bowels were loose when we took
[23]  him there.  He had trouble passing his water.  He has
[24]  Alzheimer's.
[25]    **Q.**    How old a man is he?

[1]     COMMONWEALTH VS. JOHN IN
[2]  **A.**  Sixty-five.
[3]     **THE COURT**:  Wait on the other side of
[4]  the door, sir.  We'll be right with you.
[5]     (The prospective juror departed the
[6]  courtroom.)
[7]     **THE COURT**:  Counsel.
[8]     **MR. GIULIANI**:  Motion for cause, Your
[9]  Honor.
[10]     **THE COURT**:  Any objection?
[11]     **MS. BARALDI**:  No, not going to object.
[12]     **THE COURT**:  Motion granted.  Defense
[13]  cause is granted.
[14]     **PROSPECTIVE JUROR**:  Mattie Caisson.
[15]         - - -
[16]     . . . MATTIE CAISSON, having
[17]  been duly sworn, was examined and testified
[18]  **as follows**:
[19]         - - -
[20]     EXAMINATION
[21]         - - -
[22]  **BY THE COURT**:
[23]     **Q.**  Ms. Caisson, tell us what you do for a
[24]  living, please.
[25]     **A.**  I'm a customer service representative for

[1]     COMMONWEALTH VS. JOHN IN
[2]  Cigna.
[3]     **Q.**  You've been in that job for how long?
[4]     **A.**  Six years.
[5]     **Q.**  Have you ever served on a jury before?
[6]     **A.**  Yes, I have.
[7]     **Q.**  How long ago?
[8]     **A.**  About three years ago.
[9]     **Q.**  Civil or criminal case?
[10]     **A.**  Criminal.
[11]     **Q.**  You or someone close to you, now or in the
[12]  past, worked in law enforcement?
[13]     **A.**  Yes.
[14]     **Q.**  What relationship is that person or those
[15]  persons to you?
[16]     **A.**  My husband was an examination officer.
[17]  Retired from the Commonwealth of Pennsylvania.  He was
[18]  there for thirty-something years.  My brother-in-law
[19]  was a detective for the City of Philadelphia.
[20]     **Q.**  Would the fact that you have relatives who
[21]  now or in the past worked in law enforcement, would
[22]  that in any way affect your ability to be a fair juror?
[23]     **A.**  No.
[24]     **Q.**  If you were selected to serve on this jury,
[25]  would you give both sides, the defendant and the

[1]     COMMONWEALTH VS. JOHN IN
[2]  Commonwealth, a fair trial?
[3]     **A.**  Yes.
[4]     **Q.**  Did you raise your hand that jury service
[5]  would be a hardship?
[6]     **A.**  Yes.
[7]     **Q.**  What's the nature of your hardship?
[8]     **A.**  I have medical procedures that I have to
[9]  have performed on Thursday.  I have to have a
[10]  colonoscopy Friday.  I have to have an endoscope down
[11]  my throat.
[12]     **Q.**  This Thursday, the day after tomorrow?
[13]     **A.**  Yes.
[14]     **THE COURT**:  Would you give us a moment,
[15]  ma'am.  Wait on the other side of the door.
[16]  Be right with you.
[17]     (The prospective juror departed the
[18]  courtroom.)
[19]     **THE COURT**:  I grant her hardship.  Have
[20]  one more.
[21]     **THE COURT CRIER**:  State your name.
[22]     **PROSPECTIVE JUROR**:  Nancy Armwood.
[23]         - - -
[24]     . . . NANCY ARMWOOD, having
[25]  been duly sworn, was examined and testified

