# First Judicial District of Pennsylvania

*51CR00048292007*
*John In*

---

*Trial (Jury) Volume 1*
*September 10, 2008*



---

*First Judicial District of Pennsylvania*

*100 South Broad Street, Second Floor*

*Philadelphia, PA 19110*

*(215) 683-8000   FAX:(215) 683-8005*

*Original File 091008JI.V1, 150 Pages*
*CRS Catalog ID: 10031407*

In The Court of Common Pleas

Of Philadelphia County

Criminal Trial Division

- - -

Commonwealth            : CP-51-CR-0004829-2007

:

V            :

:

JOHN IN            :

- - -

**DATE**:        Wednesday, September 10, 2008

Courtroom 801, Criminal Justice Center

Philadelphia, Pennsylvania

**BEFORE**:  THE HONORABLE SANDY L.V. BYRD, and a jury

**WHAT**:        (Jury Trial-cont'd)

**APPEARANCES**:

LAUREN BARALDI, ESQUIRE

Assistant District Attorney

For the Commonwealth

RICHARD GIULIANI, ESQUIRE

For the Defendant

**TRANSCRIBED BY**:

LINDA PROCOPIO

Certified Court Reporter

I N D E X

- - -

Commonwealth's Evidence     D     C     RD     RC

WITNESS

Christina Khem            74    85

Vuthary Yun            100    109

Dina Khem            121    132    143    144

E-X-H-I-B-I-T-S

MARKED        DESCRIPTION        FOR ID        IN EV

C-1                    108

Defense Evidence

E-X-H-I-B-I-T-S

MARKED        DESCRIPTION        FOR ID        IN EV

D-1    Stmt of V. Yun        112

[1]    Commonwealth v. John In

[2]    **THE COURT**:  We're back on the record

[3]  in the case of Commonwealth versus John

[4]  In, CP-51-CR-0004768, year 2007.

[5]    Mr. In is here with his attorney, Mr.

[6]  Giuliani.  The Commonwealth by Miss

[7]  Baraldi.  Everyone is present.  We have

[8]  selected 11 jurors.  We shall select one

[9]  more and two alternates and get underway.

[10]    Are you ready to proceed, counsel?

[11]    **MR. GIULIANI**:  I am, your Honor.  Good

[12]  morning.  Thank you.

[13]    **MS. BARALDI**:  Yes.  Your Honor.

[14]    **THE COURT**:  Okay.  Obviously this is a

[15]  public courtroom.  If anybody who wishes

[16]  may sit in as a spectator/observer.  But

[17]  please take the last row of seats.

[18]    Would you bring in the panel please.

[19]  Counsel, I asked the court officer and

[20]  crier to place the 20 prospective jurors

[21]  immediately behind you.  If you want to

[22]  sit on the other side of the table, you

[23]  may.   If you want to remain where you are

[24]  and turn.

[25]    Sheriff, is it okay if he sits on the

[1]    Commonwealth v. John In

[2]  other side?

[3]    **THE SHERIFF**:  Yes.

[4]    **THE COURT**:

[5]            - - -

[6]    (prospective jurors in the room at

[7]        approximately 9:50 a.m)

[8]            - - -

[9]    **THE COURT**:  Good morning, ladies and

[10]  gentlemen.  Would you swear the panel

[11]  please.

[12]    **THE CRIER**:  Please stand.

[13]            - - -

[14]    (Whereupon prospective jury panel

[15]  was sworn)

[16]            - - -

[17]    **THE COURT**:  Ladies and gentlemen,

[18]  welcome to courtroom 801.  I'm Judge Byrd.

[19]  You have been summoned here this morning

[20]  to participate as jurors in the trial of a

[21]  criminal case.

[22]    This is the case of the Commonwealth

[23]  of Pennsylvania versus John In.  And I

[24]  shall tell you more about the case in

[25]  short order.  I should first like to state

Page 5

[1]     Commonwealth v. John In
[2] something that you already know.  And that
[3] is, is jury service is one of the most
[4] important responsibilities of citizenship.
[5] For that reason no one can be excused
[6] except for a most serious and most
[7] compelling of reasons.  Those of you
[8] selected to serve on this case will be
[9] fact finders.  A juror's responsibility is
[10] to present himself or herself here with an
[11] open mind, listen to the evidence, and
[12] then collectively decide from that
[13] evidence what the facts are.  Thereafter,
[14] you have an obligation on your oath to
[15] accept the law from me as the presiding
[16] judge, then to apply that law to the facts
[17] as you determine the facts to be.  And
[18] thereafter to reach a fair and impartial
[19] verdict consistent with the evidence and
[20] the law.  So you are obviously the fact
[21] finder.  Those selected to serve will be
[22] fact finders and as such you will be asked
[23] to pass up on the credibility of the
[24] witnesses and any other evidence that
[25] comes before you.  By that, I mean the

Page 6

[1]     Commonwealth v. John In
[2] accuracy and or believability.  I'm also
[3] very much aware all of you have been here
[4] at least as early as 8:30 this morning.
[5] And I know that you filled out a
[6] questionnaire because we have copies of
[7] them.  So thank you.  I have some
[8] questions to put to you.  Please bear in
[9] mind that it's important that you answer
[10] my questions with honesty and candor and
[11] do so without making an effort to get out
[12] of jury service on making a special effort
[13] to get on to the jury.  If you continue to
[14] answer questions in that fashion, we will
[15] complete jury selection today and start
[16] this case shortly thereafter.
[17]     There are certain fundamental
[18] principles which guide our system of
[19] criminal law.  These principles are in
[20] effect throughout these United States,
[21] here in the Commonwealth and in our sister
[22] jurisdiction, as well as in the federal
[23] court.  These principles include the
[24] **following**:  A defendant in a criminal case
[25] is presumed to be innocent.  So the mere

Page 7

[1]     Commonwealth v. John In
[2] fact that someone has been arrested or
[3] charged with a crime is not evidence of
[4] guilt.  The evidence unfolds in the
[5] courtroom for the edification of the jury.
[6] So the presumption of innocence remains
[7] with that defendant unless and until the
[8] Commonwealth proves guilt beyond a
[9] reasonable doubt.
[10]     Because the Constitution affords every
[11] defendant a right of silence at trial,
[12] that defendant has no obligation to
[13] testify or call witnesses.  And if he
[14] elects to exercise his right of silence,
[15] you may not hold it against him.  You may
[16] draw no adverse inference, no inference of
[17] guilt from the decision to exercise that
[18] right.
[19]     Your task would be as jurors to
[20] evaluate the evidence you have heard and
[21] to determine whether or not the
[22] Commonwealth proved the defendant's guilt
[23] beyond a reasonable doubt.
[24]     I said before I will be asking
[25] questions.  And it's important that I tell

Page 8

[1]     Commonwealth v. John In
[2] you that my questions are not designed to
[3] embarrass or to invade your privacy.  This
[4] is a necessary part of jury selection.  If
[5] I ask a question of you that applies to
[6] you, if you are not certain whether it
[7] applies to you, in those two instances
[8] raise your hand.  You have each been given
[9] a card.  It has a number on it.  When you
[10] raise your card, you have that card in
[11] hand and the card faces me.  Keep that
[12] card raised until such time as the court
[13] officer calls out your number.  Then you
[14] may lower the card again.
[15]     Two questions on the questionnaire
[16] should be addressed at this junction.  And
[17] **one question asked**:  Would you be more
[18] likely to believe the testimony of a
[19] police officer or other law enforcement
[20] agent simply because of his or her job?
[21] **The other asked**:  Would you be less likely
[22] to believe the testimony of a police
[23] officer or other law enforcement agent
[24] simply because of his or her job?
[25]     When I tell you, ladies and gentlemen,

Commonwealth v. John In

[2] that you are the fact finders, it should
[3] be obvious to all of you that you must
[4] judge the credibility of every witness
[5] using the very same standards. The law is
[6] very clear. You may give no greater
[7] weight or lesser weight to the testimony
[8] of a police officer or other law
[9] enforcement agent because of his or her
[10] job. The court will give you standards by
[11] which you are to judge the credibility of
[12] all witnesses and those standards are to
[13] be applied to every witness, the standards
[14] to be applied to all witnesses. So you
[15] will evaluate the testimony of a police
[16] officer using the same standard as you
[17] would evaluate that of a truck driver or
[18] astronaut, a school teacher or architect.
[19] No one comes before you with entitlement
[20] to be believed or disbelieved, for that
[21] matter.
[22]     As fact finders, you cannot remove the
[23] burden of determining the facts in this
[24] case by saying that was a police officer
[25] testifying, I would never believe a police

Commonwealth v. John In

[2] officer; or that was a police officer
[3] testifying, I would always believe a
[4] police officer. Whether or not you
[5] believe a particular witness at the
[6] conclusion of his or her testimony as you
[7] deliberate is up to you after you have
[8] applied the standards. You cannot say
[9] from the outset that's a cop, I don't
[10] believe him. That's a cop, I'll always
[11] believe in. That's because you are the
[12] fact finders.
[13]     When you take an oath to be a juror,
[14] you take an oath to follow the court's
[15] instructions.
[16]     This is, as I said, the case of the
[17] Commonwealth of Pennsylvania versus John
[18] In. And in this case the defendant has
[19] been charged with the following offenses:
[20] He has been charged with robbery, three
[21] counts; burglary; possession of an
[22] instrument of crime; and violation of the
[23] Uniform Firearms Act, section 6106 and
[24] section 6108. And he has been charged
[25] with criminal conspiracy.

Commonwealth v. John In

[2]     These charges against the defendant
[3] are the result of the following
[4] **allegation**: The Commonwealth alleges that
[5] on or about March 7, 2007, at or about
[6] 5:15 a.m., this defendant, John In, and
[7] two other men, Jerry Jean and Dyshon
[8] Marable, entered the residence of Vuthary
[9] Yun located here in Philadelphia at 720
[10] Mifflin Street, and they do so without
[11] permission. And while inside those
[12] **premises robbed three persons**: Vuthary
[13] Yun, Dina Khem, and Christina Khem.
[14]     So, the first question I have is, do
[15] any of you know or think you know
[16] something or anything at all about the
[17] allegations that gave rise to the charges
[18] against this defendant? If so, please
[19] raise your hand.
[20]     **THE CRIER**: No response, your Honor.
[21]     **THE COURT**: Now, ladies and gentlemen,
[22] it's important that when I ask the
[23] question of you, if it applies to you that
[24] you don't blurt out something or anything.
[25] Just raise your hand. And since I'll be

Commonwealth v. John In

[2] talking to you each of you individually,
[3] you can bring that to my attention at that
[4] time. It's also important that you if you
[5] think you know something or anything about
[6] that case you don't share that with your
[7] fellow jurors. If it's necessary to
[8] excuse you, hopefully we can proceed with
[9] the rest of the panel members without
[10] having to start all over again. Bear that
[11] in mind.
[12]     And I will continue to now introduce
[13] you to the principals in the case. You
[14] heard me say this is the case of the
[15] Commonwealth versus John In. Both sides
[16] have counsel. The Commonwealth is
[17] represented and the defendant is
[18] represented. The Commonwealth in this
[19] case is represented by a member of the
[20] district attorney's office.
[21]     Now, you can see that they, that is,
[22] the principals have positioned themselves
[23] so you can see them. Typically I ask them
[24] to stand, their backs are to the panel.
[25] In this instance since they are facing

Page 13

[1]     Commonwealth v. John In

[2] you, I'll ask them to remain seated as I

[3] introduce them from my right over to the

[4] end.

[5]     The first person is, as I said the

[6] assistant district attorney.  Her name is

[7] Lauren Baraldi.

[8]     **MS. BARALDI**:  Good morning.

[9]     **THE COURT**:  The second person is a

[10] member of the defense bar.  He represents

[11] the defendant.  His name is Richard

[12] Giuliani.

[13]     **MR. GIULIANI**:  Good morning,

[14] everybody.

[15]     **THE COURT**:  And the third person

[16] seated to Mr. Giuliani's left is the

[17] defendant, John In.

[18]     **THE DEFENDANT**:  Good morning.

[19]     **THE COURT**:  The next question is:  Do

[20] any of you, have you had any association

[21] with or are you related by blood or

[22] marriage to either the defendant, his

[23] attorney, the Commonwealth's attorney or

[24] me?  I'm Judge Byrd.  If so, please raise

[25] your hand.

Page 14

[1]     Commonwealth v. John In

[2]     **THE CRIER**:  No response, your Honor.

[3]     **THE COURT**:  You, jurors, may look

[4] about the courtroom.  You see that we have

[5] a full staff.  We have a court reporter

[6] who is taking down a written transcription

[7] of these proceedings.  We have a court

[8] crier who is keeping a record of these

[9] procedures.  We have a court officer and

[10] court crier who I think you have already

[11] met.  And a deputy sheriff.  The question

[12] **is**:  Do you know or have you any

[13] association with or are you related by

[14] blood or marriage to any of the persons

[15] making up the court staff?  If so, please

[16] raise your hand.

[17]     **THE CRIER**:  No response.

[18]     **THE COURT**:  Jurors, give me one quick

[19] second.  I will see the attorneys at

[20] side-bar for a moment.

[21]         - - -

[22]     (off-the-record discussion at

[23] side-bar)

[24]         - - -

[25]     **THE COURT**:  Thank you.  You, ladies

Page 15

[1]     Commonwealth v. John In

[2] and gentlemen, all know that in a trial of

[3] a criminal case, witnesses will be called

[4] and I will be reading to you from a list

[5] of potential witnesses.  I use that phrase

[6] potential witness.  Although some of the

[7] persons on this list will undoubtedly be

[8] called as witnesses to testify, others

[9] will be perhaps mentioned by those

[10] testifying.  So others will merely be

[11] mentioned during the course of this trial.

[12] It's a long list.  Listen carefully.  When

[13] I finish reading the list, I'll ask if you

[14] know any of these persons.  The first

[15] person I shall introduce were the

[16] aforementioned complainants in the case.

[17] All from South Philadelphia.  They include

[18] Vuthary Yun, Y-u-n; Christina Khem,

[19] K-h-e-m; Dina Khem, K-h-e-m; Angela Khem;

[20] and Keith Khem, same spelling.  Dyshan

[21] Marable, M-a-r-a-b-l-e; first name,

[22] D-y-s-h-a-n,in, from the 1700 block of

[23] north Lindenwood Street.  Jacqueline Jean,

[24] J-e-a-n and Jerry Jean from the 300 block

[25] of Clarkson Avenue.

Page 16

[1]     Commonwealth v. John In

[2]     Same question.  Do any of you have,

[3] know or have you had any association with

[4] or are you related by blood or marriage to

[5] any of the persons just named?  If so,

[6] please raise your hand.

[7]     **THE CRIER**:  No response, your Honor.

[8]     **THE COURT**:  The following persons from

[9] the Philadelphia Police Department.

[10] First from the Third Police District:

[11] Police Officer Peter Seabron.  Also from

[12] the Third Police District, Police Officer

[13] Roger Birch.  From the Fourth Police

[14] District, Police Officer Thomas Nolan,

[15] Police Officer Kevin Cannon, Police

[16] Officer Raphael McGough, Police Officer

[17] Carol Jenkins, Police Officer Kevon

[18] Baldwin, Police Officer Felicia Battles,

[19] and Police Officer Robert Robinson from

[20] the Fourth Police District.  Also from

[21] the Fourth Police District, Sergeant

[22] Steven Woods.

[23]     From the 17th District, Lieutenant

[24] Michael Deal, and Sergeant Stephen

[25] Liczbinski, then of the 25th Police

Page 17

[1]   Commonwealth v. John In
[2] District.
[3]   In addition, from the Firearms
[4] Identification Unit, Officer Leonard
[5] Johnson; two crime scene officers:
[6] Officer Avon Wilson and Officer Wilfredo
[7] Aponte, both from the crime scene unit.
[8] Two detectives.  One from Northeast
[9] Detectives Division, Detective Robert
[10] Conn, and from South Detectives Division,
[11] Detective John Hopkins.
[12]   From Internal Affairs, Lieutenant
[13] Steve Nolan and Lieutenant John
[14] Prendergast.
[15]   Finally, a civilian employee from the
[16] DNA laboratory, Benjamin Levin.
[17]   Same question, ladies and gentlemen.
[18] Do any of you know or have you had any
[19] association with or are you related by
[20] blood or marriage to any of the persons
[21] just mentioned?  If so, please raise your
[22] hand.
[23]   **THE CRIER**:  Number 20.  No further
[24] response, your Honor.
[25]   **THE COURT**:  Thank you.

Page 18

[1]   Commonwealth v. John In
[2]   **THE COURT**:  Members of the panel, I
[3] already discussed with you those
[4] Constitutional principles which guide our
[5] system of criminal law.  Let me ask the
[6] **following questions**:  Does anyone here
[7] have a fixed opinion about the guilt or
[8] innocence of this defendant to any of the
[9] charges made against him?  If so, please
[10] raise your hand.
[11]   **THE CRIER**:  No response, your Honor.
[12]   **THE COURT**:  Do any of you know of any
[13] reason why if you were selected to serve
[14] on this jury you would not be able to give
[15] both sides, the defendant and the
[16] Commonwealth, a fair and impartial trial?
[17] If so, please raise your hand.
[18]   **THE CRIER**:  No response, your Honor.
[19]   **THE COURT**:  Ladies and gentlemen, we
[20] expect this case to last approximately 3
[21] days.  We expect to start testimony
[22] immediately after we conclude jury
[23] selection and take testimony today and
[24] tomorrow and perhaps into Friday.  It may
[25] very well be that you will hear the

Page 19

[1]   Commonwealth v. John In
[2] attorneys sum up the case by way of
[3] closing argument, then I'll give you
[4] instruction on the law and the case will
[5] be yours for deliberation either on
[6] Friday, more likely on this coming Monday.
[7] That's our best guess as to how long the
[8] case will last.  We sometimes
[9] underestimate the length of time the case
[10] will last.  Sometimes over estimate the
[11] length of time the case will last.  We
[12] think we got it just about right.  I can
[13] tell you this, however, this is not a
[14] death penalty case, nor will the jury be
[15] sequestered.  No one will be asked to
[16] bring some overnight bag and be put up in
[17] a Center City hotel.  We work business
[18] hours here, perhaps which you keep in your
[19] everyday places of employment.  I expect
[20] to start each morning 9:30, work through
[21] the morning, take a break, as you members
[22] of the jury require them.  We have an hour
[23] for lunch and it's my intention to work
[24] until 4:30 in the afternoon.  It is my
[25] practice if it appears we are falling

Page 20

[1]   Commonwealth v. John In
[2] behind to start a half hour earlier at 9
[3] and work a half hour later until 5:30.  As
[4] you can see, these are not onerous hours.
[5] They are much like the hours most of us
[6] keep in your places of employment.
[7]   Bearing everything in mind that I
[8] said, is there anyone here for whom jury
[9] service in this case would be a real,
[10] true, serious hardship, not an
[11] inconvenience, ladies and gentlemen, but a
[12] hardship?  If you have a hardship raise
[13] your hand.
[14]   **THE CRIER**:  Number 4, number 5, number
[15] 14, number 17.  No further response, your
[16] Honor.
[17]   **THE COURT**:  Thank you, ladies and
[18] gentlemen.  We're going to ask that you be
[19] so kind as to follow the instructions of
[20] the court officer and we will be with you
[21] momentarily.
[22]   Miss Baraldi and Mr. Giuliani, any
[23] additional questions you want me to ask
[24] the panel as a whole?
[25]   **MR. GIULIANI**:  No, your Honor.