[1]     COMMONWEALTH VS. JOHN IN
[2]  **as follows**:
[3]         - - -
[4]     EXAMINATION
[5]         - - -
[6]  **BY THE COURT**:
[7]     **Q.**  Tell us what you do for a living, please.
[8]     **A.**  Nurse assistant.
[9]     **Q.**  Do you work in a hospital, nursing home?
[10]     **A.**  Nursing home.
[11]     **Q.**  How long have you been a nurse assistant?
[12]     **A.**  Thirteen years.
[13]     **Q.**  Have you ever served on a jury before?
[14]     **A.**  Yes.
[15]     **Q.**  How long ago?
[16]     **A.**  Must have been about three years ago.
[17]     **Q.**  Civil or criminal case?
[18]     **A.**  A criminal.
[19]     **Q.**  Have you or someone close to you, ma'am,
[20]  been arrested or charged with a crime?
[21]     **A.**  Yes.
[22]     **Q.**  What relationship is that person to you?
[23]     **A.**  A nephew.
[24]     **Q.**  What was he charged with?
[25]     **A.**  Had something to do with drugs.

COMMONWEALTH VS. JOHN IN

[2]  **Q.**  Did you attend his trial?

[3]  **A.**  No.

[4]  **Q.**  Do you have an opinion to whether he was

[5] treated fair or unfair?

[6]  **A.**  No.

[7]  **Q.**  Is there anything about his case which would

[8] affect your ability to be a fair juror in this case?

[9]  **A.**  No.

[10]  **Q.**  Do you or someone close to you work now or

[11] in the past in law enforcement?

[12]  **A.**  Yes.

[13]  **Q.**  What relationship is that person?

[14]  **A.**  A nephew.

[15]  **Q.**  Different nephew?

[16]  **A.**  Yeah, different.

[17]  **Q.**  What kind of work does that nephew do?

[18]  **A.**  He was a prison guard.

[19]  **Q.**  What does he do now?

[20]  **A.**  He's retired.

[21]  **Q.**  Would the fact that you have a nephew who

[22] worked in law enforcement, would that affect your

[23] ability to be a fair juror?

[24]  **A.**  No.

[25]  **Q.**  If you were selected to serve on this jury,

COMMONWEALTH VS. JOHN IN

[2] would you give both sides, the defendant and the

[3] Commonwealth, a fair trial?

[4]  **A.**  Yes.

[5]  **Q.**  Did you raise your hand that jury service

[6] would be a hardship?

[7]  **A.**  Yes.

[8]  **Q.**  What's the nature of your hardship?

[9]  **A.**  I'm the caregiver for my mother.  She's

[10] ninety-one.  I'm with her most days because I work in

[11] the evenings.  When I do work -- I'm semi-retired --

[12] only work two nights a week with her most days.  She's

[13] ninety-one.

[14]  **Q.**  Is there anyone else to look after her while

[15] you serve here?

[16]  **A.**  No, no.  My daughter is with her today, but

[17] this is her day off.  So I knew that ahead of time I

[18] was able to arrange for her.

[19]       **THE COURT**:  Give us a moment, ma'am.

[20]  Wait on the other side of the exit door to

[21]  your right.  Be with you in a moment.

[22]       (The prospective juror departed the

[23]  courtroom.)

[24]       **THE COURT**:  Counsel, I'll hear your

[25]  observations about her hardship.

COMMONWEALTH VS. JOHN IN

  **MS. BARALDI**:  I don't have any argument.

  **MR. GIULIANI**:  Me either.

  **MS. BARALDI**:  Motion for cause.

  **MR. GIULIANI**:  No objection.

  **THE COURT**:  You agree with her?

  **MR. GIULIANI**:  I agree.  I think
borderline -- the problem, I get somebody
with a borderline hardship, put them on the
jury, they resent being put on the jury.

  **THE COURT**:  What's your position?

  **MS. BARALDI**:  I agree with Mr. Giuliani.
(Proceedings adjourned.)

COMMONWEALTH VS. JOHN IN

C E R T I F I C A T I O N

  I hereby certify that the proceedings and
evidence are contained fully and accurately in the
notes taken by me on the trial of the above cause, and
this copy is a correct transcript of the case.

_____

  Stefanie Scurvin

  Official Court Reporter

  (The foregoing certification of this
transcript does not apply to any reproduction of the
same by any means unless under the direct control
and/or supervision of the certifying reporter.)

Court Reporting System (Generated 2022/02/08 11:51:24)