[1]    Commonwealth v. John In
[2]    **MS. BARALDI**:  No, your Honor.
[3]            - - -
[4]    (prospective panel leaves the room)
[5]            - - -
[6]    **THE COURT**:  Bring out the first
[7] person.
[8]            - - -
[9]    (Whereupon prospective juror no. 1
[10] enters the room at this time.)
[11]           - - -
[12]    **THE CRIER**:  State your name.
[13]    **PROSPECTIVE JUROR NO. 1**: Leslie
[14] Wingard.
[15] **BY THE COURT**:
[16]    **Q.**  Miss Wingard, tell us what you do for a living
[17] please.
[18]    **A.**  Executive assistant.
[19]    **Q.**  Would you say that one more time?
[20]    **A.**  Executive assistant for T.L. Martin and
[21] Associates and evening receptionist at Presbyterian
[22] Children's Village.
[23]    **Q.**  What kind of firm is T.L Martin?
[24]    **A.**  Retail design and construction firm.
[25]    **Q.**  How long have you been with them?

[1]    Commonwealth v. John In
[2]    **A.**  Since June.
[3]    **Q.**  What kind of work did you do before that?
[4]    **A.**  In school for the last two years and I was a
[5] director of human resource information system at
[6] Drexel.
[7]    **Q.**  You said you have an evening job, as well.
[8] What is that?
[9]    **A.**  Evening receptionist at Presbyterian
[10] Children's Village, a behavioral facility in
[11] Rosemont.
[12]    **Q.**  What does the job consist of?
[13]    **A.**  Evening receptionist, answering phones.
[14]    **Q.**  How long have you done that?
[15]    **A.**  Two years, almost three.
[16]    **Q.**  Have you or someone close to you been the
[17] victim of a crime?
[18]    **A.**  Yes.
[19]    **Q.**  What relationship is that person or those
[20] persons to you?
[21]    **A.**  My cousin.
[22]    **Q.**  What happen to your cousin?
[23]    **A.**  She was assaulted and raped.
[24]    **Q.**  I'm sorry to hear that.  How long ago was
[25] that?

[1]    Commonwealth v. John In
[2]    **A.**  Ten years ago.
[3]    **Q.**  Did she know her assailant?
[4]    **A.**  Yes.
[5]    **Q.**  Was it reported?
[6]    **A.**  Yes.
[7]    **Q.**  Is there anything about that case which would
[8] affect your ability to be a fair juror in this case?
[9]    **A.**  No.
[10]    **Q.**  You also checked off you or someone close to
[11] you was arrested and charged with a crime.
[12]    **A.**  Yes.  My sister.
[13]    **Q.**  What was she charged with?
[14]    **A.**  Auto theft.
[15]    **Q.**  What is your sister's name?
[16]    **A.**  Stephanie Capehart.
[17]    **Q.**  Did you attend her trial?
[18]    **A.**  No.
[19]    **Q.**  How long ago was that?
[20]    **A.**  Five years ago.
[21]    **Q.**  Here in Philadelphia?
[22]    **A.**  Yes.
[23]    **Q.**  Do you have an opinion as to whether or not
[24] she was treated fairly or unfairly?
[25]    **A.**  No, she was wrong.

[1]    Commonwealth v. John In
[2]    **Q.**  Is there anything about that case which would
[3] affect your ability to be a fair juror in this case?
[4]    **A.**  No.
[5]    **Q.**  Do you know people in law enforcement?
[6]    **A.**  Yes.
[7]    **Q.**  What relationship are they to you?
[8]    **A.**  My cousin is a cop and my uncle is a lawyer.
[9]    **Q.**  The cousin who is a police officer, is that
[10] here in Philadelphia?
[11]    **A.**  Yes.
[12]    **Q.**  You say your uncle is an attorney?
[13]    **A.**  Yes.
[14]    **Q.**  What kind of law does he practice?
[15]    **A.**  I think pretty much everything.
[16]    **Q.**  To the best of your knowledge, does he
[17] practice criminal law?
[18]    **A.**  Yes.
[19]    **Q.**  What his name?
[20]    **A.**  John Connor.
[21]    **Q.**  How often do you talk to him about his work?
[22]    **A.**  I'd rather not hear about it.
[23]    **Q.**  How often do you see each other?
[24]    **A.**  Maybe a couple times a month.
[25]    **Q.**  If you were selected, is there anything, the

Page 25

[1]    Commonwealth v. John In
[2] fact that you know Mr. Connor which would affect
[3] your ability to be a fair juror in this case?
[4] **A.**    No.
[5] **Q.**    Is there anything about the fact that your
[6] cousin is a police officer which would affect your
[7] ability to be a fair juror in this case?
[8] **A.**    No.
[9] **Q.**    Would you give us your word if you are
[10] selected you will not speak specifically with either
[11] of those two individuals or anyone else for that
[12] matter about this case?
[13] **A.**    Yes.
[14] **Q.**    Let me just ask you three other questions.
[15] First, would you have any problem following my
[16] instructions that the defendant in this case is
[17] presumed to be innocent until proven guilty beyond a
[18] reasonable doubt?
[19] **A.**    I don't think so.
[20] **Q.**    When you say, "you don't think so," is that a
[21] figure of speech or do you have some doubt about
[22] that?
[23] **A.**    I'm not sure.
[24] **Q.**    What is it you are not sure about?
[25] **A.**    I guess with the whole case.

Page 26

[1]    Commonwealth v. John In
[2] **Q.**    Next question.  Would you have any problem
[3] following my instruction that the defendant in a
[4] criminal case does not have to take the witness
[5] stand or present evidence and it cannot be held
[6] against him if he elects to remain silent at trial?
[7] **A.**    Sometimes I feel it's important to hear their
[8] side.
[9] **Q.**    Would you have any problem during the
[10] course -- strike that.  Would you have any problem
[11] following my instruction that in a criminal case
[12] just because someone is arrested doesn't mean he's
[13] guilty of anything?
[14] **A.**    I'm not sure how to answer that one 'cause I
[15] kind of was on yes and no on that one.
[16]    **THE COURT**:  Would you give us a
[17] moment, ma'am.  Wait on the other side of
[18] the exit door to your right.
[19]       -  -  -
[20]    (Whereupon prospective juror no. 1
[21] exits the room at this time.)
[22]       -  -  -
[23]    **MR. GIULIANI**:  Motion for cause, your
[24] Honor.
[25]    **THE COURT**:  Cause granted

Page 27

[1]    Commonwealth v. John In
[2]    (Whereupon prospective juror no. 2
[3] enters the room at this time.)
[4]       -  -  -
[5]    **THE CRIER**:  State your name.
[6]    **PROSPECTIVE JUROR NO. 2**: Danielle
[7] Anderson.
[8] **BY THE COURT**:
[9] **Q.**    Miss Anderson, tell us what you do for a
[10] living please.
[11] **A.**    I'm a benefit specialist in human resources
[12] for Morgan, Lewis and Bokius.
[13] **Q.**    How long have you been in your present job?
[14] **A.**    Five years this coming January.
[15] **Q.**    You have two children, ma'am?
[16] **A.**    Yes.
[17] **Q.**    Can you give me ages and sex of your children?
[18] **A.**    3 and 6.  Both girls.
[19] **Q.**    Have you or anyone close to you ever worked as
[20] a police officer or other law enforcement agent
[21] including prosecutor, public defender, private
[22] criminal defense lawyer, detective, security guard,
[23] prison guard?
[24] **A.**    My cousin is a sheriff.
[25] **Q.**    Is that here in Philadelphia?

Page 28

[1]    Commonwealth v. John In
[2] **A.**    Yes.
[3] **Q.**    What is your cousin name?
[4] **A.**    Steven Postell.
[5] **Q.**    How do you spell that ?
[6] **A.**    P-o-s-t-e-l-l.
[7] **Q.**    Would the fact your cousin works in law
[8] enforcement, would that in any way affect your
[9] ability to be a fair juror?
[10] **A.**    No.
[11] **Q.**    You also told me you work for a law firm?
[12] **A.**    Yes.
[13] **Q.**    To the best of your knowledge, do any of the
[14] lawyers practice criminal law?
[15] **A.**    No.
[16] **Q.**    Would the fact you work for a law firm in any
[17] way affect your ability to be a fair juror?
[18] **A.**    No.
[19] **Q.**    If you were selected to serve on this jury,
[20] can you give us your word that specifically you will
[21] not speak with either your cousin or any of the
[22] attorneys in the firm or generally give us your word
[23] you will not speak to anybody about this case?
[24] **A.**    Yes.
[25] **Q.**    You live in the north Philadelphia section of

Page 29

[1]    Commonwealth v. John In
[2] the city?
[3] **A.**   Yes.
[4] **Q.**   Have you lived in that section of the city for
[5] more than ten years?
[6] **A.**   Yes.
[7] **Q.**   If you were selected to serve on this jury,
[8] would you give both sides, the defendant and the
[9] Commonwealth, a fair trial?
[10] **A.**   Yes.
[11]    **THE COURT**: Thank you, ma'am.  Wait on
[12] the other side of the exit door to your
[13] right.  We will be right with you.
[14]         - - -
[15]    (Whereupon prospective juror no. 2
[16] exits the room at this time.)
[17]         - - -
[18]       (pause)
[19]         - - -
[20]    **THE CRIER**:  Panel member number 2 will
[21] be number 12.
[22]    **THE COURT**:  We need 2 alternates.  Do
[23] we need any more than two?
[24]    **MS. BARALDI**:  No.
[25]    **MR. GIULIANI**:  No.

Page 30

[1]    Commonwealth v. John In
[2]    **THE COURT**:  Let's proceed and get 2
[3] alternate  jurors.
[4]         - - -
[5]    (Whereupon prospective juror no. 3
[6] exits the room at this time.)
[7]         - - -
[8]    **THE CRIER**: State your name.
[9]    **PROSPECTIVE JUROR NO. 3**: Marie
[10] Theodore
[11] **BY THE COURT**:
[12] **Q.**   Miss Theodore, tell us what you do for a
[13] living please.
[14] **A.**   I am an LPN and work in a nursing home.
[15] **Q.**   How long have you been an LPN?
[16] **A.**   LPN from the year I passed the board test.  It
[17] was 1998.  And since then I was in New York and now
[18] I'm going to be five years in Pennsylvania.
[19] January.
[20] **Q.**   You have an accent.  May I ask where back home
[21] is?
[22] **A.**   Haiti.
[23] **Q.**   So French would be your first language?
[24] **A.**   Creole.
[25] **Q.**   Understood.  Have you served on a jury before?

Page 31

[1]    Commonwealth v. John In
[2] **A.**   New York.  Pennsylvania I was called for one
[3] day.
[4] **Q.**   How long ago did you serve in New York?
[5] **A.**   Five years.  Maybe 7 or 8.
[6] **Q.**   Do you remember whether it was a criminal case
[7] or civil case?
[8] **A.**   That was a little case, getting a little case
[9] and sending it to jury, grand jury.
[10] **Q.**   You were on a grand jury?
[11] **A.**   Yeah.
[12] **Q.**   You have one child?
[13] **A.**   One child.
[14] **Q.**   What is the age and sex of your child?
[15] **A.**   Male.  14 years old.
[16] **Q.**   If you were selected to serve on this jury,
[17] would you give both sides, the defendant and the
[18] Commonwealth, a fair trial?
[19] **A.**   I will.
[20]    **THE COURT**:  Thank you, ma'am.  If you
[21] would wait on the other side of that door
[22] and we will be right with you .
[23]         - - -
[24]    (Whereupon prospective juror no. 3
[25] exits the room at this time.)

Page 32

[1]    Commonwealth v. John In
[2]         - - -
[3]    **THE COURT**:  Can I see the lawyers one
[4] quick second.
[5]         - - -
[6]    (side-bar not on the record)
[7]         - - -
[8]
[9]    **THE COURT**:  Would you ask her to come
[10] back in please.
[11]         - - -
[12]    (Whereupon prospective juror no. 3
[13] reenters the room at this time.)
[14]         - - -
[15] **BY THE COURT**:
[16] **Q.**   Can you hear me okay?
[17] **A.**   Yes.
[18] **Q.**   I'm going to ask you a follow-up question.
[19] You told us that your first language is Creole and
[20] English is your second language, correct?
[21] **A.**   My first language, my mother's language is
[22] Creole and back in Haiti we speak French and I later
[23] learned English which is my third language.
[24] **Q.**   Here's my question.  Do you have any concern
[25] about your ability to follow this case which will be

Page 33

[1]    Commonwealth v. John In

[2] conducted exclusively in English?

[3] **A.**   I, I'm not perfect in English.  I could

[4] understand it.

[5] **Q.**   Do you think that you would be able to

[6] understand the language sufficiently to serve on

[7] this jury?

[8] **A.**   If I can understand everything.   Would you

[9] repeat that?  You said if I can understand English?

[10] **Q.**   Do you think you understand English well

[11] enough to serve on this jury and follow the

[12] testimony as it's presented to you and your fellow

[13] jurors in English?

[14] **A.**   Yes.

[15]    **THE CRIER**:  Thank you.  If you would

[16] wait on the outside.  We will be right

[17] with you.

[18]            - - -

[19]    (Whereupon prospective juror no. 3

[20] exits the room at this time.)

[21]            - - -

[22]    **THE COURT**:  Counsel, may I see the 2

[23] of you.

[24]            - - -

[25]    (side-bar not on the record)

Page 34

[1]    Commonwealth v. John In

[2]            - - -

[3]    (back to the record)

[4]            - - -

[5]    **MS. BARALDI**:  The Commonwealth has a

[6] motion for cause as to that panel member.

[7]    **MR. GIULIANI**:  Defense would make the

[8] same motion.

[9]    **THE COURT**:  All right.  Excused by

[10] agreement.

[11]            - - -

[12] (Whereupon, prospective juror no. 4 enters

[13]       the room at this time)

[14]            - - -

[15]    **THE CRIER**:  State your name.

[16]    **PROSPECTIVE JUROR NO. 4**:  Julius King.

[17] **BY THE COURT**:

[18] **Q.**   Mr. King, tell us what you do for a living

[19] please.

[20] **A.**   Sports performance training, personal

[21] training.

[22] **Q.**   How long have you been in that line of work?

[23] **A.**   Personal training for about 6 years.  Sports

[24] performance training for 3.

[25] **Q.**   You are self-employed?

Page 35

[1]    Commonwealth v. John In

[2] **A.**   Yes.

[3] **Q.**   Do you have any physical or psychological

[4] disability that might interfere with or prevent you

[5] from serving as a juror in this case?

[6] **A.**   No, sir.

[7] **Q.**   Have you or anyone close to you ever been the

[8] victim of a crime?

[9] **A.**   Yes.

[10] **Q.**   What relationship is that person or those

[11] persons to you?

[12] **A.**   Friends and cousins.

[13] **Q.**   How many friends?

[14] **A.**   Like off-hand probably at least 4.

[15] **Q.**   What happened to your 4 friends?

[16] **A.**   Some robbed, some beaten, random crime.

[17] **Q.**   How many were robbed?

[18] **A.**   Two were robbed.

[19] **Q.**   The friend, first one who was robbed, was that

[20] strong-arm or gunpoint?

[21] **A.**   I think it was knife.

[22] **Q.**   Was it reported?

[23] **A.**   No.

[24] **Q.**   Anyone arrested?

[25] **A.**   No.

Page 36

[1]    Commonwealth v. John In

[2] **Q.**   Friend number 2, what kind of robbery was

[3] that?

[4] **A.**   Car robbery.

[5] **Q.**   So carjacked?

[6] **A.**   Yes.

[7] **Q.**   Was it reported?

[8] **A.**   The car, yes.

[9] **Q.**   Was the crime reported to the authorities?

[10] **A.**   Yes.

[11] **Q.**   To the best of your knowledge, was anyone

[12] arrested?

[13] **A.**   No.

[14] **Q.**   You had 2 friends assaulted?

[15] **A.**   Yes.

[16] **Q.**   The first friend, what was the nature of the

[17] assault?

[18] **A.**   Beaten.  It was coming home from school.

[19] **Q.**   Were they assaulted with fists, baseball bat,

[20] knifes?

[21] **A.**   Just fists.

[22] **Q.**   These were students?

[23] **A.**   Yes.  This is in high school, sir.

[24] **Q.**   Were these crimes reported?

[25] **A.**   No.

[1]    Commonwealth v. John In
[2]  **Q.**  Is there anything, any of those occurrences
[3] which would affect your ability to be a fair juror
[4] in this case?
[5]  **A.**  No.
[6]  **Q.**  You said a cousin or cousins were the victim
[7] of crime?
[8]  **A.**  Yes.
[9]  **Q.**  How many cousins?
[10]  **A.**  Just 2.
[11]  **Q.**  What happened to your cousins?
[12]  **A.**  They, they were, the first 2 you asked about.
[13]  **Q.**  So you put the friends and cousins in the
[14] friend category?  You discussed those?
[15]  **A.**  Yes.
[16]  **Q.**  Anybody else?
[17]  **A.**  No, sir.
[18]  **Q.**  Let me move to the next question.  Have you or
[19] anyone close to you ever been arrested or charged
[20] with a crime?
[21]  **A.**  Yes.  What do you consider close?
[22]  **Q.**  Someone you consider close.  Close friend or
[23] family member.
[24]  **A.**  Family members, yes.
[25]  **Q.**  How many?

[1]    Commonwealth v. John In
[2]  **A.**  I would say offhand two.
[3]  **Q.**  Tell me about them.  What family member,
[4] number one, what relationship is he or she to you
[5] and what were they charged with?
[6]  **A.**  Uncle.  I do not exactly know.
[7]  **Q.**  How long ago was he charged?
[8]  **A.**  At least 5 years ago.
[9]  **Q.**  In Philadelphia?
[10]  **A.**  Yes.
[11]  **Q.**  Did you go to the trial?
[12]  **A.**  No.
[13]  **Q.**  You don't know what he was charged with?
[14]  **A.**  Honestly no.
[15]  **Q.**  Do you have an opinion whether he was treated
[16] fairly for unfairly?
[17]  **A.**  No.
[18]  **Q.**  The second person, relationship and charge?
[19]  **A.**  Same.  A cousin.
[20]  **Q.**  What was he charged with?
[21]  **A.**  I have no idea.
[22]  **Q.**  How long ago was it?
[23]  **A.**  5 or 6.
[24]  **Q.**  Did you attend that trial?
[25]  **A.**  No.

[1]    Commonwealth v. John In
[2]  **Q.**  Do you have an opinion as to whether he was
[3] fairly treated or unfairly?
[4]  **A.**  No.
[5]  **Q.**  Did you say also friends who were  --
[6]  **A.**  No, sir.
[7]  **Q.**  Is there anything about either of these
[8] occurrences you just discussed with me, the arrest
[9] and charge against your uncle and/or the arrest and
[10] charge against your cousin which would affect your
[11] ability to be a fair juror in this case?
[12]  **A.**  No, sir.
[13]  **Q.**  When you checked off you are or someone close
[14] to you was an eyewitness to crime, was that
[15] something we already discussed or something else?
[16]  **A.**  Yes.
[17]  **Q.**  Something else?
[18]  **A.**  No.  Something we already discussed.
[19]  **Q.**  Let me ask you:  Have you or anyone close to
[20] you ever worked in law enforcement?
[21]  **A.**  No.
[22]  **Q.**  You checked yes on the form.  Law enforcement
[23] category includes correctional officer, prison
[24] guard, lawyers?
[25]  **A.**  Yes.

[1]    Commonwealth v. John In
[2]  **Q.**  What relationship is that person to you?
[3]  **A.**  Friend.
[4]  **Q.**  What does he or she do for a living?
[5]  **A.**  A lawyer.
[6]  **Q.**  What kind of law does he practice?
[7]  **A.**  Honestly I can't tell you.  He's in New
[8] Jersey.
[9]  **Q.**  Do you know if your friend practices criminal
[10] law?
[11]  **A.**  I'm going to say I honest don't know.
[12]  **Q.**  Can you give us your word if you are selected
[13] to serve on this jury you will not speak with that
[14] friend about this case?
[15]  **A.**  Yes, sir.
[16]  **Q.**  Is there anything about the fact that you know
[17] someone in law enforcement which would affect our
[18] ability to be a fair juror in this case?
[19]  **A.**  I would say no.  I might have a little more
[20] education about stuff, but.
[21]  **Q.**  Say that one more time.
[22]  **A.**  Maybe I might know a little more about law
[23] than a normal person, besides that, no.
[24]  **Q.**  By virtue of your friendship with this lawyer
[25] or some other ways, friendship, by talking

Page 41

[1]    Commonwealth v. John In
[2] generally, would you have any problem following my
[3] instruction that the defendant in a criminal case
[4] can does not have to take the witness stand or
[5] present evidence and if he elects not to testify or
[6] remain silent that cannot be held against him?
[7] **A.**   No.
[8] **Q.**   You checked yes on the form.  Is that a
[9] mistake?
[10] **A.**   I changed it.
[11] **Q.**   You did indeed.  Thank you.   Next question.
[12] Would you have any problem following the court's
[13] instruction in a criminal case that just because
[14] someone is arrested it does not mean he's guilty of
[15] anything?
[16] **A.**   If I understand that I would say, yes.
[17] **Q.**   You would follow that instruction or you would
[18] not?  Here's the question.  The law is that a
[19] defendant is presumed to be innocent and merely
[20] because someone is arrested is not evidence of
[21] guilt.  The evidence will be presented in the
[22] courtroom for you and your fellow jurors to decide
[23] whether or not he's guilty.  Would you be able to
[24] accept and follow that instruction?
[25] **A.**   Yes.  I think I misread it wrong.  Yes.

Page 42

[1]    Commonwealth v. John In
[2] **Q.**   You heard me say earlier to the panel as a
[3] whole you may give no greater or lesser wait to the
[4] testimony of a police officer or other law
[5] enforcement agent simply because of his or her job.
[6] Would you be able to accept and follow that
[7] instruction?
[8] **A.**   Yes.
[9] **Q.**   Did you raise your hand for a hardship?
[10] **A.**   Yes.
[11] **Q.**   What is the nature of your hardship?
[12] **A.**   The nature of my job, sir, I do sports
[13] performance packages, training, personal training, a
[14] lot of stuff is contracted out.  I have a school of
[15] 150 athletes I'm supposed to be training.
[16] **Q.**   Where is this?
[17] **A.**   Academy New Church.
[18] **Q.**   How long is that contract for?
[19] **A.**   This contract will be up in 2 weeks.
[20] **Q.**   How often do you go to this place to train?
[21] **A.**   3 times a week.
[22] **Q.**   It lasts for how long?
[23] **A.**   2 more weeks.  It's been going on for 4 weeks.
[24] **THE COURT**:  Would you give us a
[25] moment, sir.  Wait on the other side of

Page 43

[1]    Commonwealth v. John In
[2] that door.  We will be right with you.
[3]                    - - -
[4]    (Whereupon prospective juror no. 4
[5] exits the room at this time.)
[6]                    - - -
[7]    **THE COURT**:  Counsel.
[8] Let me see counsel at side-bar.
[9]                    - - -
[10]    (side-bar not on the record)
[11]                    - - -
[12]       (back on the record)
[13]                    - - -
[14]    **MR. GIULIANI**:  Defense makes a motion
[15] for cause finding this particular person's
[16] employment would amount to hardship in
[17] this particular case based upon the facts
[18] and circumstances of his employment.
[19]    **THE COURT**:  Commonwealth.
[20]    **MS. BARALDI**:  Your Honor, the
[21] Commonwealth's position that this does not
[22] qualify as a hardship as it goes to his
[23] employment.  He works three times a week
[24] as if a full-time job.  I understand he's
[25] a contractor, but I, I don't feel the

Page 44

[1]    Commonwealth v. John In
[2] employment qualifies as a hardship.
[3]    **THE COURT**:  Would you bring him back
[4] to the bar for one second.
[5]                    - - -
[6]    (Whereupon prospective juror no. 4
[7] re-enters the room at this time.)
[8]                    - - -
[9] **BY THE COURT**:
[10] **Q.**   Can you hear me?
[11] **A.**   Yes.
[12] **Q.**   I want to address the hardship issue.  You
[13] said that you have a contract with the Academy New
[14] Church?
[15] **A.**   Yes.
[16] **Q.**   Is that a school?
[17] **A.**   It's a private school.
[18] **Q.**   What does the contract entail?
[19] **A.**   Speed, agility, explosive training, sports
[20] performance training.
[21] **Q.**   The folks you teach, high school students?
[22] **A.**   Yes.  Various sports.
[23] **Q.**   How many?
[24] **A.**   120 total.
[25] **Q.**   You have a contract for last week, this week

Page 45

[1]     Commonwealth v. John In
[2] and next week?
[3] **A.**   Well, 4 weeks prior to this and the next 2.
[4] **Q.**   You are into the contract as we speak?
[5] **A.**   Yes.
[6] **Q.**   What hours would you have been there today?
[7] A.   I would get there at 3:30.
[8] **Q.**   How long do you train them?
[9] **A.**   'til 5 o'clock.  Other than that, I have other
[10] clients that paid for services.  I miss -- the main
[11] thing, if I miss it I don't get paid, sir.  I have
[12] student loans, rent, things like that.  I need to
[13] get paid.  It's not like I'm reimbursed by showing
[14] them this.  My clients will not say, here's the
[15] money for today's session.
[16]     **THE COURT**:  Thank you.  If you would
[17] wait again.  We will be right with you.
[18]             - - -
[19]     (Whereupon prospective juror no. 4
[20] exits the room at this time.)
[21]             - - -
[22]     **THE COURT**:  I'll grand his hardship.
[23]
[24]             - - -
[25] (Whereupon, prospective juror no. 5 enters

Page 46

[1]     Commonwealth v. John In
[2]         the room)
[3]             - - -
[4]     **THE CRIER**:  State your name.
[5]     **PROSPECTIVE JUROR NO. 5**: Wolodymir
[6] Katolik.
[7] **BY THE COURT**:
[8] **Q.**   Mr. Katolik, what do you do for a living?
[9] **A.**   I'm a mathematics teacher at Bensalem High
[10] School.
[11] **Q.**   You have been a teacher how long?
[12] **A.**   About ten years off and on.  Currently almost
[13] 4 years straight at Bensalem.
[14] **Q.**   Early this morning I instructed you and your
[15] fellow jurors that as the fact-finder in a criminal
[16] case you may give no greater or lesser weight to the
[17] testimony of a police officer or other law
[18] enforcement agent simply because of his or her job.
[19] A police officer is to have his or her testimony
[20] evaluated using the same standards you would use to
[21] evaluate that of any other witness.  Would you
[22] accept and follow that instruction?
[23] **A.**   Yes.  After the way you explained it and I
[24] understood it, my initial tendency because law
[25] officers are sworn to uphold the law.

Page 47

[1]     Commonwealth v. John In
[2] **Q.**   I understand that.  Would you accept and
[3] following my instruction?
[4] **A.**   Definitely, yes.
[5] **Q.**   You raise your hand jury service would  be a
[6] hardship?
[7] **A.**   In the way that you phrased it, it wouldn't be
[8] a hardship.  It would be a hardship on my students
[9] my being away for that length of time, even 3 days
[10] is, especially 3 days in a row.  That hurts the
[11] students.  I basically teach algebra and all 3 are
[12] inclusion classes.
[13] **Q.**   You teach where?
[14] **A.**   In the public schools.  Bensalem High School.
[15] **Q.**   It would not be the ideal situation, but they
[16] could get a substitute?
[17] **A.**   A substitute.  Not a problem.  There is a
[18] substitute there today.
[19] **Q.**   If you were selected to serve on this jury,
[20] would you give both sides, the defendant and the
[21] Commonwealth, a fair trial?
[22] **A.**   Yes.
[23]     **THE COURT**:  Thank you, sir.  If you
[24] would wait on the other side of that exit
[25] door.  We will be right with you.

Page 48

[1]     Commonwealth v. John In
[2]             - - -
[3]     (Whereupon, prospective juror number 5
[4]         exits the room)
[5]             - - -
[6]     **THE COURT**:  Counsel, this is a very
[7] different matter.  His hardship is denied.
[8]
[9]         (pause)
[10]             - - -
[11]     **THE CRIER**:  Defense alternate strike.
[12]             - - -
[13]     (Whereupon prospective juror no. 6
[14] enters the room at this time.)
[15]             - - -
[16]     **THE CRIER**:  State your name.
[17]     **PROSPECTIVE JUROR NO. 6**: Warren Smith,
[18] Sr.
[19] **BY THE COURT**:
[20] **Q.**   Mr. Smith, tell us what you do for a living.
[21] **A.**   Delaware River Port Authority.
[22] **Q.**   How long have you been doing that?
[23] **A.**   33 years.
[24] **Q.**   You have 2 children I see?
[25] **A.**   Yes.

Page 49

[1]     Commonwealth v. John In
[2]   **Q.**   What age and sex?
[3]   **A.**   Both male.  31 and 28.
[4]   **Q.**   What does the 28-year-old do for a living?
[5]   **A.**   He's a financial, works in finance somewhere.
[6]   **Q.**   The 31-year-old?
[7]   **A.**   He's a plumber.
[8]   **Q.**   I see you have served on a jury before?
[9]   **A.**   Yeah.
[10]   **Q.**   How long ago, sir?
[11]   **A.**   About 7, 8 years ago.
[12]   **Q.**   Civil or criminal case?
[13]   **A.**   Civil.
[14]   **Q.**   You or someone close to you was an eyewitness
[15] to crime?
[16]   **A.**   Yeah.  I think my son.
[17]   **Q.**   What did he see?
[18]   **A.**   I think he saw somebody getting robbed.
[19]   **Q.**   Is there anything what he saw which would
[20] affect your ability to be a fair juror in this case?
[21]   **A.**   No.
[22]   **Q.**   If you were selected to serve on this jury,
[23] would you give both sides, the defendant and the
[24] Commonwealth, a fair trial?
[25]   **A.**   Yes, I would.

Page 50

[1]     Commonwealth v. John In
[2]     **THE COURT**:  Thank you, sir.  If you
[3] would wait on the other side of the exit
[4] door.
[5]                 - - -
[6]     (Whereupon prospective juror no. 6
[7] exits the room at this time.)
[8]                 - - -
[9]         (pause)
[10]                 - - -
[11]     **THE CRIER**:  Number 6 is juror number
[12] 13, alternate number one.
[13]                 - - -
[14] (Whereupon, prospective juror No. 7 enters
[15]       the room at this time)
[16]                 - - -
[17]     **THE CRIER**:  State your name.
[18]   **PROSPECTIVE JUROR NO. 7**:  Laura Veitz.
[19] **BY THE COURT**:
[20]   **Q.**   Would you tell us what you do for a living?
[21]   **A.**   I'm a high school English teacher.
[22]   **Q.**   How long have you been a teacher?
[23]   **A.**   This will be my sixth year.
[24]   **Q.**   Private, public or parochial?
[25]   **A.**   Public.

Page 51

[1]     Commonwealth v. John In
[2]   **Q.**   If you were selected to serve on this jury,
[3] ma'am, would you give both sides, the defendant and
[4] the Commonwealth, a fair trial?
[5]   **A.**   Yes.
[6]     **THE COURT**:  Thank you.  If you would
[7] wait on the other side of that door.  We
[8] will be right with you.
[9]                 - - -
[10]     (Whereupon prospective juror no. 7
[11] exits the room at this time.)
[12]                 - - -
[13]         (pause)
[14]                 - - -
[15]     **THE CRIER**:  Panel member number 7 is
[16] juror number 14, second alternate.
[17]     **THE COURT**:  All right.  We can all
[18] stay in place until the remaining panel
[19] members are released.  And we can proceed.
[20] I want you to go over the bills of
[21] information, Mr. Giuliani, to speak with
[22] Mr. McNeil as to how he will arraign your
[23] client and speak with your client so we
[24] can have the jury come in, be sworn and
[25] the defendant can be arraigned.  And we

Page 52

[1]     Commonwealth v. John In
[2] can go right into our case.
[3]     **MS. BARALDI**:  If I may briefly ask
[4] your Honor regarding schedule for purposes
[5] of my witnesses.  I guess we'll do
[6] openings. Should I call a witness prior to
[7] you breaking for lunch or how would you
[8] like to set that up?
[9]     **THE COURT**:  I really don't know. I
[10] mean it's 11 now.  It depends on how long
[11] your openings and how long your first
[12] witness will be.  I'd like to work until
[13] 12:30 before lunch.  If it looks like you
[14] have  a witness on, we can complete him
[15] before lunch, work until one.
[16]     **THE COURT**:  Mr. Giuliani, will you be
[17] opening after the Commonwealth?
[18]     **MR. GIULIANI**:  Yes, I will be.
[19]     **THE COURT**:  All right.
[20]     **THE COURT**:  Counsel, I heard you say
[21] the testimony should last about 3 days.
[22] And the rule is if it lasts more than 2
[23] days the jurors will be allowed to take
[24] notes.  Is that your understanding?
[25]     **MR. GIULIANI**:  Yes, it is.

Page 53

[1]     Commonwealth v. John In
[2]     **THE COURT**:  Is that what you want?
[3]     **MR. GIULIANI**:  Yes.
[4]     **MS. BARALDI**:  Yes.
[5]     **THE COURT**:  There will be note taking.
[6]     I don't have any rules written in
[7]     stone or cement.  It's your case.  If you
[8]     want to start before lunch, if you want to
[9]     start after lunch, up to you.
[10]    We're going to just restate for the record
[11]    some preliminary matters.  Then we will
[12]    bring the jury out, counsel, and have them
[13]    sworn and your client arraigned.
[14]       Let the record reflect we concluded
[15]    selection of our jury in
[16]    CP-51-CR-0004768-2007, the case of the
[17]    Commonwealth versus John In.  Mr. In is
[18]    here represented by Mr. Giuliani.  The
[19]    Commonwealth by Miss Baraldi.  Let's have
[20]    Mr. In sworn in.
[21]    **THE CRIER**:  State your full name,
[22]    spell your last.
[23]    **THE DEFENDANT**:  John In.  I-N.
[24]              -  -  -
[25]       (defendant sworn)

Page 54

[1]     Commonwealth v. John In
[2]              -  -  -
[3]     **THE COURT**:  Thank you.  You may be
[4]     seated.  Miss Baraldi, state for the
[5]     record the charges you are moving on and
[6]     count and grading.
[7]     **MS. BARALDI**:  Yes, your Honor.
[8]     The Count 2 of the bill, possession of
[9]     an instrument of crime; Count 3 of the
[10]    bills, 6108, carrying a firearm  on the
[11]    public streets of Philadelphia as a
[12]    misdemeanor of the first degree.  Count 4,
[13]    possession of a firearm by a prohibited
[14]    person, which is section 6105.  Count 7,
[15]    Violation of the Uniform Firearms Act;
[16]    Carrying a firearm without a license,
[17]    section 6106, as a felony of the third
[18]    degree.  Count 9, burglary, felony of the
[19]    first degree.  Count 11, robbery, felony
[20]    of the first degree, victim Vuthary Yun.
[21]    Count 20, robbery, felony of the first
[22]    degree, the victim being Dina Khem.
[23]    Count 26, robbery as a felony of the first
[24]    degree, the victim being Christina Khem.
[25]    Count 29, criminal conspiracy as a felony

Page 55

[1]     Commonwealth v. John In
[2]     of the first degree.
[3]     **THE COURT**:  Thank you, ma'am.  You
[4]     have a motion on Count 4, sir?
[5]     **MR. GIULIANI**:  I would move to sever
[6]     that count from the remaining bills to be
[7]     held in abeyance by the court.
[8]     **THE COURT**:  Mr. In, you understand
[9]     that your attorney has moved to sever, so
[10]    that no prejudice to you since 6105 will
[11]    require the Commonwealth to show that you
[12]    have a prior conviction.
[13]    **THE DEFENDANT**:  Yes.
[14]    **THE COURT**:  Is that your understanding
[15]    by severing this case, this charge out,
[16]    you cannot later raise the double jeopardy
[17]    issue?
[18]    **THE DEFENDANT**:  Yes, your Honor.
[19]    **THE COURT**:  Very well.  Motion
[20]    granted.  That is severed.  You will not
[21]    be arraigned on Count 4.
[22]       We may bring the jury out.
[23]              -  -  -
[24]       (jury in the box at approximately
[25]    11:30 a.m.)

Page 56

[1]     Commonwealth v. John In
[2]              -  -  -
[3]     **THE COURT**:  Good morning ladies and
[4]     gentlemen.
[5]     **THE CRIER**:  Raise your right hand.
[6]              -  -  -
[7]       (jury panel sworn)
[8]              -  -  -
[9]     **THE COURT**:  You may be seated.  You
[10]    may continue, sir.
[11]    **THE CRIER**:  John In, to this bill of
[12]    information docket CP-51-CR-0004829 of the
[13]    year 2007, charging you with possession of
[14]    an instrument of crime, how do you plead?
[15]    **THE DEFENDANT**:  Not guilty.
[16]    **THE CRIER**:  John In, to this same bill
[17]    of information, same docket number,
[18]    charging with you carrying a firearm on a
[19]    public street in Philadelphia, how do you
[20]    plead?
[21]    **THE DEFENDANT**:  Not guilty.
[22]    **THE CRIER**:  John In, to this same bill
[23]    of information, same docket number,
[24]    charging you with firearm not to be
[25]    carried without a license, how do you

Page 57

[1]     Commonwealth v. John In
[2] plead?
[3]     **THE DEFENDANT**:  Not guilty.
[4]     **THE CRIER**:  John In, to this same bill
[5] of information and docket number charging
[6] you with burglary, the property being 720
[7] Mifflin Street, how do you plead?
[8]     **THE DEFENDANT**: Not guilty.
[9]     **THE CRIER**:  John In, to this same bill
[10] of information and docket number charging
[11] you with robbery, the victim being Vuthary
[12] Yun, how do you plead?
[13]     **THE DEFENDANT**:  Not guilty.
[14]     **THE CRIER**:  John In, to this same bill
[15] of information and same docket number
[16] charging you with robbery, the victim
[17] being Dina Khem, how do you plead?
[18]     **THE DEFENDANT**:  Not guilty.
[19]     **THE CRIER**:  John In, to this same bill
[20] of information and docket number charging
[21] you with robbery, the victim being
[22] Christina Khem, how do you plead?
[23]     **THE DEFENDANT**:  Not guilty.
[24]     **THE CRIER**:  John In, to this same bill
[25] of information and same docket number,

Page 58

[1]     Commonwealth v. John In
[2] charging you with criminal conspiracy, how
[3] do you plead?
[4]     **THE DEFENDANT**:  Not guilty.
[5]     **THE CRIER**:  Jurors, your Honor, the
[6] defendant at the bar of the court has pled
[7] not guilty to all of the charges.  Mr. In,
[8] how do you wish to be tried, by judge or
[9] jury?
[10]     **THE DEFENDANT**:  By this jury.
[11]     **THE COURT**:  Thank you.  You may be
[12] seated.  Good morning ladies and
[13] gentlemen.  The first order of business is
[14] for you to put away all writing books.
[15] You will have access only when the
[16] witnesses commence their testimony.
[17]     Now, ladies and gentlemen, I must give
[18] you some preliminary instructions in the
[19] law and I shall give you continuous
[20] instruction throughout this trial as they
[21] may be needed.  I want you to understand
[22] that a fundamental principle of our system
[23] of criminal law is a defendant is presumed
[24] to be innocent.  So the mere fact that
[25] John In has been arrested and charged with

Page 59

[1]     Commonwealth v. John In
[2] crimes is not evidence against him.  The
[3] evidence will unfold here in this
[4] courtroom for the edification of you,
[5] ladies and gentlemen of the jury.
[6]     Furthermore, the defendant in this
[7] case is presumed innocent throughout the
[8] trial and that presumption continues
[9] unless and until the Commonwealth proves
[10] his guilt beyond a reasonable doubt.  So
[11] the defendant has no burden to prove that
[12] he is not guilty.  Instead, it is the
[13] Commonwealth that has the burden of
[14] proving each and every element of the
[15] crimes charged and that the defendant is
[16] guilty of those crimes beyond a reasonable
[17] doubt.
[18]     Finally, ladies and gentlemen, the
[19] defendant in a criminal case has a right
[20] of silence at trial.  You may not hold it
[21] against this defendant should he exercise
[22] his right of silence and not testify at
[23] this trial.
[24]     Now, ladies and gentlemen of the jury,
[25] you are about to perform one of the most

Page 60

[1]     Commonwealth v. John In
[2] **serious duties of citizenship**:  You are
[3] you are going to decide whether the
[4] defendant is or is not guilty of the
[5] crimes charged against him by the
[6] Commonwealth of Pennsylvania.
[7]     The way that you jurors perform your
[8] duty as a jury is as important to the
[9] administration of justice as the way that
[10] I perform my duty as judge, the way Miss
[11] Baraldi performs her duty as prosecutor,
[12] and the way Mr. Giuliani performs his duty
[13] as defense counsel.  So, please, members
[14] of the jury, pay close attention to
[15] everything that is said and done in this
[16] courtroom so that you jurors can well
[17] perform your duties.
[18]     I'm going to describe for you in a
[19] general way what will take place during
[20] the course of this trial.  First of all,
[21] at the conclusion of these instructions,
[22] the assistant district attorney, Miss
[23] Baraldi, will make her opening statement
[24] to you in which she will outline for you
[25] the Commonwealth's case against the

Page 61

[1]     Commonwealth v. John In
[2] defendant.  The defense attorney may make
[3] an opening statement either immediately
[4] following the remarks of the prosecutor or
[5] later in the trial.  Thereafter, the
[6] Commonwealth of Pennsylvania attorney will
[7] commence the presentation of evidence.
[8] She may call witnesses to testify and if
[9] appropriate offer exhibits, physical items
[10] and the like.  Counsel for the defendant,
[11] Mr. Giuliani, has a right to cross-examine
[12] any witness called by the assistant
[13] district attorney in order to test the
[14] truthfulness and other accuracy of the
[15] evidence or testimony.
[16]     After the assistant district attorney
[17] has concluded presentation of the
[18] Commonwealth's case, defense counsel may
[19] present evidence for the defendant.  But
[20] you must remember that the defendant has
[21] no obligation to offer evidence or to
[22] testify himself.  The assistant district
[23] attorney, of course, has the right to
[24] cross-examine any witness that might be
[25] called by the defense.  After all the

Page 62

[1]     Commonwealth v. John In
[2] evidence has been presented, the attorneys
[3] for both sides will then have opportunity
[4] to make their closing arguments to you.  I
[5] will give you my final charge which will
[6] include instructions on the rules of law
[7] that apply to this case and whatever
[8] additional guidance I think you will need
[9] for your deliberations.  You will then
[10] retire to the jury room to deliberate and
[11] to decide what your verdicts will be in
[12] this case.
[13]     Jurors, under our system of criminal
[14] justice, it is my responsibility during
[15] this trial to decide all questions of law.
[16] And you must on your sacred oath both
[17] accept and follow my rulings with regard
[18] to the law whether or not you agree with
[19] them.  You should remember, jurors, that I
[20] am not the judge of the facts in this
[21] case.  So it is not for me to decide what
[22] the facts are concerning the charges
[23] against this defendant.  You, jurors, are
[24] the only judges of the facts.  So it will
[25] be your responsibility at the end of  this

Page 63

[1]     Commonwealth v. John In
[2] trial when you deliberate to evaluate the
[3] evidence and to decide from that evidence
[4] what the facts are.  You will then apply
[5] the rules of law which I shall give you to
[6] those facts and then determine whether the
[7] Commonwealth has or has not proven the
[8] defendant's guilt beyond a reasonable
[9] doubt.
[10]     In order to decide the facts of this
[11] case, you will be called upon to judge
[12] credibility, to pass upon the weight and
[13] effect of testimony and any other
[14] witnesses called and any other evidence
[15] presented in the case.  Again, by
[16] credibility I mean truthfulness and
[17] accuracy.  When you judge credibility you
[18] will determine whether you believe some or
[19] all of the witness' testimony.  You will
[20] also determine how important that
[21] testimony is to the resolution of the
[22] issues before you.  Please, ladies and
[23] gentlemen, use your understanding of human
[24] nature and your own common sense to this
[25] end.  Observe witnesses as they testify.

Page 64

[1]     Commonwealth v. John In
[2] Be alert to anything in their testimony
[3] and their behavior generally which will
[4] assist you in deciding whether you believe
[5] some, all, or none of his or her
[6] testimony.
[7]     Members of the jury, you have been
[8] distributed note pads and pens which were
[9] placed under your chair.  In the event you
[10] wish to take notes during the trial, you
[11] are under no obligation to take notes so
[12] it is entirely up to each of you whether
[13] you wish to take notes to help you
[14] remember what witnesses said and to use
[15] during your deliberations.  You may not,
[16] of course, access those note pads until
[17] the testimony commences.  If you do not
[18] take notes remember -- strike that.
[19] Remember that one of your responsibilities
[20] as a juror is to observe the demeanor of
[21] witnesses to help you assess their
[22] credibility.  So do not become so involved
[23] with note taking that it interferes with
[24] your ability to observe a witness or to
[25] distract you from hearing the questions

Page 65

[1]    Commonwealth v. John In
[2] asked of the witness and the answer
[3] provided by the witness.  Your notes may
[4] help you refresh your recollection of the
[5] testimony and should be treated as a
[6] supplement to rather than a substitute for
[7] your memory.  Your notes are only to be
[8] used by you as memory aids and should not
[9] take precedent over your independent
[10] recollection of the evidence.  Those of
[11] you who do not take notes should not be
[12] influenced by the notes of other jurors.
[13] It is just as easy to write something down
[14] incorrectly as it is to remember it
[15] incorrectly.  Your fellow juror has no
[16] greater weight than each juror's
[17] independent recollection.  Although you
[18] may refer to your notes during
[19] deliberations, give no more or no less
[20] weight to the view of a juror just because
[21] that juror did or did not take notes.
[22] Although you are permitted to use your
[23] notes for your deliberations, the only
[24] notes you may use are the notes you write
[25] in this courtroom during these proceedings

Page 66

[1]    Commonwealth v. John In
[2] on the materials which have been
[3] distributed to you by the staff.  Each
[4] time we adjourn your notes will be
[5] collected and secured by court staff.
[6] Your notes are completely confidential and
[7] neither I nor the attorneys nor any member
[8] of the court staff will ever read your
[9] notes, now or in the future.  In fact,
[10] after you have reached your verdict in
[11] this case, your notes will be destroyed
[12] immediately by the court staff.
[13]    Ladies and gentlemen, we do have a
[14] court reporter who is taking down an
[15] official transcript of these proceedings.
[16] So if you should miss a question as it's
[17] asked or answer as given, please raise
[18] your hand immediately and we will read
[19] back whatever it is you may have just
[20] missed.
[21]    Each of you on your oath must keep an
[22] open mind throughout this trial.  You
[23] should avoid forming opinions about any
[24] disputed question until the trial is over
[25] and you commence deliberations.  So,

Page 67

[1]    Commonwealth v. John In
[2] jurors, do not talk with each other about
[3] the evidence or any matter relating to
[4] whether or not the defendant has or has
[5] not been proven guilty beyond a reasonable
[6] doubt until I send you to the jury room to
[7] deliberate upon your verdict.  The reason
[8] for that is clear.  Only then will you
[9] know what you need to know about both the
[10] evidence and the law in order to discuss
[11] the case fairly and intelligently.  When
[12] you deliberate on your verdict, the law
[13] allows you to consider only the evidence,
[14] arguments and instructions that were
[15] properly presented to you.  So you must
[16] avoid anything that might result or even
[17] appear to result in your being exposed to
[18] outside information or influence.
[19]    Specifically, jurors, do not discuss
[20] this case with anyone.  Don't discuss it
[21] with your friends, family members,
[22] business associates, employees.  Do not
[23] discuss the case with anyone.
[24]    Now, we do not expect there to be any
[25] media coverage of this case.

Page 68

[1]    Commonwealth v. John In
[2] Nevertheless, I give you the following
[3] **instruction**:  Please do not read, listen
[4] to or watch anything that might be in the
[5] media about this case.  Do not try to get
[6] information relevant to this case on your
[7] own.  Don't go to the scene.  Don't
[8] conduct your own investigation.  Don't do
[9] any research.  Don't try any experiment.
[10] Jurors, it's most important that the only
[11] information you have in the jury room when
[12] you deliberate on your verdict is the same
[13] information that we all saw and heard here
[14] together in this courtroom during the
[15] trial.  If you should be approached by
[16] someone, anyone, or if you should see or
[17] hear something you think you should not
[18] have seen or heard, please notify one of
[19] the court officers about it immediately
[20] and he will bring it to my attention and I
[21] will in the presence of these two
[22] attorneys question you about the matter.
[23] If you think you saw or heard something
[24] you should not have heard or seen, don't
[25] go back to the jury room and tell your

Page 69

[1]     Commonwealth v. John In
[2] fellow jurors what it is you saw or heard.
[3] Because if after we question you it
[4] becomes necessary to excuse you, hopefully
[5] we can proceed with this case in your
[6] absence without having to start all over
[7] again.
[8]     Statements made by the attorneys,
[9] ladies and gentlemen, do not constitute
[10] evidence.  Those statements are not
[11] binding upon you.  In fact, the questions
[12] which the attorneys ask of the witnesses
[13] are not themselves evidence.  Rather, it
[14] is the witness's answer which provides the
[15] evidence for your consideration.
[16] Sometimes there will be objections.  One
[17] attorney will object to a question asked
[18] by the other attorney.  If I overrule that
[19] objection, then you may consider the
[20] answer to the question.  On the other
[21] hand, if I sustain the objection to a
[22] question, I will not allow an answer to be
[23] given and if one has already be given, I
[24] will most likely direct you to disregard
[25] it.  You must do so.

Page 70

[1]     Commonwealth v. John In
[2]     It is possible, ladies and gentlemen,
[3] that I might question a witness myself.
[4] Any such question will not reflect and it
[5] is not intended to reflect any opinion on
[6] my part about this case, the evidence or
[7] that witness.  The only purpose of which I
[8] would make an inquiry of a witness would
[9] be to clarify a matter for you.
[10]     Ladies and gentlemen of the jury, from
[11] time to time the attorneys and I may to
[12] take up matters outside of your presence.
[13] Please don't speculate as to why we do
[14] this. I'll tell you now.  The only reason
[15] I take up matters outside the presence of
[16] the jury at side-bar, as it's called, is
[17] to ensure you, ladies and gentlemen,
[18] receive evidence in a fair and impartial
[19] manner.  When we have the side-bars, they
[20] will be conducted in one of three ways:
[21] Either I will call the attorneys to the
[22] bench to my right side or left side, or
[23] take them into the robing room outside of
[24] your presence.   Or if the matter appears
[25] to be one which will consume some time I

Page 71

[1]     Commonwealth v. John In
[2] will invite you jurors to go in the
[3] deliberation room so you can be
[4] comfortable and the attorneys and I can
[5] take up the matter here in open court.
[6]     Jurors, there are certain persons with
[7] whom you should have absolutely no
[8] contact.  You should have no contact with
[9] the defendant, the defense attorney, the
[10] Commonwealth's attorney, any and all
[11] witnesses in the case, nor may you have
[12] any contact with this judge.  If for
[13] whatever reason you wish to contact me or
[14] bring something to my attention, you must
[15] first bring the matter to the attention of
[16] a court officer.  He or she will bring it
[17] to my attention and then I will address
[18] your concern in the presence of these two
[19] attorneys.
[20]     You have no doubt discovered given the
[21] architecture of this building it is
[22] possible that you will encounter perhaps
[23] in the corridor one or both of the
[24] attorneys in this case and you will
[25] observe they will not engage you.  Please

Page 72

[1]     Commonwealth v. John In
[2] don't hold it against them.  They're not
[3] being rude.  They understand the need to
[4] avoid even the appearance of impropriety.
[5]     It is important that you appreciate
[6] that we take seriously your comfort.  If
[7] at any time during the course of this
[8] trial, you need a break immediately, you
[9] need to stand, you need to stretch, you
[10] need water, you need a tissue, you need to
[11] visit the facilities, do not hesitate to
[12] raise your hand.  We will make every
[13] effort to accommodate you.
[14]     Now that concludes these preliminary
[15] instructions and I instruct you to listen
[16] carefully and that you follow the
[17] instructions to the letter.
[18]     What will happen next is that the
[19] attorneys will make their opening
[20] speeches.  Thereafter, the evidence will
[21] commence.  After the attorneys have
[22] concluded their evidence, you may, if you
[23] wish, to take notes, access your notes
[24] from under the chair and take notes.
[25]     At this juncture I will turn to the

Page 73

[1]    Commonwealth v. John In
[2] attorneys.  Miss Baraldi, are you ready to
[3] address the jury?
[4]    **MS. BARALDI**: Yes.  Thank you, your
[5] Honor.
[6]                    -  -  -
[7]    (Opening statements commence -- NOT
[8]        TRANSCRIBED)
[9]                    - - -
[10]    **THE COURT**: Thank you, Mr. Giuliani.
[11] Miss Baraldi, you may call your first
[12] witness.
[13]    **MS. BARALDI**: Thank you.  At this time
[14] the Commonwealth calls Christina Khem.
[15]    **THE CRIER**: State your full name and
[16] spell your last name.
[17]    **THE WITNESS**: Christina Khem,
[18] K-h-e-m.  C-h-r-i-s-t-i-n-a.
[19]                    -  -  -
[20]    CHRISTINA KHEM, after having been first
[21] duly sworn, was examined and testified as
[22] **follows**:
[23]                    - - -
[24]    DIRECT EXAMINATION
[25]                    - - -

Page 74

[1]    Commonwealth v. John In
[2]    **THE COURT**:  You may proceed.
[3]    **MS. BARALDI**: Thank you, your Honor.
[4] **BY MS. BARALDI**:
[5] **Q.**    Good afternoon, Chris.
[6] **A.**    Good afternoon.
[7] **Q.**    How you doing?
[8] **A.**    Fine.
[9] **Q.**    I'm going to ask that you keep your voice up
[10] so everybody can hear you and the court reporter has
[11] to take down everything you are saying.
[12] **A.**    Okay.
[13] **Q.**    Pull the microphone a little bit closer to
[14] you.  Chris, I want to take you back to March 7,
[15] 2007.  At that time where did you live?
[16] **A.**    720 Mifflin Street.
[17] **Q.**    That's here in Philadelphia?
[18] **A.**    Yes.
[19] **Q.**    Who did you live with?
[20] **A.**    My dad, my sisters and my little brother.
[21] **Q.**    What is your dad's name?
[22] **A.**    Vuthary Yun.
[23] **Q.**    What are your two sisters' names?
[24] **A.**    Dina Khem and Angela Khem.
[25] **Q.**    Your brother?

Page 75

[1]    Commonwealth v. John In
[2] **A.**    Keith Khem.
[3] **Q.**    About a year and a half ago, how old were you
[4] back then?
[5] **A.**    Sixteen.
[6] **Q.**    5 o'clock in the morning.  Where were you?
[7] **A.**    In my bed sleeping.
[8] **Q.**    Your house at 720 Mifflin Street is a typical
[9] Philadelphia row home, is that correct?
[10] **A.**    Yes.
[11] **Q.**    How many floors is it?
[12] **A.**    It's two.
[13] **Q.**    Where was your bedroom located?
[14] **A.**    On the second floor.
[15] **Q.**    How many bedrooms on the second floor?
[16] **A.**    Three.
[17] **Q.**    Of those three, where was your situated?
[18] **A.**    Middle.
[19] **Q.**    Was anybody sleeping in the room with you?
[20] **A.**    No.
[21] **Q.**    What woke you up?
[22] **A.**    I was asleep and then two men came into my
[23] room.  So I woke up.  And then I just saw two men in
[24] front of me.  I thought I was dreaming.  I went back
[25] to sleep.  And then one of the guys told me to wake

Page 76

[1]    Commonwealth v. John In
[2] up.  Get up.  Be quiet.
[3] **Q.**    Now, is there anything you can tell us about
[4] those two guys?  What were they wearing?
[5] **A.**    One of them had a green sweatshirt on and the
[6] other one had a blue Adidas sweatshirt on.
[7] **Q.**    Any other further description other than green
[8] sweatshirt?
[9] **A.**    Uh-uh.
[10] **Q.**    Can you tell me their race?
[11] **A.**    Black.
[12] **Q.**    Which was taller of the two?
[13] **A.**    The green sweatshirt.
[14] **Q.**    Is that the one that spoke to you?
[15] **A.**    Yes.
[16] **Q.**    Did you, at this point did you see anything in
[17] their hands?
[18] **A.**    No.
[19] **Q.**    After he tells you to get up, what do you do?
[20] **A.**    I got up.  I was still sitting in bed.  Sat
[21] up.
[22] **Q.**    I see you are wearing glasses today.  Did you
[23] wear glasses back then?
[24] **A.**    No.
[25] **Q.**    Did you have a prescription for glasses a year

Page 77

[1]    Commonwealth v. John In
[2] and a half ago?
[3] **A.**   Yes.
[4] **Q.**   At this time did you have glasses on?
[5] **A.**   No.
[6] **Q.**   What happened?  Did you reach for your
[7] glasses?
[8] **A.**   No.  The green sweatshirt guy, he takes my
[9] jewelry off my pillow I lay it on.
[10] **Q.**   Did he ask for your jewelry?
[11] **A.**   Yes.
[12] **Q.**   What did you take off specifically?
[13] **A.**   I took off my rings and my charm bracelet and
[14] that's it.
[15] **Q.**   You put them on a pillow next to you?
[16] **A.**   Yes.
[17] **Q.**   Which of the two men grabbed the jewelry?
[18] **A.**   Green sweatshirt.
[19] **Q.**   Who is closer to you?
[20] **A.**   I would say both had the same distance.  Close
[21] to me.
[22] **Q.**   After the man in the green sweatshirt takes
[23] your jewelry, what happened next?
[24] **A.**   He goes into my dad's room.  It's connected to
[25] my room.

Page 78

[1]    Commonwealth v. John In
[2] **Q.**   This would be towards the front of the house
[3] on Mifflin Street?
[4] **A.**   Yes.
[5] **Q.**   If I understand you correctly, the two rooms
[6] are connected; he doesn't have to go into a hallway?
[7] **A.**   No.
[8] **Q.**   Was anyone in your father's room?
[9] **A.**   My brother.  He was sleeping on the bed.
[10] **Q.**   How old was your brother back then?
[11] **A.**   I think he was 11.
[12] **Q.**   This is your brother Keith?
[13] **A.**   Yes.
[14] **Q.**   The man in the green sweatshirt took your
[15] jewelry, goes into your's father bedroom?
[16] **A.**   Yes.
[17] **Q.**   What about the guy in the blue Adidas
[18] sweatshirt?
[19] **A.**   He stood there and watched me and saw I didn't
[20] have my glasses on.  I was like:  Can I put on my
[21] glasses?  And then he thought about it a little bit.
[22] He was like, no.  I just sat up there.  He looked at
[23] me.  Then he walked forward to go into my dad's room
[24] but then the green sweatshirt guy told him, tells me
[25] to go there too.  Then I follow him into my dad's

Page 79

[1]    Commonwealth v. John In
[2] room and then he asked me where the money and
[3] jewelry's at.
[4] **Q.**   Who asked you?
[5] **A.**   The green sweatshirt guy.
[6] **Q.**   What did you say, anything?
[7] **A.**   I said, I don't have any.  I don't have any.
[8] That's what I told him.
[9] **Q.**   Your brother Keith is still asleep at this
[10] point?
[11] **A.**   Yes.
[12] **Q.**   What happened next?
[13] **A.**   And then he opened my dad's closet doors.
[14] **Q.**   When you say "he," who?
[15] **A.**   Green sweatshirt.  And then he opens my dad's
[16] closet doors and he said:  Where's the money and
[17] jewelry at?  I was like, we don't have any.  I don't
[18] know.  We don't have any.  He said, well, you
[19] better tell me something or your dad's going to die.
[20] That's what he said to me.  Afterwards we heard
[21] something from downstairs and it was the police
[22] **calling up.  He said**: Did somebody call the cops?
[23] And so one of the guys they ran into the hallway and
[24] they said no, nobody called the cops.
[25] **Q.**   Which guy said this?

Page 80

[1]    Commonwealth v. John In
[2] **A.**   I'm not sure.
[3] **Q.**   Where are you?
[4] **A.**   I'm still in the room.
[5] **Q.**   That's where?  In your father's room?
[6] **A.**   Yes.
[7] **Q.**   One of the two men run out and respond to the
[8] police saying no one called the police?
[9] **A.**   Yes.
[10] **Q.**   What happened?
[11] **A.**   And then I was near the doorway, the doorway
[12] that's connected to the doorway.  Two doorway's in
[13] my dad's room.  One's connected to my room and the
[14] hallway.  Then I was like right next to that
[15] doorway.  The green sweatshirt guy, he came over and
[16] he put the knife next to my waist.
[17] **Q.**   There was a knife?
[18] **A.**   A gun.  Next to my waist.  And then he said,
[19] don't say nothing.  He covered my mouth.  He had
[20] latex gloves on.  Yeah.
[21] **Q.**   Did you get a look at the gun?
[22] **A.**   No.
[23] **Q.**   Was that the first time you had seen the gun?
[24] **A.**   Yes.
[25] **Q.**   How did you know it was a gun?

[1]    Commonwealth v. John In

[2]  **A.**    When he put it to me, I could see a glance.
[3] It's like a slight glance at it.  I could tell it
[4] was a gun.
[5]  **Q.**    He put it to -- you're pointing to your right
[6] side?
[7]  **A.**    Yes, the right side.
[8]  **Q.**    He put his hands over your mouth?
[9]  **A.**    Yes.
[10]  **Q.**    At this point the police are still upstairs?
[11]  **A.**    Yes.
[12]  **Q.**    What happens next?
[13]  **A.    The police say**:  Did anybody call the cops?
[14] And then after they said no, nobody called the cops,
[15] the police asked us again.  Keeps asking.  And then
[16] eventually he says, the police officer was a female
[17] voice.  She says we got a call from the basement and
[18] somebody call for the cops.  And then he ran out
[19] into the hallway to the back room.
[20]  **Q.**    Which "he"?
[21]  **A.**    The green sweatshirt guy.  So he released me
[22] and then afterwards after he went into the back
[23] room.  I ran downstairs and there was a group of
[24] cops right at my front door and then they were like
[25] inside my living room and so I ran into the group of

[1]    Commonwealth v. John In

[2]  **police.  I was like**:  Help me.  And they were like
[3] where are the, where are they.  I, I pointed
[4] upstairs and I said the back room.  They went to the
[5] back room and then I guess he wasn't there.  They
[6] came back downstairs, went towards my kitchen, which
[7] leads to the backyard.  And they open the door.  It
[8] was a whole bunch of chaos with police and stuff.
[9]  **Q.**    After you come downstairs you are in the
[10] living room.  Which of your family is in the living
[11] with you?
[12]  **A.**    Angela.  Sleeping on couch.
[13]  **Q.**    This is your sister?
[14]  **A.**    Yes.
[15]  **Q.**    How old is she?
[16]  **A.**    She was 15 I believe at the time.
[17]  **Q.**    So you are in your living room with Angela as
[18] police someone upstairs and other officer runs to
[19] the back?
[20]  **A.**    Yes.
[21]  **Q.**    What happens next?
[22]  **A.**    After the police go to the backyard, I see a
[23] guy in a, dressed in dark clothing run past me.  I
[24] thought it was a cop, so it didn't really bother me.
[25]  **Q.**    Did the person in the dark clothing say

[1]    Commonwealth v. John In

[2] anything to you?
[3]  **A.**    As soon as he reached the shoe place, oh shit,
[4] what's happening.  He ran out the house.  I thought
[5] it was a cop.
[6]  **Q.**    Were all the police officers that were there
[7] in uniform at that time?
[8]  **A.**    Yes.
[9]  **Q.**    This person did not have a uniform on?
[10]  **A.**    No.
[11]  **Q.**    Other than dark clothing, any further
[12] description?
[13]  **A.**    No.  His head was covered though.
[14]  **Q.**    Covered with what?
[15]  **A.**    A hood or something.
[16]  **Q.**    Do you remember if anything covered that
[17] person's face?
[18]  **A.**    I don't remember.
[19]  **Q.**    Can you give me any approximate height or
[20] description further than dark clothing?
[21]  **A.**    No.  But he was tall.
[22]  **Q.**    You know it was a male?
[23]  **A.**    Yes.
[24]  **Q.**    At the point you had this interaction with
[25] that male, where are you in the room?

[1]    Commonwealth v. John In

[2]  **A.**    Standing at the doorway next to my shoe place
[3] like possibly for you to walk out.
[4]  **Q.**    This is your front door of your house?
[5]  **A.**    It's like a front door which is a gated door.
[6] And then it's a white door and it's leading out and
[7] then a wooden door, second door and then another
[8] door.
[9]  **Q.**    You have a small vestibule in your house?
[10]  **A.**    Yes.
[11]  **Q.**    There is probably a space how big between
[12] those two doors?
[13]  **A.**    About you could see like a yard and a foot.
[14]  **Q.**    At this time you are standing by the front
[15] interior door to the vestibule?  Is that fair to
[16] say?
[17]  **A.**    By front interior, what do you mean?
[18]  **Q.**    Inside your house?
[19]  **A.**    Yeah.
[20]  **Q.**    If anyone was to walk out that door they would
[21] be in the vestibule area to leave your house, is
[22] that fair?
[23]  **A.**    Yeah.
[24]  **Q.**    A person runs by you?
[25]  **A.**    Yeah.

Page 85

[1]    Commonwealth v. John In
[2] **Q.**   And says, oh, shit, what is going on, and then
[3] leaves?
[4] **A.**   Yeah.  As he's running.
[5] **Q.**   Now, your jewelry, did you get your jewelry
[6] back?
[7] **A.**   No.
[8] **Q.**   Did you ever go look for it?
[9] **A.**   Yeah.  I went to the backyard to look for it.
[10] I figured maybe he might have tossed it out.  I
[11] couldn't find it.  It was snowing that day.
[12] **Q.**   Other than jewelry was anything else of yours
[13] taken?
[14] **A.**   No.
[15]    **MS. BARALDI**:  If I could have the
[16] court's indulgence for a minute.
[17]    **THE COURT**: Yes.
[18]    **MS. BARALDI**:  Thank you, Chris.  I
[19] don't have any further questions.
[20]    **THE COURT**: Cross-examine.
[21]       - - -
[22]       CROSS-EXAMINATION
[23]       - - -
[24] **MR. GIULIANI**:
[25] **Q.**   Thank you, your Honor.  Good afternoon, Miss

Page 86

[1]    Commonwealth v. John In
[2] Khem.
[3] **A.**   Good afternoon.
[4] **Q.**   I have a couple questions for you.  You
[5] yourself are upstairs when this happens?
[6] **A.**   Yes.
[7] **Q.**   Two guys you describe.  One with a green
[8] sweatshirt?
[9] **A.**   Yes.
[10] **Q.**   One with a blue one?
[11] **A.**   Yes.
[12] **Q.**   As far as you can recall, the blue sweatshirt
[13] guy you didn't see any latex gloves on his hands?
[14] **A.**   His hands were in his pockets.
[15] **Q.**   The green sweatshirt guy didn't have latex
[16] gloves on?
[17] **A.**   Yeah.  When he covered my mouth, I saw that.
[18] **Q.**   You felt it when it touched your mouth?
[19] **A.**   I can see it.  It was like this.
[20] **Q.**   You told the jury about what they said to you.
[21] At some point when the green sweatshirt guy releases
[22] you after the police came, you ran down your steps?
[23] **A.**   Yes.
[24] **Q.**   When you ran down the steps, do you recall how
[25] many police officers you saw inside your home, if

Page 87

[1]    Commonwealth v. John In
[2] you can?
[3] **A.**   No.  A group of them.
[4] **Q.**   You are testifying very clearly.  It was very
[5] scary, wasn't it?
[6] **A.**   Yes.
[7] **Q.**   You were frightened?
[8] **A.**   Yes.
[9] **Q.**   You saw a group of police officers in your
[10] home?
[11] **A.**   Uh-huh.
[12] **Q.**   Did you see one or more up the steps after
[13] you ran down?
[14] **A.**   Yeah.  I think a few of them ran up the steps.
[15] **Q.**   When you came down to the ground floor, I
[16] think you testified your younger sister is asleep on
[17] the couch in the front?
[18] **A.**   Yes.
[19] **Q.**   Did you see your father at this point in time?
[20] **A.**   No.
[21] **Q.**   Did you have any idea at that point in time
[22] where he was?
[23] **A.**   No.
[24] **Q.**   At that point in time did you have any idea
[25] whether he or other people were in the basement?

Page 88

[1]    Commonwealth v. John In
[2] **A.**   No.
[3] **Q.**   You said you saw a group of officers run
[4] upstairs?
[5] **A.**   Yes.
[6] **Q.**   Did you see one or more of the officers stay
[7] on the first floor?
[8] **A.**   Yeah.  They with me.
[9] **Q.**   Where did they go immediately afterward?
[10] **A.**   After the group ran upstairs a few of them
[11] came back down.  The rest of them ran to the back.
[12] I was just standing thereby myself.
[13] **Q.**   When you say ran to the back.  The home what I
[14] call a typical Philadelphia row home, walk in, a
[15] living room there?
[16] **A.**   Yes.
[17] **Q.**   And then eventually the living room like a
[18] separation, turn into the kitchen?
[19] **A.**   It's connected to each other.  It's like the
[20] living room when you walk in living room TV on this
[21] side and then when you walk in like a cabinet there
[22] and then a open section where you can walk through
[23] to the kitchen.  No door.  No nothing.
[24] **Q.**   It's kind of like a separate room, kitchen and
[25] living room?

Page 89

[1]    Commonwealth v. John In
[2] **A.**  I guess you can say that.
[3] **Q.**  If you go to the kitchen going towards of back
[4] of the house?
[5] **A.**  Yes.
[6] **Q.**  Is there a back door to go from the kitchen
[7] out to your yard?
[8] **A.**  Yes.
[9] **Q.**  That's directly from the kitchen?
[10] **A.**  Yes.
[11] **Q.**  Is there also opening for stairwell to go down
[12] to your basement?
[13] **A.**  Yes.
[14] **Q.**  Between kitchen and dining room or kitchen and
[15] living room area?
[16] **A.**  It's in the kitchen actually because of the
[17] door of the basement when you walk into the kitchen
[18] if you turn left and walk you can open the door and
[19] walk down.
[20] **Q.**  Is it fair to say that to go out from the
[21] kitchen, it's the only back door in the home?
[22] **A.**  Yes.
[23] **Q.**  If you go out the back door then a smaller
[24] yard, fence around it?
[25] **A.**  Yes.

Page 90

[1]    Commonwealth v. John In
[2] **Q.**  When the officer ran towards the back, they
[3] entered the kitchen that you saw?
[4] **A.**  Yes.
[5] **Q.**  They went out that back door?
[6] **A.**  Yes.
[7] **Q.**  None of them at this point in time you saw
[8] went down to the basement?
[9] **A.**  No.
[10] **Q.**  When they went out the door, you there by
[11] yourself?
[12] **A.**  Yes.
[13] **Q.**  Then you say -- this is important.  I'm
[14] talking about this other person, this guy ran past
[15] you?
[16] **A.**  Yes.
[17] **Q.**  Did you see where he came from?
[18] **A.**  He came from the kitchen.
[19] **Q.**  Was he in the kitchen when the officers went
[20] through the kitchen to the back door?
[21] **A.**  No.
[22] **Q.**  Do you know whether or not he came up from the
[23] basement?
[24] **A.**  No.  But I saw just running from the direction
[25] of the kitchen.  That's it.

Page 91

[1]    Commonwealth v. John In
[2] **Q.**  Fair enough.  I think you said that he ran
[3] past you and said oh shit?
[4] **A.**  Yes.  Oh shit.  What's happening.
[5] **Q.**  You didn't get really any kind of look at him
[6] except dark clothes and tall?
[7] **A.**  Yes.
[8] **Q.**  What is your height today?
[9] **A.**  Five-four.
[10] **Q.**  Back in March of 2007 were you approximately
[11] the same height?
[12] **A.**  Yes.
[13] **Q.**  When you say the guy was tall, Would you say
[14] he was kind of tall like me, about my height, if you
[15] can remember?  If you can remember.
[16] **A.**  I actually don't remember.
[17] **Q.**  You do know he was taller than you?
[18] **A.**  Yes.  Slightly.
[19] **Q.**  Now, after this was all done, there came a
[20] point in time when the police actually took you to a
[21] location maybe a block, a block and a half away,
[22] asked you to look at a couple people?
[23] **A.**  Yes.
[24] **Q.**  When they took you to the location, 6th and
[25] Mifflin?

Page 92

[1]    Commonwealth v. John In
[2] **A.**  I don't remember.
[3] **Q.**  You know it was within a couple blocks?
[4] **A.**  Yes.
[5] **Q.**  You were taken to a location.  They showed you
[6] two individuals, two males?
[7] **A.**  Yes.
[8] **Q.**  When you looked at those two males, where were
[9] the males, inside the back of police wagon?
[10] **A.**  Yes.
[11] **Q.**  They open the door.  The officers said we want
[12] you to look at these two males.  Tell us if you can
[13] identify them?
[14] **A.**  Yes.
[15] **Q.**  They told you, they told you before you got
[16] there before they showed the males to you, right,
[17] they said, we want you to look at people, tell us if
[18] any of these guys you recognize from inside the
[19] house?
[20] **A.**  Actually I don't remember.
[21] **Q.**  You do remember looking at the males?
[22] **A.**  Yes.
[23] **Q.**  You looked at them and is it fair to say that
[24] the people you looked at you couldn't recognize?
[25] **A.**  I didn't identify them cause I couldn't

Page 93

[1]     Commonwealth v. John In
[2] recognize.
[3] **Q.**    In fact, you gave a written statement to the
[4] police later that morning, a couple hours later?
[5] **A.**    Yes.
[6] **Q.**    You sat down with detective division and they
[7] asked you questions right?
[8] **A.**    Yes.
[9] **Q.**    The detective I believe was sitting there at a
[10] computer typing up questions answers?
[11] **A.**    Yes.
[12] **Q.**    Showed you the statement afterwards.  You had
[13] a chance to sign it?
[14] **A.**    Yes.
[15] **Q.**    I want to ask if you remember this following
[16] question and answer.  Question 11 page 2.  The
[17] **question was**: Did you ever see any of these males
[18] again after the police arrived?  And your answer was
[19] **the following**:  The police took us to see if we knew
[20] any of the males they had.  The guy who was wearing
[21] the green sweatshirt was sitting in the back of the
[22] police van with another guy who I never saw.
[23] **A.**    Yes.
[24] **Q.**    You understand that?
[25] **A.**    Yes.

Page 94

[1]     Commonwealth v. John In
[2] **Q.**    The guy as you sit there today, the guy who
[3] was in the back -- there were two males in the back,
[4] one you know was the green sweatshirt guy?
[5] **A.**    Yes.
[6] **Q.**    Although when he was in the back of that
[7] police van he was not wearing a green sweatshirt?
[8] **A.**    No.
[9] **Q.**    You know that's him, that's the green
[10] sweatshirt guy?
[11] **A.**    The reason I know it's him, the police officer
[12] told me that the green sweatshirt was taken off of
[13] him.  That's why they had the green sweatshirt in
[14] the wagon in the back when he was just sitting
[15] there.  They told me it came off of him.
[16] **Q.**    The other guy that says, that you say you
[17] never saw before?
[18] **A.**    I never saw before.
[19] **Q.**    As you sit here today, Miss Khem, the other
[20] guy in the back of the van who they asked you to
[21] look at who you are telling the jury you never saw
[22] before, you told the police you never saw before,
[23] that is John In, this man sitting to my right?
[24] **A.**    Repeat your question.
[25] **Q.**    The two people in the back of the van, one of

Page 95

[1]     Commonwealth v. John In
[2] whom you identify as being the green sweatshirt guy
[3] you told we?
[4] **A.**    Yes.
[5] **Q.**    Let's be clear.  The green sweatshirt guy is
[6] not him?
[7] **A.**    No.
[8] **Q.**    The other person when you look at him, not the
[9] green sweatshirt, the other person in the back of
[10] the van, you look at him and you had never seen that
[11] guy before?
[12] **A.**    Yes.
[13] **Q.**    That other person who you never saw before in
[14] the back of that van that morning, that is John In,
[15] is it not?
[16] **A.**    Yes.
[17] **Q.**    The man you saw run out the front door  --
[18] **A.**    Yes.
[19] **Q.**    -- he would have to have run through a
[20] vestibule that Miss Baraldi talked about that leads
[21] out front?
[22] **A.**    Yes.
[23] **Q.**    Thank you, Miss Khem.  No further questions.
[24]     **THE COURT**: Any redirect?
[25]     **MS. BARALDI**:  I do not.

Page 96

[1]     Commonwealth v. John In
[2]     **THE COURT**:  Thank you, ma'am.  You may
[3] step down.
[4]                    -  -  -
[5]        (witness steps down)
[6]                    -  -  -
[7]     **THE COURT**:  Ladies and gentlemen, it's
[8] coming up on 12:30.  I think we will take
[9] our lunch recess now, have an hour for
[10] lunch.  If you would please re-assemble
[11] on the second floor at, let's say, 1:35.
[12] We can start promptly thereafter.  Enjoy
[13] your lunch.
[14]                    -  -  -
[15]        Jury leaves the box at approximately
[16] 12:25 ).
[17]                    -  -  -
[18]        (luncheon recess)
[19]                    -  -  -
[20]        (afternoon session)
[21]                    -  -  -
[22]     **THE COURT**:  We're back on the record
[23] in the case of Commonwealth versus In.
[24] Mr. In is here with his attorney, Mr.
[25] Giuliani.  Miss Baraldi for the

[1]    Commonwealth v. John In
[2] Commonwealth.  Miss Baraldi, who will the
[3] next witness be?
[4]    **MS. BARALDI**:  Vuthary Yun.
[5]    **THE COURT**:  Will you be using the
[6] interpreter in that case?
[7]    **MS. BARALDI**:  Yes, your Honor.
[8]    **THE COURT**:  What is the language that
[9] your witness speaks?
[10]    **MS. BARALDI**:  Cambodian.
[11]    **THE COURT**:  Mr. Giuliani, we will be
[12] using an official Cambodian court
[13] interpreter.  Do you anticipate voir dire?
[14]    **MR. GIULIANI**:  No, your Honor.
[15]    **THE COURT**:  Sir, would you tell us
[16] your name.
[17]    **INTERPRETER**: Daniel Kao, K-a-o.
[18]    **THE COURT**:  When we come back, once
[19] the jury is brought in, we'll give him the
[20] interpreter's oath and then we will have
[21] him assist in swearing the witness.
[22]    Sir, one of the things I wanted to
[23] bring to your attention is sometimes a
[24] witness has been in the country for a
[25] while and speaks some English.  So before

[1]    Commonwealth v. John In
[2] we get started, I'm going to tell Miss
[3] Baraldi to instruct her client not to
[4] attempt to answer in English but to allow
[5] the process to go as follows:  She will
[6] ask a question in English.  You will then
[7] translate that question for the witness
[8] in Cambodian.  He will answer in
[9] Cambodian.  You will then answer as his
[10] answer was in English for the edification
[11] of the jury, the court and the lawyers, as
[12] well as the defendant.  Is that how you
[13] normally do it?
[14]    **THE INTERPRETER**: Yes.
[15]    **THE COURT**:  Any questions or concerns?
[16]    **MR. GIULIANI**:  None, your Honor.
[17]    **THE COURT**:  You have no questions
[18] about the interpreter's qualifications?
[19]    **MR. GIULIANI**:  I do not, your Honor.
[20]    **THE COURT**:  All right.  That should be
[21] easy enough.
[22]        - - -
[23]    (jury in the box at approximately 1:50
[24]        p.m.)
[25]        - - -

[1]    Commonwealth v. John In
[2]    **THE COURT**:  Good afternoon, ladies
[3] and gentlemen.  You may be seated.
[4]    Miss Baraldi, you may call your next
[5] witness.
[6]    **MS. BARALDI**:  The Commonwealth calls
[7] Mr. Yun.
[8]    **THE COURT**:  Will you be using an
[9] interpreter?
[10]    **MS. BARALDI**:  Yes, your Honor.
[11]    **THE COURT**:  Ladies and gentlemen, the
[12] witness will be assisted by an
[13] interpreter.  So we will first swear in
[14] the interpreter and he will assist us
[15] thereafter.
[16]    **THE CRIER**:  State your full name and
[17] spell your last name.
[18]    **THE INTERPRETER**:  Daniel Kao.  K-a-o.
[19]        - - -
[20]        (interpreter sworn)
[21]        - - -
[22]    **THE CRIER**:  State your full name,
[23] spell your last name.
[24]    **THE WITNESS**:  Vuthary Yun.  Y-u-n.
[25]        - --

[1]    Commonwealth v. John In
[2] (Vuthary Yun, after having been first duly
[3] sworn through the interpreter, was
[4] examined and testified as follows:
[5]        - - -
[6]    DIRECT EXAMINATION
[7]        - - -
[8]    **THE COURT**:  Sir, would you instruct
[9] the witness that in the event that he
[10] understands some English to avoid
[11] answering what he thinks to be the
[12] question to allow the lawyer to put the
[13] question to him in English.  Then you will
[14] translate that question in Cambodian for
[15] the witness.  The witness will answer in
[16] Cambodian.  Then you will provide the
[17] jury, the court, lawyers and defendant
[18] with that answer in English.  Would you
[19] advise him of that?
[20]    **THE INTERPRETER**: Yes.
[21]    **THE COURT**:  Mr. Giuliani, do you have
[22] any questions of our interpreter?
[23]    **MR. GIULIANI**:  No, your Honor.
[24]    **THE COURT**:  The court certifies him as
[25] an official Cambodian court interpreter.

[1]    Commonwealth v. John In

[2] You may proceed.

[3] **BY MS. BARALDI**:

[4] **Q.**    Thank you, your Honor.  Good afternoon, Mr.

[5] Yun.  I would like to take you back to March 7, 2007

[6] at about 5 o'clock in the morning.  Were you at

[7] home?

[8] **A.**    I was at home.

[9] **Q.**    Is your home, was your home at that time

[10] located the address of 720 Mifflin street here in

[11] Philadelphia?

[12] **A.**    Yes.

[13] **Q.**    A about 5 o'clock that morning were you have

[14] in your kitchen?

[15] **A.**    Yes.

[16] **Q.**    Can you please tell the ladies and gentlemen

[17] of the jury what happened?

[18] **A.**    Do you want me to speak in English or

[19] Cambodian?

[20]    **MS. BARALDI**:  In Cambodian.

[21]    **THE WITNESS**:  While I was in the

[22] kitchen, someone pointing the gun on my

[23] head.  There was three people got into my

[24] house.  As soon I turn my face to them and

[25] then they point the gun to my head right

[1]    Commonwealth v. John In

[2] away.

[3] **BY MS. BARALDI**:

[4] **Q.**    Did you see these men enter your house?

[5] **A.**    Yes.  As soon I turn my face I saw them.

[6] Three of them.

[7] **Q.**    My question to you, did you see them come

[8] inside or were they already there when you first

[9] noticed them?

[10] **A.**    At that time I was doing dishes.  As soon I

[11] turn like this and then the gun right on my head.

[12] **Q.**    Did one of the men say anything to you?

[13] **A.**    The one who point the gun on my head told me

[14] to shut up.

[15] **Q.**    Can you give any description other than the

[16] fact there was three men?

[17] **A.**    They were wearing dark gray type of sweater

[18] with the hood on.

[19] **Q.**    After one of the men told you to shut up, what

[20] happened next?

[21] **A.**    At the same time while they were pointing the

[22] gun at my head, they pushing me to the basement.

[23] While I was on the way to the basement, after I got

[24] to the step of the basement they demand me to give

[25] them money.

[1]    Commonwealth v. John In

[2] **Q.**    How many of those men took you into the

[3] basement?

[4] **A.**    (In English)  only one took me to the

[5] basement.

[6]    **MS. BARALDI**:  Mr. Yun, I understand

[7] that you understand some English.  What I

[8] need you to do, I need to ask the question

[9] in English and the interpreter will

[10] interpret in Cambodian.  You will answer

[11] in Cambodian.  The interpreter will

[12] interpret in English.  I understand you

[13] understand some of what I'm saying.

[14] **BY MS. BARALDI**:

[15] **Q.**    So, one of the three men with guns took you

[16] into the basement.  You get down the steps to the

[17] floor.  What happens then?

[18] **A.**    While I was at the floor to the steps of the

[19] basement and they, one of them kept pointing the gun

[20] at my head.  And then he tie me up and then asking

[21] me more about jewelry and the cash.  And also tie my

[22] mouth also.

[23] **Q.**    How were you positioned in the basement?

[24] **A.**    (Indicating).

[25]    **THE COURT**:  Let the record reflect the

[1]    Commonwealth v. John In

[2] witness crouched on the floor to

[3] demonstrate to the jury the manner in

[4] which he was tied.  If you want to

[5] elaborate, go ahead.

[6]    **MS. BARALDI**:  I think that is

[7] sufficient, your Honor.

[8] **BY MS. BARALDI**:

[9] **Q.**    So your hands are tied behind your back?

[10] **A.**    Yes.  Just like this.

[11] **Q.**    You are crouching forward, your head is pretty

[12] much between your legs?

[13] **A.**    He said, shut the fuck up.  Tied me up.

[14] **Q.**    At this point in time, there is a gun pointed

[15] to the back of your head?

[16] **A.**    Yeah.  Right here.  All the time.

[17] **Q.**    We all heard you say in English that you were

[18] told to shut the fuck up.

[19] **A.**    I don't have money.  "Shut the fuck up."

[20] **Q.**    This whole time you are only in the basement

[21] with one other person; is that correct?

[22] **A.**    Just only one.

[23] **Q.**    What happens next?

[24] **A.**    While I was sitting on the step of the

[25] basement, my daughter came out from the room in the

[1]     Commonwealth v. John In
[2] basement and then say to me pa, and then I told her
[3] just be quiet.
[4] **Q.**    Are you at this point, are you still sitting
[5] -- what step of the basement are you sitting on?
[6] **A.**    The floor.  And then the first step.  First
[7] step from the floor.  That's where I was sitting.
[8] **Q.**    Are you sitting on the first step from the
[9] basement floor or the first floor from the kitchen
[10] floor?
[11] **A.**    From the top floor to the basement.
[12] **A.**    It's the first step from the kitchen then?
[13] **A.**    From the top down to the basement.
[14] **Q.**    You had originally told us that you were
[15] brought all the way downstairs.  That is where you
[16] were tied up; is that correct?
[17] **A.**    Yes.  First he brought me to the floor of the
[18] basement.  After he tie me up he brought me back up
[19] to the step up to the floor, upstair floor.
[20] **Q.**    Now, your daughter that comes out, is this
[21] your daughter Dina?
[22] **A.**    Yeah, Dina.  Yes.  Dina came out from the
[23] room.  I believe she heard the noise.
[24] **Q.**    Did the person who had the gun to your head
[25] say anything to Dina that you can recall?

[1]     Commonwealth v. John In
[2] **A.**    He said something, something like, shut up,
[3] but I was not sure about it.
[4] **Q.**    From your position you're facing your
[5] daughter; is that correct?
[6] **A.**    Yes.
[7] **Q.**    The person who has the gun is behind you; is
[8] that correct?
[9] **A.**    Yes, right behind.
[10] **Q.**    Is it fair to say behind him then would be the
[11] basement door?
[12] **A.**    Yes.  The door behind the men point the gun.
[13] **Q.**    Do you hear any noise upstairs at this point?
[14] **A.**    I was not sure if I heard anything.  I was not
[15] sure.
[16] **Q.**    After Dina comes out and the man with the gun
[17] says something to her, like shut up or something
[18] like that, what happens next?
[19] **A.**    After a little bit I talk to Dina not to talk,
[20] anything.  And then it sound like the cop was coming
[21] into the house or something like that.
[22] **Q.**    Was anything taken from you?
[23] **A.**    At that time I had about $60 in my wallet on
[24] me.
[25] **Q.**    The money was taken from the wallet?

[1]     Commonwealth v. John In
[2] **A.**    Yes.  All of it.
[3] **Q.**    Was anything else taken out of your wallet?
[4] **A.**    No.
[5] **Q.**    Where was your wallet located?
[6] **A.**    The wallet was inside my pant pocket.  After
[7] that I saw it on the table upstairs.
[8] **Q.**    Did you take your wallet out and hand it to
[9] one of the men with the gun or did they remove the
[10] wallet from you?
[11] **A.**    I took it out from my pocket.
[12] **Q.**    Did that happen in the kitchen or did that
[13] happen in the basement?
[14] **A.**    Actually the wallet was in my pant pocket but
[15] I was not wearing that pant.  It was on the bed.
[16] And then I found it later.  It was on the table.
[17] **Q.**    If I am to understand your correctly, your
[18] pants -- the wallet was located in your pants on
[19] the second floor?
[20] **A.**    The wallet was in my pants upstairs.  After
[21] everything I saw my wallet on the table in the
[22] kitchen.
[23] **Q.**    Were you able to see the face of the man that
[24] had you in the basement?
[25] **A.**    I could not identify that man because he was

[1]     Commonwealth v. John In
[2] wearing the hood like this and I did not try to look
[3] at his face because I was told not to do so with the
[4] gun point.
[5] **Q.**    Were you injured as a result of this incident?
[6] **A.**    No.  It was lucky the cop came so early that
[7] time.
[8] **Q.**    You said that you were tied up.  Do you know
[9] what you were tied up with?
[10] **A.**    With the red string.
[11] **Q.**    Did that read string come from your house, do
[12] you remember?
[13] **A.**    I believe from my house in the basement.
[14] **Q.**    What was it that was placed around your mouth?
[15] **A.**    A cloth.
[16] **MS. BARALDI**:  If I could have this
[17] marked as C-1.
[18] **THE CRIER**:  Marked as Exhibit C-1,
[19] shown to defense.  Showing it to the
[20] witness.
[21] **BY MS. BARALDI**:
[22] **Q.**    Do you recognize this?
[23] **A.**    Yes.  That was the string I was tied with.
[24] **Q.**    Could you give us a description of the gun?
[25] **A.**    Just by a quick glance, just black type of

Page 109

[1]    Commonwealth v. John In

[2] gun.  It looked like police type of gun.

[3]    **MS. BARALDI**:  Thank you, Mr. Yun.  I

[4] don't have any further questions.

[5]    **THE COURT**:  You may cross-examine.

[6]    **MR. GIULIANI**:  Thank you, your Honor

[7]         - - -

[8]         CROSS-EXAMINATION

[9]         - - -

[10] **BY MR. GIULIANI**:

[11] **Q.**    Good afternoon, Mr. Yun.  Your bedroom is

[12] upstairs in this house?

[13] **A.**    Yes.

[14] **Q.**    Is that where you slept that night before you

[15] got up at 5 a.m.?

[16] **A.**    Yes.

[17] **Q.**    When you woke up at 5 did you go right

[18] downstairs to the kitchen?

[19] **A.**    Yes.  I went down to the kitchen, do some

[20] cooking, do dishes.

[21] **Q.**    At that time of morning on March 7 it was

[22] still dark out, the sun was not yet up; is that

[23] correct?

[24] **A.**    I believe it was Wednesday early in the

[25] morning and it was snowing really bad.

Page 110

[1]    Commonwealth v. John In

[2] **Q.**    When you go into your kitchen, you turn on a

[3] light to be able to see what you are doing, correct?

[4] **A.**    Yes, I turn on the light.

[5] **Q.**    When you go into the kitchen, there is a back

[6] door to your house that is light there, correct?

[7] **A.**    You mean the door to go out another one?

[8] **Q.**    Yes, sir.

[9] **A.**    Yeah.

[10] **Q.**    When you are in the kitchen cooking and doing

[11] dishes, you notice no one came in through your back

[12] door, correct?

[13] **A.**    No.  No one came in through the back door.  If

[14] they came in, got to be from the front door.

[15] **Q.**    There is also some windows in your kitchen,

[16] correct?

[17] **A.**    Yes, yes.

[18] **Q.**    Because it was cold out and snowing you

[19] wouldn't have had them open that morning, correct?

[20] **A.**    Right.  It was not open.

[21] **Q.**    When you went down into the kitchen, you

[22] didn't notice there were any windows open?

[23] **A.**    I did not pay attention.

[24] **Q.**    So you are in the kitchen for maybe 15 minutes

[25] before the males come up behind you with the gun

Page 111

[1]    Commonwealth v. John In

[2] like you said?

[3] **A.**    It's about, about, yeah, it's about 15

[4] minutes.

[5] **Q.**    You didn't hear any banging on the front door,

[6] correct?

[7] **A.**    No, no.  I didn't know those people got in.  I

[8] didn't hear anything at all.

[9] **Q.**    So you know in your house that when those

[10] people show up behind they must have walked in the

[11] front door and it must have been open already,

[12] correct?

[13] **A.**    I really can't figure out because I don't know

[14] how long they been inside already.  When I got into

[15] the kitchen and then I saw them right away from the

[16] front and point a gun to me.

[17] **Q.**    Is it fair to say you did not get a good look

[18] at the three males who came in?

[19] **A.**    No.  As soon I turn my face like this and

[20] point the gun right away.  I was so scare.  I

[21] couldn't move at all.

[22] **Q.**    You do know the three males there, there was

[23] one who was taller than the other two, correct?

[24] **A.**    All I remember tall and one of the tall point

[25] the gun to me.

Page 112

[1]    Commonwealth v. John In

[2] **Q.**    You recognized that it was the tallest of the

[3] three who point the gun at you and brought you down

[4] to the basement?

[5] **A.**    I believe the tallest one point the gun to me

[6] and brought me downstairs.

[7]    **MR. GIULIANI**:  Your Honor, may I have

[8] this marked as Defense Exhibit 1.

[9]    **THE COURT**:  Yes.

[10]    **THE CRIER**:  D-1.

[11]    **MR. GIULIANI**:  May it be shown to the

[12] witness.

[13]    **THE COURT**:  Yes.

[14] **BY MR. GIULIANI**:

[15] **Q.**    Take a look at that and when you have had a

[16] chance to look at it, let me know.

[17] **A.**    Do I, to read only the top one.

[18] **Q.**    I'll ask you some questions about the

[19] statement.  After the police came and after this

[20] incident was done, you went to give a statement to

[21] the detectives, is that correct?

[22] **A.**    Yes.

[23] **Q.**    In fact, if you look on this statement, by the

[24] way, this statement is completely in English, is it

[25] not?

Page 113

Commonwealth v. John In

[2] **A.** Yes.

[3] **Q.** Do you recognize this as the statement that
[4] you gave to the detectives later that morning?

[5] **A.** Yeah, yeah. That's the statement I gave.

[6] **Q.** When you spoke to the detectives, did you have
[7] the assistance of an interpreter?

[8] **A.** No. I spoke with him by myself.

[9] **Q.** When you said you spoke to him by yourself,
[10] were you speaking and talking to him in English?

[11] **A.** Yes. I did speak in English.

[12] **Q.** Did you understand his question?

[13] **A.** Yes, I could.

[14] **Q.** He asked you questions, correct?

[15] **A.** Yes.

[16] **Q.** You answered in English?

[17] **A.** Yes.

[18] **Q.** He typed those questions and answers on a
[19] computer?

[20] **A.** Yes.

[21] **Q.** Then he had the statement printed out?

[22] **A.** I did not remember they print it out but I
[23] remember they type something.

[24] **Q.** This statement that you have in your hands is
[25] two pages, correct?

Page 114

Commonwealth v. John In

[2] **A.** Yeah.

[3] **Q.** Do you see a signature on the second page?

[4] **A.** It's my signature, yes. I didn't remember. I
[5] was, signed the paper right away.

[6] **Q.** Look at the first page at the top. It says on
[7] the left-hand side, it says, place of interview:
[8] South detectives division. Do you remember going to
[9] 24th and Wolf to give the statement?

[10] **A.** The police station.

[11] **Q.** Do you see on the right-hand side it says,
[12] date?

[13] **A.** I remember the day. It was snowing.

[14] Q. It says 7:07?

[15] **A.** That day it was snowing.

[16] **Q.** It says time 8:50 a.m. right next to it. Do
[17] you see that, sir?

[18] **A.** It was about that time.

[19] **Q.** You gave this statement just maybe three hours
[20] after the incident?

[21] **A.** Yes, about that.

[22] **Q.** Do you see on the second page next to your
[23] signature there is also a date written in and a
[24] time. Do you see that sir?

[25] **A.** Yes.

Page 115

Commonwealth v. John In

[2] **Q.** That is your handwriting for the date and
[3] time?

[4] **A.** That's my signature.

[5] **Q.** I want to go down to the first page to the
[6] last question, question 4. You were asked this
[7] **question:** Can you describe the male that point the
[8] gun at you? Your answer, your answer was: He was a
[9] lot taller than me.

[10] **A.** Yes.

[11] **Q.** Black male, 19, 20 years old?

[12] **A.** Yes. I told the police.

[13] **Q.** Skinny?

[14] **A.** Yes, yes.

[15] **Q.** And finally you say he was wearing a dark
[16] colored hoodie and blue jeans?

[17] **A.** That's what I say because it happened so
[18] quick. That's what I recall.

[19] **Q.** You can put the statement down, sir. Mr. Yun,
[20] there came a time where you also went to court on
[21] this case at a previous occasion and testified?

[22] **A.** Yes.

[23] **Q.** It was before a different judge, actually in a
[24] different building, correct?

[25] **A.** It looks familiar here.

Page 116

Commonwealth v. John In

[2] **Q.** If I told you that you testified on April 18
[3] at 2007 would that be about correct?

[4] **A.** What date you refer to?

[5] **Q.** The date that you went to court and testified
[6] the first time.

[7] **A.** I really don't remember. It's been a while.

[8] **Q.** Do you remember coming to court?

[9] **A.** Yes.

[10] **Q.** And your daughter Dina and Christina were
[11] there too?

[12] **A.** Yes, yes.

[13] **Q.** When you went to court and you testified that
[14] time?

[15] **A.** Yes, I did. Asking me what was happened.

[16] **Q.** You had assistance of an interpreter just like
[17] you do today?

[18] **A.** Yes.

[19] **Q.** I'm going to ask you if you remember the
[20] following question and answer from your testimony on
[21] that day. By the way, the attorney for the
[22] Commonwealth that day was Miss Baraldi just like
[23] she's here today, correct?

[24] **A.** Yes, yes.

[25] **Q.** She asked you the following question. On page

Page 117

[1]    Commonwealth v. John In

[2] **34.   She asked you**:  Describe the clothing the

[3] person had on who was down in the basement with you.

[4] **Your answer was**:  It was dark.  Black sweater.

[5] **A.**    It looks dark.

[6] **Q.**    Black sweater to cover his head?

[7] **A.**    Yes, yes.  Just like this.

[8] **Q.**    I want to bring you to another question and

[9] answer later on.  Page 36.  Do you remember this

[10] question and answer.

[11]    "QUESTION:   Which guy pointed the gun

[12] at you?"

[13]    Do you remember the following answer:

[14] When I turned my head to him, I saw one

[15] guy taller than everybody point the gun on

[16] me.

[17]    Do you remember that question and

[18] answer?

[19] **A.**    Yeah, I told everybody that the one who point

[20] the gun to me, so I turn my face, is tall, taller

[21] than everyone.

[22] **Q.**    A further question and answer just afterwards.

[23] The tall --

[24]    "QUESTION:  The tallest guy that

[25] pointed the gun at you is wearing a dark

Page 118

[1]    Commonwealth v. John In

[2] black sweatshirt or sweater that you

[3] described; is that correct?

[4]    "ANSWER:  Yes."

[5]    **THE WITNESS**:  Yes, I said that.

[6] **BY MR. GIULIANI**:

[7] **Q.**    Your answer was yes on that day?

[8] **A.**    Yes.

[9]    **MR. GIULIANI**:  With the court's

[10] permission, may my client stand for a

[11] moment and face the jury.

[12]    **THE COURT**:  He may.

[13]    **MR. GIULIANI**:  Stand up, John.

[14]    Do you see the gentleman standing to

[15] my right?

[16]    **THE WITNESS**:  Yes.

[17]    **MR. GIULIANI**:  Which one of us is

[18] taller, myself or my client?

[19]    **THE WITNESS**:  You taller.

[20]    **MR. GIULIANI**:  You're right.  Would

[21] you agree with me, sir, that the guy who

[22] pointed the gun at you was tall like me?

[23]    **THE WITNESS**:  Like I told you, as soon

[24] as I turn my head towards the guy, the guy

[25] point the gun to me.  Seem taller than the

Page 119

[1]    Commonwealth v. John In

[2] guy next to him

[3] **BY MR. GIULIANI**:

[4] **Q.**    When you were taken into the basement, is

[5] there a light on in the basement?

[6] **A.**    Yes. The light's on.

[7] **Q.**    Was the light on when you went in the basement

[8] or did somebody turn it on?

[9] **A.**    I did not know but when I got down there, the

[10] light was already on.  I didn't know who turn on the

[11] light or...

[12] **Q.**    Now, when you go to the bottom of the steps,

[13] are you able to see your daughter Dina as she is

[14] sleeping?

[15] **A.**    No.  She was in her room.  I couldn't see her.

[16]    She came out of her room before long?

[17] **A.**    Yes.  The man with the gun asking me something

[18] about money next to the wall and he also asked me

[19] who was in the room.  I told him it's my daughter.

[20] **Q.**    Dina did walk out of her room at some point?

[21] **A.**    At that time Dina did not come out from the

[22] room yet.  She came out when the gunman took me to

[23] the step next to the first floor and then at that

[24] time she came out.

[25] **Q.**    Is there a basement door?

Page 120

[1]    Commonwealth v. John In

[2] **A.**    Yes, the basement.  Yes, a door.

[3] **Q.**    You have heard the police coming in the house?

[4] **A.**    Actually, I did not pay attention about the

[5] police getting to the house.  But I hear some noise.

[6] **Q.**    When you heard the noise, you were still at

[7] the top of the steps with the man with the gun right

[8] behind you?

[9] **A.**    Yes.   At that time I was staying still but to

[10] be honest I really didn't know if he still there or

[11] not.

[12] **Q.**    Okay.  Was the door to the basement open or

[13] closed at that time?

[14] **A.**    The gunman did hold the doorknob of the

[15] basement and then the door just -- like that.  And I

[16] turn my face just a little bit.  I was so afraid to

[17] move my head.

[18]    **MS. BARALDI**:  Thank you.  That's all I

[19] have.

[20]    **THE COURT**:  Any redirect?

[21]    **MS. BARALDI**:  No, your Honor.

[22]    **THE COURT**:  Thank you, sir.  You may

[23] step down.

[24]             -  -  -

[25]    (witness steps down)

Page 121

[1]     Commonwealth v. John In
[2]         - - -
[3]     **THE COURT**:  You may call your next
[4] witness.
[5]     **MS. BARALDI**:  If I may, would you see
[6] if Detective Conn is outside.  If not, I
[7] would call Dina Khem.
[8]     **THE CRIER**:  State your full name,
[9] spell your last name.
[10]     **THE WITNESS**:  Dina Khem.  K-h-e-m.
[11]         - - -
[12]         DINA KHEM, after having
[13] been first duly sworn, was examined and
[14] **testified as follows**:
[15]         - - -
[16]     DIRECT EXAMINATION
[17]         - - -
[18] **BY MS. BARALDI**:
[19] **Q.**   Good afternoon, Dina.
[20] **A.**   How you doing?
[21] **Q.**   Dina, I want to take you back to March 7th of
[22] 2007.  Were you living at 720 Mifflin Street?
[23] **A.**   Yes.
[24] **Q.**   About 5 o'clock in the morning, were you
[25] asleep?

Page 122

[1]     Commonwealth v. John In
[2] **A.**   Yes.
[3] **Q.**   At that time where was your bedroom located?
[4] **A.**   In the basement.
[5] **Q.**   If you can describe for the ladies and
[6] gentlemen of the jury the layout of your basement?
[7] **A.**   Yeah.  When you walk down, when you open the
[8] door, it's steps.  When you walk down like a
[9] dresser.  It looks like it's blocked off, but then
[10] it's like a walkway.  My room is all the way around,
[11] walk to the front and turn, make a right and that's
[12] my door.
[13] **Q.**   If I were coming down your basement steps,
[14] would I see a bedroom door?
[15] **A.**   No.
[16] **Q.**   If I come down the steps, what is in front of
[17] me?
[18] **A.**   A dresser.
[19] **Q.**   Is there a wall there too?
[20] **A.**   Yes, behind the dresser.
[21] **Q.**   Do you have to go left or right to get to your
[22] bedroom door?
[23] **A.**   If you going down the steps, you go to go left
[24] and then you got to go straight, then you got to
[25] make a right.

Page 123

[1]     Commonwealth v. John In
[2] **Q.**   So you have to walk the length of the basement
[3] to get to your door, is that fair to say?
[4] **A.**   Say that again.
[5] **Q.**   You would have to walk the length of the
[6] basement to the front of your house to get to your
[7] door?
[8] **A.**   Yeah.
[9] **Q.**   Is that entire walkway also walled off?
[10] **A.**   Like, yeah, it's like a wall.  It's a wall
[11] right here with books.  And wall where my room is
[12] at.
[13] **Q.**   Where is your bed located in that enclosed
[14] area in the basement?
[15] **A.**   My door is like to the front and then my bed
[16] is like next to the wall where the dresser is at.
[17] If you talk you can hear everything.
[18] **Q.**   If I come down your basement, I see the
[19] dresser, a wall there?
[20] **A.**   Yes.
[21] **Q.**   On the other side of that wall is your bed?
[22] **A.**   Yes.
[23] **Q.**   If I'm standing at the bottom of your
[24] basement, I'm about how many feet from your bed?
[25] **A.**   Approximately like six feet at the most.

Page 124

[1]     Commonwealth v. John In
[2] **Q.**   So that morning you are awakened by a voice?
[3] **A.**   Yes.
[4] **Q.**   What do you hear?
[5] **A.**   **I hear is**:  Where your money, where your
[6] jewelry at.  I heard my dad saying, I'm poor.  I
[7] ain't got no money.  Shut the fuck up.
[8] **Q.**   What did you do when you heard that?
[9] **A.**   I pick up my phone and call the cops.
[10] **Q.**   So you call 911?
[11] **A.**   Uh-huh.
[12] **Q.**   What did you tell them?
[13] **A.**   I told them a robbery in my house.  I'm in the
[14] basement.
[15] **Q.**   After you call the police, what do you do?
[16] **A.**   I stayed in my room.
[17] **Q.**   How long were you in your room?
[18] **A.**   Approximately five to seven minutes.  That's
[19] when I heard a lady say:  Did anybody call the cops?
[20] **Q.**   That's the point you exit your room?
[21] **A.**   Like I hesitate for a little bit.  When I
[22] walked to the steps where my dad was tied up and
[23] where he was at.
[24] **Q.**   You waited to leave your bedroom until you
[25] hear voices upstairs?

Page 125

[1]    Commonwealth v. John In
[2]  **A.**   Yes.
[3]  **Q.**   You exit your bedroom door, you walk around
[4] the corner to the bottom of the steps.  Where is
[5] your dad?
[6]  **A.**   My dad is on top of the basement steps, like
[7] it's like seven steps.  It's like he's on the top
[8] one.  The guy is standing holding the doorknob.
[9]  **Q.**   Do you see that person here today?
[10]  **A.**   Correct.  Yeah.
[11]  **Q.**   Can you point to him?
[12]  **A.**   Over there.
[13]    **MS. BARALDI**:  Indicating for the
[14] record the defendant John In.
[15]    **THE COURT**:  The record will so
[16] reflect.
[17] **BY MS. BARALDI**:
[18]  **Q.**   You said seven steps in your basement?
[19]  **A.**   Yeah, like seven steps at the most.
[20]  **Q.**   How far would you have been from the
[21] defendant?
[22]  **A.**   Like what you mean how far?
[23]  **Q.**   If you point to something in the room or
[24] somebody in the room.  How far distance wise when
[25] you got to the bottom of the steps was John In from

Page 126

[1]    Commonwealth v. John In
[2] you?
[3]  **A.**   Like say this, John In right here.
[4]  **Q.**   Give me feet?
[5]  **A.**   Four or five, six, something like that.
[6]  **Q.**   Now, the light is on in the basement?
[7]  **A.**   Yes.
[8]  **Q.**   Do you remember where was your dad?
[9]  **A.**   What you mean?
[10]  **Q.**   When you first see him?
[11]  **A.**   On the step.
[12]  **Q.**   Who is your father facing?
[13]  **A.**   Facing me towards the basement, not of the
[14] door.
[15]  **Q.**   The defendant John In is standing where in
[16] relation to your father?
[17]  **A.**   He's standing like behind him.  It's like a
[18] little room.  He sitting on the step.  He's holding
[19] the doorknob.
[20]  **Q.**   Do you see his other hand at that point?
[21]  **A.**   His other hand, what you mean?
[22]  **Q.**   Do you see John?
[23]  **A.**   Holding the doorknob.  He point the gun at me.
[24]  **Q.**   In his other hand is a gun?
[25]  **A.**   Yes.

Page 127

[1]    Commonwealth v. John In
[2]  **Q.**   Do you say anything when you come out of your
[3] room?
[4]  **A.**   No.   I didn't say -- Va, dad, in Cambodian.
[5]  **Q.**   Does your dad saying anything back to you?
[6]  **A.**   Yes.  He said be quiet in Cambodian.
[7]  **Q.**   Does John In say anything?
[8]  **A.**   Shut the fuck up.
[9]  **Q.**   When John In says this to you, is he turned to
[10] face you?
[11]  **A.**   Like when he say that, I stood there.   And
[12] then I stood there for a minute.  I walk to my room.
[13]  **Q.**   He turned to face you.  At this point he
[14] points the gun at you?
[15]  **A.**   Yes.
[16]  **Q.**   He tells you to shut the fuck up?
[17]  **A.**   Uh-huh.
[18]  **Q.**   Describe the gun for me.
[19]  **A.**   It was black.  That's all.
[20]  **Q.**   How long are you standing there before you go
[21] back in your room?
[22]  **A.**   Probably like two minutes.
[23]  **Q.**   Is the basement door at this point shut?
[24]  **A.**   See, like when I walk out, right, it's like my
[25] other sister, my baby sister, she open the door.  I

Page 128

[1]    Commonwealth v. John In
[2] seen her face.  He pull the door back.
[3]  **Q.**   This is your sister Angela?
[4]  **A.**   Yeah.
[5]  **Q.**   John In is holding the doorknob.  At some
[6] point you see your sister try to open the door, he
[7] pulls the door back?
[8]  **A.**   Uh-huh.
[9]  **Q.**   At what point in time did this occur, before
[10] or after he points the gun at you?
[11]  **A.**   I'm not sure.
[12]  **Q.**   You go back in your bedroom.  About how long a
[13] time would you say from the point you come out of
[14] your room you have the interaction with your dad,
[15] have the interaction with John In?
[16]  **A.**   Like two minutes.
[17]  **Q.**   When did you come back out of your bedroom?
[18]  **A.**   When I made a phone call first and then my
[19] sister pick up.  I went upstairs.
[20]  **Q.**   Which sister did you call?
[21]  **A.**   Angela.
[22]  **Q.**   The one you had seen at the top?
[23]  **A.**   Yeah.
[24]  **Q.**   Did you call on a cell phone or house phone?
[25]  **A.**   House phone.

Page 129

[1]    Commonwealth v. John In
[2]  **Q.**   She picked up the house phone?
[3]  **A.**   Uh-huh.
[4]  **Q.**   I assume she told you it was all clear, you
[5] could come upstairs?
[6]  **A.**   Uh-huh.
[7]    **THE COURT**:  You have to say yes or no.
[8]  **BY MS. BARALDI**:
[9]  **Q.**   When you come upstairs, at that point who is
[10] upstairs on your first floor of your house?
[11]  **A.**   The cops and my dad and my sister.
[12]  **Q.**   What about your brother Keith, do you see him?
[13]  **A.**   Yeah.  He was on the couch.
[14]  **Q.**   Do you remember how many police officers were
[15] there at that time?
[16]  **A.**   No.
[17]  **Q.**   Were you present with the interaction with any
[18] other defendant other than John In?
[19]  **A.**   No.
[20]  **Q.**   He is the only person you had seen in your
[21] house?
[22]  **A.**   Yes.
[23]  **Q.**   At some point you and your sister are taken in
[24] a patrol car; is that correct?
[25]  **A.**   Yes.

Page 130

[1]    Commonwealth v. John In
[2]  **Q.**   You are taken -- tell us what happened.
[3]  **A.**   They took us to a paddy wagon and they asked
[4] me is that him.
[5]  **Q.**   How many people are in the back of the paddy
[6] wagon?
[7]  **A.**   Two.
[8]  **Q.**   Did you recognize the other male?
[9]  **A.**   No, I don't know.
[10]  **Q.**   You recognized John In?
[11]  **A.**   Yes.
[12]  **Q.**   Explain to the ladies and gentlemen of the
[13] jury how you know that John In is the guy in your
[14] basement.
[15]  **A.**   His nose.
[16]  **Q.**   What about his nose?
[17]  **A.**   It's sharp.
[18]  **Q.**   What do you mean?
[19]  **A.**   It's real, real sharp.
[20]  **Q.**   Why did his nose stick out for you?
[21]  **A.**   It just does.
[22]  **Q.**   Can you describe the clothes he had on?
[23]  **A.**   I know he had a hoody on and it was dark.
[24] That was it.
[25]  **Q.**   After you identify him to the police, you went

Page 131

[1]    Commonwealth v. John In
[2] down to South Detectives and gave a statement?
[3]  **A.**   Yes.
[4]  **Q.**   In April probably about a month later you went
[5] down to a different courtroom where you met with me?
[6]  **A.**   Yes.
[7]  **Q.**   You were in front of a different judge, you
[8] testified there, as well?
[9]  **A.**   Yes.
[10]  **Q.**   Did you have the opportunity to identify John
[11] In that day?
[12]  **A.**   Yes.
[13]  **Q.**   Did you identify John In as being the person
[14] in the basement on that day?
[15]  **A.**   Yes.
[16]  **Q.**   Did you have anything taken from you have?
[17]  **A.**   No.
[18]  **Q.**   Was there anything missing of yours after you
[19] were able go through the house?
[20]  **A.**   No.
[21]    **MS. BARALDI**:  I don't have any further
[22] questions.
[23]    **THE COURT**:  Cross.
[24]       - - -
[25]       CROSS-EXAMINATION

Page 132

[1]    Commonwealth v. John In
[2]       - - -
[3]  **BY MR. GIULIANI**:
[4]  **Q.**   Good afternoon, Miss Khem.
[5]  **A.**   How you doing.
[6]  **Q.**   Fine.  Thank you.  You are asleep that
[7] morning?
[8]  **A.**   Correct.
[9]  **Q.**   You are awakened because you hear voices?
[10]  **A.**   Yes.
[11]  **Q.**   From the tone of voice and because probably
[12] one of the voices is one you have never heard before
[13] you get a little frightened?
[14]  **A.**   Yes.
[15]  **Q.**   Did you recognize him, one of the voices, that
[16] being one of your father?
[17]  **A.**   Yes.
[18]  **Q.**   Did you hear two voices when you were in your
[19] bedroom?
[20]  **A.**   Yes.
[21]  **Q.**   Did you recognize immediately that one of
[22] those voices was your father's?
[23]  **A.**   Yes.
[24]  **Q.**   You didn't know who the other voice was?
[25]  **A.**   No.

Page 133

[1]     Commonwealth v. John In

[2]   **Q.**   So the members of the jury understand, from

[3] where you were in your bedroom when you first woke

[4] up, you can't see your father and the other

[5] individual at that point in time?

[6]   **A.**   No.

[7]   **Q.**   At no time or no you can't see?

[8]   **A.**   No, I can't see .

[9]   **Q.**   You have a cell phone with you?

[10]   **A.**   Yes.

[11]   **Q.**   Do you keep the cell phone with you all night

[12] in case people call you?

[13]   **A.**   Yes.

[14]   **Q.**   On the cell phone on dial 911?

[15]   **A.**   Yes.

[16]   **Q.**   You speak to an operator for a robbery in

[17] progress, something like that?

[18]   **A.**   Yes.

[19]   **Q.**   After you do that you don't go out of your

[20] room?

[21]   **A.**   No.

[22]   **Q.**   Not right away?

[23]   **A.**   Yes.

[24]   **Q.**   You don't go out of your room according to

[25] your testimony until you hear voices upstairs that

Page 134

[1]     Commonwealth v. John In

[2] you know, as you sit there today, are police

[3] entering your home?

[4]   **A.**   Yes.

[5]   **Q.**   You actually heard somebody say:  Did somebody

[6] call the cops?

[7]   **A.**   Yes.

[8]   **Q.**   It's at that point in time that you first exit

[9] your room?

[10]   **A.**   Yes.

[11]   **Q.**   You walk over to the steps?

[12]   **A.**   Yes.

[13]   **Q.**   You see your father on the steps?

[14]   **A.**   Yes.

[15]   **Q.**   The top step below where I would say where the

[16] kitchen is?

[17]   **A.**   Yes.

[18]   **Q.**   You see another individual behind one hand

[19] holding a door and one hand holding a gun?

[20]   **A.**   Yes.

[21]   **Q.**   You say that is John In?

[22]   **A.**   Yes.

[23]   **Q.**   Now, you testified he's wearing a dark hoody?

[24]   **A.**   Yes.

[25]   **Q.**   Would you say the color of that hoody was

Page 135

[1]     Commonwealth v. John In

[2] black?

[3]   **A.**   I don't know.  I know it was dark.

[4]   **Q.**   It's your testimony that there is a light on

[5] in the basement?

[6]   **A.**   Yes.

[7]   **Q.**   Do you know how that light got on?

[8]   **A.**   I don't know.

[9]   **Q.**   Do you remember what time you went to bed the

[10] night before?

[11]   **A.**   No.

[12]   **Q.**   Would it be usually -- let me strike that.

[13] Aside from yourself, is there anybody else that's

[14] got a bedroom in your basement?

[15]   **A.**   Only me.

[16]   **Q.**   Would it be unusual for the light to be on in

[17] the basement that time of day?

[18]   **A.**   No.  At nighttime I go to the bathroom in the

[19] basement.  I don't want to trip over nothing.

[20]   **Q.**   The person on the steps who you identify as

[21] Mr. In, he doesn't ask you or demand any money from

[22] you?

[23]   **A.**   No.

[24]   **Q.**   Miss Baraldi mentioned you testified

[25] previously in April of '07.  Do you remember that?

Page 136

[1]     Commonwealth v. John In

[2]   **A.**   Yes.

[3]   **Q.**   I want to ask you if you remember the

following questions and answer.  Page 44.  I'll

[5] start on top of page 43.  The first time --

[6] question.  Listen to the question. (Reading):

[7]     You come out and immediately when you

[8] come out that person says to you to go back.  Your

[9]   **answer**:  Shut the fuck up.  The next question is:

[10] Shut the fuck up and go back?  And your answer is:

[11] Yes.

[12]     Do you remember those questions and

[13] answers?

[14]   **A.**   No.

[15]   **Q.**   You remember testifying there don't you?

[16]   **A.**   Yes, I do.

[17]   **Q.**   You were under oath like you are just like

[18] today?

[19]   **A.**   Yes.

[20]   **Q.**   The only difference that was on April 18th of

[21] last year, five weeks after the incident, right?

[22]   **A.**   Yes.

[23]   **Q.**   Here we are almost 18 months later, right?

[24]   **A.**   Yes.

[25]   **Q.**   Then the next question: (Reading):

Page 137

[1]    Commonwealth v. John In
[2] Immediately you turn around and go back.  Your
[3] **answer is**:  Yes.  Do you remember that?
[4] **A.**    No, I don't remember that.
[5] **Q.**    This final question.
[6]    "QUESTION:  Between the time when you
[7] walk out and he says that to you, that is two or
[8] three seconds?
[9]    "ANSWER:  Yes.  You're right."
[10] Remember that?
[11] **A.**    I don't remember it.
[12] **Q.**    When this was all happening what, if anything,
[13] did you hear going on upstairs with the cops?
[14] **A.**    What you mean?
[15] **Q.**    We know the officers entered your home as a
[16] result of your call.  They came into the house
[17] saying did someone call the cops.  You heard them
[18] scream, did someone call the cops?
[19] **A.**    Yes.
[20] **Q.**    It's only at that point in time that you come
[21] out of your room, you walk over to the steps, right?
[22] **A.**    Correct.
[23] **Q.**    It's not very far, right?
[24] **A.**    No.
[25] **Q.**    Takes you couple seconds to go out to go over.

Page 138

[1]    Commonwealth v. John In
[2] You see what you see on the steps.  Did you hear any
[3] commotion or ruckus going on upstairs?
[4] **A.**    You hear footsteps like somebody moving.
[5] **Q.**    Could you tell where they were moving upstairs
[6] inside the house if you could?
[7] **A.**    Yeah, you can, you can hear them moving.  Like
[8] a regular basement.
[9] **Q.**    Did you hear anyone running through the
[10] kitchen, running through the kitchen while you are
[11] there looking up the steps?
[12] **A.**    What you mean?
[13] **Q.**    Do you hear anybody running through the house?
[14] **A.**    When I was standing right in front of my dad?
[15] **Q.**    Yes, ma'am.
[16] **A.**    I can hear people walk.  I can't hear nobody
[17] running.
[18] **Q.**    You eventually turn around and go back to your
[19] room?
[20] **A.**    What you mean?
[21] **Q.**    What I mean is you came out, saw your father
[22] and this other individual on the steps.  The other
[23] individual points a gun at you, and said shut the
[24] fuck up, right?
[25] **A.**    Yeah.

Page 139

[1]    Commonwealth v. John In
[2] **Q.**    You turn around and went back to your room?
[3] **A.**    Yes.
[4] **Q.**    You go back to the room you stay in, your
[5] room, you make a call.  You end up speaking to
[6] Angela?
[7] **A.**    Yes.
[8] **Q.**    You talk to her.  Do you have a conversation,
[9] something like, is everything okay, is it safe to
[10] come up, et cetera?
[11] **A.**    Yes.
[12] **Q.**    You come back out of your room.  Is your dad
[13] still on the steps at that point in time?
[14] **A.**    No.
[15] **Q.**    Where is he?
[16] **A.**    Upstairs.
[17] **Q.**    You go up the steps, there is no one else in
[18] the house.  You don't see him or any other
[19] individual inside the house?
[20] **A.**    No.
[21] **Q.**    You go up to the, what I would call the ground
[22] floor?
[23] **A.**    Yes.
[24] **Q.**    Are there police officers there?
[25] **A.**    Yes.

Page 140

[1]    Commonwealth v. John In
[2] **Q.**    How many?
[3] **A.**    I don't know.  A couple.  I'm not sure.
[4] **Q.**    Were there police officers out back?
[5] **A.**    I didn't go in the back.
[6] **Q.**    I didn't say you did.  Do you recall whether
[7] any out back?
[8] **A.**    I'm not sure.
[9] **Q.**    Any on the second floor?
[10] **A.**    Yes.
[11] **Q.**    Did you ever see your sister Christina at that
[12] point?
[13] **A.**    Yes.
[14] **Q.**    Where was she?
[15] **A.**    Downstairs.
[16] **Q.**    How long after that before you were taken by
[17] police to location?
[18] **A.**    I'm not sure.
[19] **Q.**    Less than an hour?
[20] **A.**    Yeah, less than an hour.
[21] **Q.**    20 or 30 minutes, not even?
[22] **A.**    I don't know.  I'm not sure.
[23] **Q.**    You go to a location.  Do you remember the
[24] location?
[25] **A.**    No.

Page 141

[1]    Commonwealth v. John In
[2]  **Q.**   Somewhere around 6th and Mifflin, 5th and
[3] Hoffman?
[4]  **A.**   It's on a small block.  It's Mifflin and a
[5] small block.
[6]  **Q.**   A couple blocks away?
[7]  **A.**   Uh-huh, yes.
[8]  **Q.**   When you go there, you are taken there by
[9] police, right?
[10]  **A.**   Correct.
[11]  **Q.**   Do you remember which officer took you?
[12]  **A.**   No.
[13]  **Q.**   You were in the back of a police cruiser?
[14]  **A.**   A police car, regular one.
[15]  **Q.**   Squad car?
[16]  **A.**   Yeah.
[17]  **Q.**   Was the officer telling you something along
[18] the lines, we got some guys in custody.  We want you
[19] to look at them?
[20]  **A.**   Yes.
[21]  **Q.**   They asked you if you could identify either or
[22] both of them in the house?
[23]  **A.**   Yes.
[24]  **Q.**   You go to the location.  There's a what you
[25] call a wagon, police wagon, right?

Page 142

[1]    Commonwealth v. John In
[2]  **A.**   Yes.
[3]  **Q.**   Do you speak to another police officer or
[4] detective before they open up the wagon?
[5]  **A.**   Yes.
[6]  **Q.**   Did he say, we want you to identify these
[7] guys?
[8]  **A.**   Yes.
[9]  **Q.**   They are sitting inside the wagon or standing?
[10]  **A.**   Sitting.
[11]  **Q.**   Did they ask them to step outside?
[12]  **A.**   No.
[13]  **Q.**   When you identify him, both inside the wagon?
[14]  **A.**   Yes.
[15]  **Q.**   No lights inside, interior lights of that
[16] wagon, are there?
[17]  **A.**   There was.
[18]  **Q.**   Were they shining a flashlight on them?
[19]  **A.**   No.  It was light in there.
[20]  **Q.**   Did they ask them to stand next to each other?
[21]  **A.**   No.
[22]  **Q.**   Could you tell the size of the other guy who
[23] was in the back of the wagon?
[24]  **A.**   The size?
[25]  **Q.**   Height wise.

Page 143

[1]    Commonwealth v. John In
[2]  **A.**   He was tall.
[3]  **Q.**   The other guy who you didn't know?
[4]  **A.**   Yeah.
[5]  **Q.**   He was taller than John In?
[6]  **A.**   Yeah.
[7]  **Q.**   A lot taller?
[8]  **A.**   Not a lot, but he was taller.
[9]  **Q.**   You could tell that even though they were
[10] sitting next to each other in the wagon?
[11]  **A.**   His knees, you can tell.
[12]  **Q.**   When you see the person on the steps who you
[13] say is my client, it's your testimony the hoody is
[14] down like this, (indicating), it's not up over his
[15] face or his head?
[16]  **A.**   Can't remember.
[17]  **Q.**   You don't recall?
[18]  **A.**   Can't remember.
[19]  **MR. GIULIANI**:  Thank you, Miss Khem.
[20]  **THE COURT**:  Any redirect?
[21]  **MS. BARALDI**:  I have one question.
[22]            - - -
[23]        REDIRECT EXAMINATION
[24]            - - -
[25] **BY MS. BARALDI**:

Page 144

[1]    Commonwealth v. John In
[2]  **Q.**   Miss Khem, about how long a period of time do
[3] you think you had to look at John In when he was in
[4] your basement?
[5]  **A.**   Like two minutes.
[6]  **MS. BARALDI**:  Thank you.  I don't have
[7] any further question.
[8]  **THE COURT**:  Any question based on her
[9] question, sir?
[10]            - - -
[11]        RECROSS-EXAMINATION
[12]            - - -
[13]
[14] **BY MR. GIULIANI**:
[15]  **Q.**   I want to get the time line correct.  The cops
[16] come in the house.  You know that from hearing them
[17] upstairs, correct?
[18]  **A.**   Yes.
[19]  **Q.**   It's only after they enter the home that you
[20] come out of your bedroom.  You go to the bottom of
[21] the steps.  You make visual identification or
[22] inspection of the person who is there with your dad?
[23]  **A.**   Yes.
[24]  **Q.**   You are telling Miss Baraldi it's two minutes,
[25] a full two minutes you are just standing there

Page 145

[1]   Commonwealth v. John In

[2] staring at this man?

[3] **A.**   I said about two minutes.  I'm not definitely

[4] sure.

[5] **Q.**   Two minutes.  The guy pointed a gun at you,

[6] according to you, told you to shut the fuck up.  But

[7] you just stood there and look up at the steps at

[8] this guy pointing a gun at you.  He didn't say

[9] anything else to you, not like turn around, don't

[10] look at me?  Just stood there and stared at him for

[11] two whole minutes?

[12] **A.**   I had to walk to my room.

[13] **Q.**   This obviously is extremely scary when this

[14] happened to you, right?

[15] **A.**   Yeah.

[16] **Q.**   You are afraid for yourself, your father, the

[17] rest of your family?

[18] **A.**   Yes.

[19] **Q.**   You saw this guy with a gun pointed at your

[20] father.  He tells you to shut the fuck up.  As soon

[21] as you see that, you turn right back around and go

[22] back to your room?

[23] **A.**   Not if you're shock.

[24] **Q.**   I'm asking what you did.  You went over.  You

[25] saw your dad.  You saw the other individual, this

Page 146

[1]   Commonwealth v. John In

[2] guy point a gun at you, says what he says.  When

[3] that happened, you turn right around right back to

[4] your bedroom and call upstairs?

[5] **A.**   Yeah, sure.

[6] **MR. GIULIANI**:  Thank you, Miss Khem.

[7] **THE COURT**:  Any re-redirect?

[8] **MS. BARALDI**:  No.

[9] **THE COURT**:  You may step down.

[10]      - - -

[11] (witness steps down).

[12]      - - -

[13] **THE COURT**:  You may call your next

[14] witness.

[15] **MS. BARALDI**:  If I may, my detective

[16] is testifying in 1108.  May we take a

[17] short recess?

[18] **THE COURT**:  Of course.

[19]      - - -

[20] (jury leaves the box at approximately 3:05

[21]       PM.)

[22]      - - -

[23] (later...)

[24]      - - -

[25]   (The following proceedings were held

Page 147

[1]   Commonwealth v. John In

[2]    in the judge's robing room)

[3]      - - -

[4] **THE COURT**:  We're on the record and

[5] outside the hearing of the jury in

[6] Commonwealth v. John In.   My crier, Mr.

[7] McNeill, has advised the attorneys and

[8] he's advising me of an issue he's now

[9] going to make of record.

[10] **THE CRIER**:  Juror number 8 made

[11] contact with me and asked a question how

[12] would she be able to get down here because

[13] she was having financial problems for her

[14] car fare and her lunch.  I spoke with her.

[15] I told her I would come and talk to you

[16] about it.

[17] **THE COURT**:  Just so that we complete

[18] the record.  We told this woman and all

[19] the other jurors when I addressed the

[20] group as a whole this case would go at

[21] least to Monday, agreed?

[22] **MR. GIULIANI**:  Yes.

[23] **MS. BARALDI**:  Yes.

[24] **THE COURT**:  If she had a hardship she

[25] should have raised her hand.  She did not

Page 148

[1]   Commonwealth v. John In

[2] raise her hand.  Counsel, do you want to

[3] take this up now or wait until tomorrow by

[4] moving 13 into 8 or want to colloquy

[5] with her at this time?  It's up to you.

[6] **MR. GIULIANI**:  Be delayed until

[7] tomorrow.

[8] **MS. BARALDI**:  I'm comfortable with

[9] that.

[10] **THE COURT**:  Let's go out there.

[11]      - - -

[12] (Whereupon, the following proceedings were

[13] held in open court outside the presence of

[14]       the jury)

[15]      - - -

[16]

[17] **THE COURT**:  We're on the record

[18] outside the hearing of the jury again.

[19] Miss Baraldi, I'm mindful of the fact that

[20] there is some difficulty in this case

[21] because we have the unfortunate occurrence

[22] of a police officer losing her life in the

[23] line of duty.  I understand the funeral

[24] will be on Friday.

[25] **MS. BARALDI**:  Yes, your Honor.

Page 149

[1]    Commonwealth v. John In

[2]    **THE COURT**:  What I would like to do is

[3]  complete testimony on Thursday so we can

[4]  go to the jury on Friday.  Is that

[5]  something we can do?

[6]    **MS. BARALDI**:  Yes.  Do my best.

[7]    **THE COURT**:  You need to get back to

[8]  the office to make that happen.

[9]    **MS. BARALDI**:  Yes, sir.

[10]    **THE COURT**:  What are you requesting?

[11]    **MS. BARALDI**:  I'm requesting that we

[12]  break for the day.

[13]    **THE COURT**:  All right.  Any objection?

[14]    **MR. GIULIANI**:  None, your Honor.

[15]    **THE COURT**:  You can bring the jury

[16]  out.

[17]          - - -

[18]  (jury in the box at approximately 4 pm)

[19]          - - -

[20]    **THE COURT**:  Thank you, ladies and

[21]  gentlemen.  You may be seated.  First of

[22]  all, thank you for your patience.  As you,

[23]  ladies and gentlemen, can see, it's now 4

[24]  o'clock and for reasons outside the

[25]  control of all of us, we're likely to take

Page 150

[1]    Commonwealth v. John In

[2]  our recess today to adjourn for today at

[3]  this time.  Unfortunately that means that

[4]  we have to make up this time tomorrow.  So

[5]  we will start at 9 o'clock, go to 5

[6]  tomorrow.  If you will be here a bit early

[7]  to have you in the box at 9, I would be

[8]  most appreciative.  I remind you to keep

[9]  an open mind.  Don't discuss the case with

[10]  anyone.  Your can't discuss it among

[11]  yourselves.  Have a good evening.  See

[12]  you back here.

[13]          - - -

[14]  (jury leaves the room at approximately

[15]          4:03)

[16]          - - -

[17]

[18]    **THE COURT**:  See you back here tomorrow

[19]  morning

[20]          - - -

[21]        proceedings adjourned

[22]

[23]

[24]

[25]

Page 151

[1]

[2] I hereby certify that the proceedings and evidence
            are contained fully and accurately in the notes

[3] taken by me on the trial of the above cause, and
            that this copy is a correct transcript of the same.

[4]

[5]
        _____
        Linda Procopio

[6]        Certified Court Reporter

[7]

        _____2007

[8]            Date

[9]

[10]

[11] The foregoing record of the proceedings upon the
            trial of the above cause is hereby approved and

[12] directed to be filed.

[13]

        _____

[14]            Judge

[15]

[16]

[17]

[18]

[19]

[20]

[21]

[22]

[23]

[24]

[25]

